14 CV 5903

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

UNITED REALTY ADVISORS, LP and
JACOB FRYDMAN,

                       Plaintiffs,

            -against-

ELI VERSCHLEISER, RAUL DELFORNO, OPHIR
PARNASI, and ALEXANDRU ONICA,

                       Defendants.

-----------------------------------------------------------------------x



Civil Action

COMPLAINT
JURY DEMAND

Plaintiffs, UNITED REALTY ADVISORS, LP (sometimes referred to herein as "United Realty", the "Advisor", or the "Company") and JACOB FRYDMAN ("Frydman") (collectively "Plaintiffs"), complaining of Defendants, ELI VERSCHLEISER ("Verschleiser") RAUL DELFORNO ("Delforno"), OPHIR PARNASI ("Parnasi"), and ALEXANDRU ONICA ("Onica") (Verschleiser, Delforno, Parnasi, and Onica are sometimes referred to individually as "Defendant" and collectively as "Defendants") allege, as follows:

## NATURE OF THE ACTION

1. This is an action for civil damages under the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (the "CFAA"), civil damages under the Wire and Electronic Communications Interception and Interception of Oral Communications Act (18 U.S.C. § 2520) (the "ECPA"); civil damages under the Stored Wire and Electronic Communications and Transactional Records Access Act (18 U.S.C. § 2707) (the "SCA"), for tortious interference with prospective business relations, breach of contract and breach of the duty of loyalty; civil conspiracy, conversion, and for injunctive relief barring Defendants' culpable conduct as described in this Complaint.

## JURISDICTION AND VENUE

2.  This Court has original jurisdiction over Plaintiffs' CFAA, ECPA, and SCA claims pursuant to 28 U.S.C. § 1331.

3.  This Court has supplemental jurisdiction over Plaintiffs' state law and common law claims pursuant to 28 U.S.C. § 1367(a), which claims are so related to Plaintiffs' federal claims as to form part of the same case or controversy.

4.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to Plaintiffs' claims arose in the Southern District of New York.

## PARTIES

5.  Plaintiff United Realty is a limited partnership organized and existing under the laws of the State of Delaware, duly authorized to transact business in the State of New York, and maintains its principal place of business within this District.  United Realty is a real estate investment and advisory firm that acts as an external advisor to United Realty Trust Incorporated, a public non-traded real estate investment trust (the "REIT").

6.  Plaintiff Jacob Frydman is the Chief Executive Officer of United Realty, maintains his principal place of business within this District, and is a citizen and resident of the State of New York.

7.  Defendant Eli Verschleiser was the President of United Realty until December 2, 2013, and is a citizen and resident of the State of New York with an address at 3501 Avenue T, Brooklyn, NY 11234.

8.  Defendant Raul Delforno was the head of information Technology ("IT") for United Realty until February 14, 2013, and is a citizen and resident of the State of New York with an address at 2952 West 33rd Street, Apartment 2D, Brooklyn, NY 11224.

9.  Defendant Ophir Parnasi is a former IT executive with United Realty, and is a citizen and resident of the State of New York with an address at 254 West 98th Street, Apartment 6A, New York, NY 10025-5541.

10. Defendant Alexandru Onica is a former IT consultant for United Realty, and a citizen and resident of the State of New York with an address at 2828 45th Street, Astoria, NY 11103.

### FACTS

**United Realty Employee Manual**

11. All employees of United Realty are subject to the terms of the United Realty employee manual and the policies established by the Company in connection with an employee's employment with the Company.

12. During the period of Verschleiser's and Delforno's employment with United Realty, the United Realty Employee Manual provided, *inter alia*, as follows:

    a.  Employees may not use or keep information, documents, materials, trade secrets, client account records, or other property that they have reason to believe was acquired or obtained in violation of any law, regulation, copyright or license agreement, privilege or restriction. Employees should report any such concern immediately.

    b.  If through your employment with United Realty you have access to "personal identifying information" of any United Realty employee, you may not distribute or communicate this information to third parties, including clients, visitors, service providers, or the general public. Personal identifying information includes . . . personal email address, internet identification name and/or password;

    c.  Do not share United Realty passwords with anyone, including administrative assistants or secretaries. All passwords are to be treated as sensitive, Confidential United Realty information. … Don't reveal a password over the phone to ANYONE;

    d.  UR and client data may only be stored and accessed from the United Realty Server(s). Under no circumstances are users authorized to store, retrieve or modify United Realty and/or client documents to or from data storage devices and directories other than those provided on the United Realty servers. … Users are

prohibited from changing or circumventing access controls to allow themselves or others to perform actions outside their authorized privileges. …Users are not allowed to reconstruct or recreate information or software for which they are not authorized. … Users are prohibited from taking unauthorized actions to intentionally modify or delete information or programs.

13. In addition, the United Realty Employee Manual provides:

During the term of an employee's employment with United Realty:

will not, directly or indirectly:

    i. solicit, induce or influence any person which has a business relationship with United Realty to discontinue or reduce the extent of such relationship in a manner in any way detrimental to United Realty,

    ii. (i) recruit, solicit or otherwise induce or influence any employee, consultant or advisor of United Realty, to discontinue such person's relationship with United Realty or with any asset owned or operated by United Realty or (i) hire any such employee, consultant or advisor,

    iii. be Affiliated in any way with any company or person, which does any of the things which you are prohibited from doing under Sections A or B above,

    iv. disparage United Realty, its employees, officers, directors, managers, members, owners or Affiliates in any communications, whether in writing or orally, in a manner that could reasonably be expected to in any way intended to or which does United Realty's business or reputation,

    v. divulge to anyone (except as required by law), use, retain copies of or seek to benefit personally from any Confidential Information, Trade Secret or intellectual property of United Realty.

    vi. claim to have any right, title or interest of any kind or nature whatsoever in or to any products, methods, practices, processes, discoveries, ideas, design, Confidential Information, improvements, devices, creations or inventions in each case directly or indirectly relating to or useful in any aspect of the business of United Realty,  whether created, developed or invented by employee, United Realty and/or any other person.

  b. will not, directly or indirectly induce or attempt to influence any employee of United Realty to terminate his/her/its relationship with United Realty or terminate any contract with United Realty;

**Termination of Verschleiser and Separation Agreement**

14. On December 2, 2013, as a result of, among other things, Verschleiser's failure to adequately perform his Company Duties as set forth in his Employment Agreement, Frydman served Verschleiser with a notice of termination for "cause".

15. Immediately after being served with the termination notice, Verschleiser wrongfully and without authorization accessed and hijacked United Realty's hosted email exchange server by removing Frydman as an account owner, un-assigning Frydman as an account contact, denying Frydman access to his account while giving himself unfettered control over the entire United Realty email exchange server by making his alias, 2good2b4@att.net, the new owner of the account, and blocking Frydman from having any access thereto and disabling Frydman's and other employees' email mailboxes from the Company's email exchange server. Verschleiser's actions were intentional and intended to cause harm to Plaintiffs, and were undertaken with the assistance of Defendants Delforno, Parnasi, and Onica.

16. As explained in further detail below, Verschleiser solicited the Defendants Delforno, Parnasi, and Onica to assist Verchleiser in: (a) illegally taking control of the United Realty email exchange server, the United Realty domain hosting servers, and the United Realty computer networks; (b) intercepting emails not intended for Verschleiser, Delforno or Parnasi, and (c) obtaining and copying Plaintiffs' proprietary information and emails, confidential data and trade secrets, and, after downloading and copying same, permanently deleting them from the United Realty computers.  Verschleiser then used this access to information and trade secrets to intentionally interfere with Plaintiffs' business relationships.

17. Because the REIT is a public company, the removal of Verschleiser as manager of the Advisor and the termination of his employment as President of the Advisor triggered a four-day time clock to file a Form 8-K with the Securities and Exchange Commission.

18. Because Verschleiser did not wish to have the basis of his termination publicly disclosed, he sought a consensual arrangement that included the rescinding of the termination notice in exchange for his voluntary resignation from the Board of Directors of the United Realty and the REIT.

19. On December 3, 2013, Verschleiser and Frydman and certain of their respective affiliates, negotiated, and, just after midnight on December 4th, executed a Sale and Purchase of Membership Interest Agreement (the "Separation Agreement").

20. Pursuant to the Separation Agreement, in exchange for, *inter alia*, Plaintiffs rescinding the termination and removal notices, Verschleiser voluntarily resigned from each and every position or office that he held as a manager, officer, director, or employee of United Realty and the REIT and each of the other entities jointly owned by his and Frydman's affiliates (as set forth in the Separation Agreement collectively referred to as the "Entities").  Verschleiser and his affiliates sold and transferred to Frydman's affiliates all of Verschleiser's direct and indirect ownership interest in certain of the Entities, and, further, specifically agreed as follows:

> Insofar as Verschleiser has been a manager, officer, director and/or employee of any of the Entities, Verschleiser hereby resigns, effective immediately, each and every position or office he currently holds as a manager, officer, director or employee of United Realty Trust, United Realty Advisor, L.P., and each and every of the other Entities, and any entity in which any of the foregoing has an ownership interest. Verschleiser acknowledges that he has voluntarily resigned from each and every position or office he currently holds as a manager, officer, director or employee of United Realty Trust, United Realty Advisor, L.P., and each and every of the other Entities, on the date hereof.

21. Verschleiser also agreed that, from and after December 3, 2013, he would not represent himself as being an employee, officer, manager, member, director, agent, or representative of any of the Entities for any purpose.

22. Verschleiser also agreed at paragraph 10 of the Separation Agreement:

> The Verschleiser Parties each agree that for a period of eighteen (18) months following the Separation Date: (i) they will neither alone nor in concert with others, directly or indirectly, employ or solicit the employment of, or assist others in employing or soliciting the employment of, any individual employed by any of the Entities; (ii) they will not disparage or encourage or induce others to disparage any of the Frydman Parties or any of the Entities.

23. Verschleiser also agreed, pursuant to Section 25 of the Separation Agreement "to restore all exchange server, web hosting and the Entities' computer servers to their status on or before November 15, 2013 and to provide Frydman with all owner and administrative passwords by the close of business on December 5, 2013".

## Defendants' Wrongful Actions

24. Notwithstanding Verschleiser's undertaking pursuant to Section 25 of the Separation Agreement and numerous demands from Frydman, Verschleiser failed and refused to restore the United Realty email exchange server, web hosting servers, and computer network to their status prior to November 15, 2013.  As a result, Frydman and other employees of United Realty were shut out of their email accounts and could not send or receive any company emails, access the administrative area of their hosted email exchange server known as "HostPilot", or gain access to the United Realty hosted domain servers nor the United Realty computer network.

25. Throughout December 2013, while Defendant Delforno was still employed by United Realty, he conspired with Verschleiser to hijack United Realty's email exchange server, domain

hosting servers, and computer networks in order to give Verschleiser the ability to hack into and intercept the emails of United Realty employees, to create backups of United Realty email data and trade secrets, to download and copy all of such data, and then to delete all of said data from United Realty's email exchange server, permanently depriving United Realty of its important confidential and/or proprietary information, data, and trade secrets.

26. At all times relevant from December 2, 2013 through February 14, 2014, the date United Realty fired Delforno, Delforno acted through deception, intentionally concealing his underhanded activities from Plaintiffs while assuring Plaintiffs that he knew nothing of the computer and email-related issues Plaintiffs were experiencing.

27. On or about December 4, 2013, Verschleiser recruited Parnasi, a former IT executive with United Realty, and Onica, a third party IT consultant who had previously worked for United Realty or its affiliates, and others[1] to assist him and Delforno in executing their plot to infiltrate United Realty's email exchange server, domain hosting servers, and computer network, and set the stage for an intensive, long-term, organized, criminal conspiracy to wrongfully access Plaintiff's confidential and proprietary information and trade secrets, take control of United Realty's email exchange server, intercept email communications, and conduct fraudulent activities in connection with United Realty's email exchange server, networks, and domains in violation of the CFAA, ECPA, and SCA with the intention of causing harm to Plaintiffs.

28. On or after December 4, 2014, in express breach of the United Realty Employee Manual and in violation of paragraph 10 of the Separation Agreement, Verschleiser solicited Delforno, then head of IT for United Realty, to become employed by Verschleiser while still employed by United Realty, to act as Verschleiser's IT manager for Multi-Capital Group, Verschleiser's

---

[1] Plaintiffs reserve the right to amend this complaint to bring in additional defendants who assisted or conspired with Verschleiser in connection with his wrongful and illegal activities described herein.

separate business enterprise, and several other enterprises which Verschleiser has declared to be 501(c)(3) not for profits (or "subsidiaries" of such not for profits), including, without limitation, *Our Place NY* and *Magenu*, which entities, on information and belief, Verschleiser uses as his personal piggy-bank, and to act as Verschleiser's secret mole within United Realty in assisting Verschleiser in undertaking wrongful and illegal activities as hereafter set forth herein, and in giving Verschleiser on-going unauthorized access to United Realty's email exchange server and other computer networks[2].

29. During the approximately one week when Verschleiser and his co-conspirators, Delforno, Parnasi and Onica, had unfettered unauthorized access and wrongful control over United Realty's email exchange server, Verschleiser wrongfully intercepted email communications, and copied sensitive and proprietary Company data, and, thereafter, permanently deleted his and other United Realty employees' archived and/or backed-up emails and otherwise exercised wrongful control and dominion over Plaintiffs' email exchange server and email accounts.

30. On December 4, 2013, Verschleiser, together with the assistance of Delforno, Parnasi and Onaco, enabled Active Directory User for Frydman, 'jacob.f@urpa.com', and immediately modified Frydman's user permissions giving himself unfettered control over Plaintiffs' email account and email exchange server.

31. On December 4, 2013, Verschleiser, together with the assistance of Delforno, Parnasi and Onica, similarly hijacked other United Realty employees' email accounts proceeded over the next week to wreak havoc over the United Realty email exchange server and set the stage for an

---

[2] Although Plaintiffs have included references to the Separation Agreement so that this Court has a clear view of the facts, Plaintiffs are not asserting any claims in this action with respect to the Separation Agreement. Frydman and certain of his affiliates have initiated a state court action against Verschleiser and certain of his affiliates for, *inter alia*, a declaratory judgment that Verschleiser and certain of his affiliates breached the Separation Agreement. That case is captioned *JFURTI LLC, Summer Investors, LLC, Winter 866 UN, LLC and Jacob Frydman v. Eli Verschleiser, EVURTI, LLC; EVE, LLC; and EVUNP Holdings LLC*, Index No. 650803/2014, New York County Supreme Court.

intensive, long-term, organized, criminal conspiracy to wrongfully access Plaintiff's exchange

server, intercept email communications, and conduct fraudulent activities in connection with

United Realty's email exchange server, networks and domains in violation of the CFAA, ECPA,

and SCA.

32. While wrongfully accessing the United Realty email exchange server without

authorization, Verschleiser stole sensitive and important Company data and trade secrets, and

caused Plaintiffs extensive damages, including, without limitation, the loss of a $10 million

mortgage loan and a $1.4 million lease as more fully described herein.

33. Specifically, on December 4, 2013, after executing the Separation Agreement and giving

up all rights to United Realty and any of its data, and without authorization, Verschleiser,

together, with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally enabled

Frydman's email account but changed the password on that account to one only Verschleiser

knows, giving Verschleiser the ability to access both the United Realty email exchange server

and Frydman's email account undetected, and make it seem as if he is accessing the email

exchange server and Frydman's email account as if he were Frydman, while, at the same time,

denying Frydman rightful access to the United Realty email exchange server and his email

account.

34. On December 6, 2013 Verschleiser, together with the assistance of Delforno, Parnasi, and

Onica, without authorization, wrongfully and illegally accessed the United Realty email

exchange server and illegally created backup files for the following email mailboxes:

'Ahuva.S@urpa.com', 'Asher.G@urpa.com', 'Eli.V@urpa.com', 'jacob.f@urpa.com',

'monica.f@urpa.com' and diverted the notification of same to himself at 2good2b4@att.net so

that neither Frydman nor anyone else at the Company would know that Verschleiser wrongfully accessed and backed up those Company mailbox accounts.

35. On December 6, 2013 Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, without authorization, wrongfully and illegally accessed the United Realty email exchange server and illegally created ".pst" backup files to be exported for 'Ahuva.S@urpa.com', 'Asher.G@urpa.com', 'Eli.V@urpa.com', 'jacob.f@urpa.com', 'monica.f@urpa.com' giving Verschleiser the ability of copying all the data belonging to the Company with respect to the mailbox backups he created.

36. On December 8, 2013 Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, without authorization, wrongfully and illegally accessed the United Realty email exchange server and created backup files for Frydman's assistant's mailbox: 'cathy.l@urpa.com', and diverted the notification of same to himself at 2good2b4@att.net so that neither Frydman nor anyone else at the Company would know that he has wrongfully accessed and backed up those Company mailbox accounts.

37. On December 8, 2013 Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, without authorization, wrongfully and illegally accessed the United Realty email exchange server and created a backup schedule giving Verschleiser the ability to download and copy all the data belonging to the Company with respect to the mailbox for 'cathy.l@urpa.com' which he illegally created.

38. On December 8, 2013 Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, without authorization, wrongfully and illegally accessed the United Realty email exchange server and gave his assistant, Ahuva Slomovits, permissions to access the United Realty exchange server and obtain copies of emails being sent to United Realty employees.

39. On December 9, 2013, without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally created yet another backup file for Frydman's mailbox: 'jacob.f@urpa.com', and diverted the notification of same to himself at 2good2b4@att.net so that neither Frydman nor anyone else at the Company would know that he has wrongfully accessed and backed up those Company mailbox accounts.

40. On December 9, 2013, without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally accessed the United Realty email exchange server and created a backup schedule giving Verschleiser the ability to download and copy all the data belonging to the Company with respect to the mailbox for 'jacob.f@urpa.com'.

41. On December 9, 2013, after downloading and copying all of the mailbox backup files he created, Verschleiser, together with the assistance of Delforno, Parnasi and Onica, wrongfully and illegally deleted each of the following mailbox backups permanently depriving United Realty of the data in these mailboxes: 'Ahuva_Slamovits_12-06-2013.pst', 'Asher_Gulko_12-06-2013.pst', 'Eli_Verschleiser_12-06-2013.pst', 'Jacob_Frydman_12-06-2013.pst', 'Monica_Frydman_12-06-2013.pst', and 'Cathy_Larson_12-08-2013.pst'.

42. On December 9, 2013, without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally accessed United Realty's exchange server and created a new owner contact for the United Realty exchange server under the name 'eli.v@multigroups.com' in order to give himself on-going undetectable access to the United Realty email mailboxes and the United Realty exchange server and to permanently delete his email account 'eli.v@urpa.com' so that he could continue to have unfettered access to the United Realty exchange server without being easily detected.

43. On December 9, 2013 without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally deleted the Active Directory for User 'Eli.V@urpa.com'; deleted the mailbox 'Eli.V@urpa.com'; deleted all "My Services" logins to Outlook for 'Eli.V@urpa.com' and deleted ActiveSync service for ActiveSync 'Eli.V@urpa.com' thereby permanently deleting important Company data and all traces of his emails which were owned by the Company, depriving the Company of its rightful data and causing the company to potentially be in violation of its legal requirements and its Sarbanes-Oxley requirements.

44. On December 9, 2013, without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally accessed the United Realty exchange server and created a Distribution List 'eli.v@urpa.com' in order to be able to forward unread emails which were to go to Frydman's and other employees mailboxes so that they could be diverted to, or intercepted by, Verschleiser.

45. Additionally, on December 9, 2013, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, created an account contact for user 'eli.v@multigroups.com' on the United Realty email exchange server, with ownership rights over the United Realty email exchange server.

46. On December 10, 2013, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, created an account contact under user 'ahuva.s@multigroups.com' on the United Realty email exchange server, with ownership rights over the United Realty email exchange server, giving his assistant, Ahuva Slomovitz, similar control.

47. On December 10, 2013, without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally deleted Frydman's email mailbox backup File 'Jacob_Frydman_12-09-2013.pst', thereby permanently deleting important Company

data and depriving the Company of its rightful data and potentially causing the company to be in violation of its legal requirements and its Sarbanes-Oxley requirements.

48. On December 10, 2013, without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally created another Distribution List named 'Ahuva.s@urpa.com' in order to be able to forward unread emails which were to go to Frydman's and other employees mailboxes so that they could be diverted to or intercepted by Verschleiser's assistant, Ahuva Slomovitz.

49. On December 10, 2013, without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally deleted the Active Directory for User Ahuva.S@urpa.com'; and deleted the mailbox 'ahuva.s@urpa.com', thereby permanently deleting important Company data and all traces of emails in those accounts which were owned by United Realty, depriving the Company of its rightful data and potentially causing the Company to be in violation of its legal requirements and its Sarbanes-Oxley requirements.

50. On December 10, 2013, without authorization, Verschleiser, together with the assistance of Delforno, Parnasi, and Onica, wrongfully and illegally created a new owner contact for the United Realty email exchange server under the name 'ahuva.s@multigroups.com' in order to give his assistant, Ahuva Slomovitz, on-going undetectable access to the United Realty email mailboxes and the United Realty exchange server.

51. Plaintiffs were only able to reestablish their rights and re-gain access to the United Realty email exchange server on or about December 10, 2013 after spending hours with executives and legal counsel for Intermedia.

52. On January 9, 2014, without authorization, Verschleiser wrongfully and illegally caused Delforno, as his agent, to access the United Realty exchange server to create an active directory

under the name 'catchall@urpa.com' and then cause a POP/IMAP Email forwarding system to be created for 'CatchAll@urpa.com' so as to permit Verschleiser, Delforno, and Ahuva Slomovitz to divert and intercept emails that were being sent to Frydman and other Company employees to be forwarded to Verschleiser, Slomovitz, and Delforno and give them the ability to read emails and other sensitive Company documentation not intended for them.

53. Unbeknownst to Plaintiffs, and without authorization, from December 10, 2013 through at least late-March 2014, Verschleiser and Delforno accessed Frydman's email account at will, at times logging into Frydman's email account as themselves or aliases which they created, and at times using various services provided by companies that enable the hiding, masking and/or encryption of their IP identities, logging in to Frydman's email account as Frydman but from IP addresses used by Verschleiser and Delforno and not associated with Frydman, disguising themselves as Frydman, in an effort to infiltrate Frydman's email account un-noticed, so as to intercept Frydman's emails in an on-going pursuit of confidential, proprietary information and trade secrets that would give Verschleiser and Delforno knowledge of transactions then being undertaken by Plaintiffs which Verschleiser and Delforno intended to use, and in fact did use, to intentionally interfere with Plaintiffs' business relations.

54. Seeking to hide their identities, on December 2, 11, 17, and 22, 2013 and January 20 and 24, 2014, Verschleiser and/or Delforno logged on to Frydman's email account as if they were Frydman from IP address 68.192.185.214.

55. On December 4, 5, 6 and 9, 2013 Verschleiser and/or Delforno logged on to Frydman's email account as if they were Frydman from IP address 38.104.167.138, which is the same IP address from which Verschleiser accessed the United Realty email exchange server on December 2, 4, 9, and 10, 2013 through his alias 2good2b4@att.net; and from which Verschleiser accessed

the Multigroup email exchange server on December 10, 2013 through his alias

2good2b4@att.net.

56.  On December 10 and 11, 2013 and January 29, 2014, Verschleiser and/or Delforno logged on to Frydman's email account as if they were Frydman from IP address 108.14.1.14, an IP address believed to tie to Verschleiser's residence.

57. On December 18, 2013, Verschleiser and/or Delforno logged on to Frydman's email account as if they were Frydman from IP address 162.218.88.187 believed to tie back to Surfeasy, a foreign company that provides IP addresses that are difficult to trace and are generally used by persons who are hiding their identities, and that was used by Verschleiser and/or Delforno during all relevant times relating hereto.

58. On December 30, 2013, while Frydman was recovering from surgery in a hospital in Connecticut, Verschleiser and/or Delforno logged on to Frydman's email account as if they were Frydman from IP address from 198.23.167.181 also believed to tie back to Surfeasy.

59. On January 1, 2014, while Frydman was burying his mother who passed away the night before, in Baltimore, MD, Verschleiser and/or Delforno, without authorization, accessed Frydman's email account secretly impersonating Frydman by using his login-credential 'jacob.f@urpa.com' from IP address 192.3.173.21 believed to tie back to Surfeasy.

60. On January 13th and 15th 2014, Verschleiser and/or Delforno logged on to Frydman's email account as if they were Frydman from IP address 172.245.7.155 believed to tie back to Surfeasy.

61. On January 16, 2014 Verschleiser and/or Delforno logged on to Frydman's email account as if they were Frydman from IP address 74.108.218.147 from Verschleiser's computer named ELI-X1-CARBON, which is the same IP address from which Verschleiser accessed his

Eli.v@multigroups email account on January 1 and 16, 2014, from Verschleiser's computer

named ELI-X1-CARBON, and from which IP address Verschleiser accessed his Magenu

account through his alias 2goo2b4@att,net on January 16th and 30th, 2014, on February 3, 2014,

and on March 3, 2014.

62. On January 24 and 28, 2014 Verschleiser and/or Delforno logged on to Frydman's email

account as if they were Frydman from IP address 23.92.22.84 believed to tie back to Linode, a

service that provides users a way to mask their identities, and that was used by Verschleiser

and/or Delforno during all relevant times relating hereto.

63. On January 22 and 27, 2014 Verschleiser and/or Delforno logged on to Frydman's email

account as if they were Frydman from IP address 162.243.193.134 believed to tie back to Digital

Ocean, a service that provides users a way to mask their identities, and that was used by

Verschleiser and/or Delforno during relevant times relating hereto.

64. On January 22 and 29, and on February 2 and 3, 2014, Verschleiser and/or Delforno

logged on to Frydman's email account as if they were Frydman from IP address 208.43.237.204

believed to tie back to SoftLayer Technologies, a service that provides users a way to mask their

identities, and that was used by Verschleiser and/or Delforno during relevant times relating

hereto.

65. On February 4, 2014, Verschleiser and/or Delforno logged on to Frydman's email

account as if they were Frydman from IP address 68.192.185.214 and 50.57.175.32.

66. On February 10, 2014, Verschleiser and/or Delforno logged on to Frydman's email

account as if they were Frydman from IP address 173.254.227.108, an IP address believed to tie

back to Surfeasy, and which Verschleiser also used on February 4, 2014 to access his

Multigroups email account through his alias 2good2b4@tt.net, as well as to access his Magenu

email account through his alias 2good2b4@tt.net, as well as to access his Eli.v@eliv.com email

account on his Eliv email exchange server. On February 4, 2014 this same IP address,

173.254.227.108, was used to access Ophir Parnasi's account on the Multigroup email exchange

server, as well as the account maintained byDelforno on the Multigroup email exchange server,

as well as the mailbox Rauldelforno@gmail.com on the Magenu email exchange sever.

67. On February 11, 2014, Verschleiser and/or Delforno logged on to Frydman's email

account as if they were Frydman from IP address 174.254.160.91.

68. On March 8, 2014, Verschleiser and/or Delforno logged on to Frydman's email account

as if they were Frydman from IP address 69.112.232.185.

69. On March 28, 2014, Verschleiser and/or Delforno logged on to Frydman's email account

as if they were Frydman from IP address 198.228.193.77.

70. On February 10, 2014, using a service provided by Surfeasy, Verschleiser, with the

assistance of Delforno, Parnasi, and Onica wrongfully and illegally and without authorization,

accessed Frydman's email mailbox from IP address 173.254.227.108 and learned from

intercepting emails not meant for them, highly confidential Company information relating to a

$10 Million loan then being negotiated by Frydman with Bancorp to finance the acquisition of a

$15 million medical facility in Myrtle Beach South Carolina, through communications with

Kinzie Geldbach at Bancorp.

71. On February 11, 2014, using the same service provided by Surfeasy, Verschleiser, with

the assistance of Delforno, Parnasi, and Onica opened an email account titled

'informedconsumer@mail.com' with mail.com a service of 1and1, an anonymous email provider

with whom Verschleiser, Delforno and Onica had prior dealings, through IP address

173.254.227.116, which Defendants intended to use to send disparaging emails to persons with

whom Frydman was doing business in an effort to interfere with United Realty and Frydman's business relationships.

72. On February 11, 2014, using the same service provided by Surfeasy, Verschleiser, with the assistance of Delforno, Parnasi, and Onica sent an email from 'informedconsumer@mail.com' to Kinzie Geldbach at Bancorp from IP address 173.254.227.108, the same IP address Verschleiser used to access Frydman's email account on February 10, 2014,  stating: "You are about to enter into an agreement with an individual who allegedly [sic] does anything and everything NOT to pay his vendors and or circumvent any written agreement he or his affiliated entities have…"

73. As a result of the email described in paragraph 72 above, United Realty lost the $10 million loan it was negotiating with Bancorp.

74. On February 10, 2014, using the same service provided by Surfeasy, Verschleiser, with the assistance of Delforno, Parnasi, and Onica wrongfully and illegally and without authorization, accessed Frydman's email mailbox from IP address 173.254.227.108 and learned from intercepting and reading highly Confidential company emails that Frydman was negotiating a sublease for new corporate office space for United Realty at 180 Maiden Lane, New York, NY in a $1.4 Million transaction with Opera Real Estate as the sublandlord.

75. On February 11, 2014, Verschleiser, with the assistance of Delforno, Parnasi, and Onica sent an email from 'informedconsumer@mail.com' from IP address 173.254.227.108, the same IP address Verschleiser used to access Frydman's email account on February 10, 2014, to Amy Weins at Opera Real Estate stating: "You are about to enter into an agreement with an individual who alledgedly [sic] does anything and everything NOT to pay his vendors and or circumvent any written agreement he or his affiliated entities have…"

76. As a result of the email described in the paragraph 75 above, United Realty lost the corporate headquarters lease it was negotiating with Opera Real Estate.

77. On February 24, 2014, on information and belief, Delforno, at Verschleiser's instruction, created a second anonymous email account named 'FriendsOfEli@gmx.com' with an affiliate of mail.com from the offices of United Realty at IP address 38.104.66.182, an IP address used on an on-going basis by Delforno.

78. On February 24, 2014, Verschleiser and/or Delforno sent an email from 'FriendsOfEli@gmx.com' to Craig Gould, the CEO of Cabot Lodge Securities, LLC, the FINRA Broker Dealer owned by affiliates of Frydman. That email stated: "If you haven't seen Eli's filing last week jump online and take a look… Look at Eli's letter terminating Jacob… Be careful – you might want to exit before the sexual harassment suits, class action suits, Eli and [M]orty's suits all coming! Warning you, better have insurance protecting you! You've been warned. It will be a messy 30 days. Be careful!".

79. Eli's letter referenced in the February 24, 2014 email was dated November 29, 2013, and in it, Verschleiser purportedly terminated Frydman for "cause" (the "Alleged November 29th Letter").

80. The Alleged November 29th Letter constituted disparagement. In it, Verschleiser asserted that Frydman: (i) made unauthorized distributions to himself;  (ii) was involved in possible fraud with respect to certain written disclosures made to the SEC; (iii) made fraudulent representations and fraudulently induced certain investors, including Mr. Alan Stahler, to make loans to the Company and/or its affiliates; (iv) undertook potential fraudulent activity in connection with a transaction referred to as the Parker Note; (v) allegedly conspired to defraud investors; allegedly made materially dishonest representations of fact at public conventions and conferences; (vi)

wrongfully entered into employment agreements; acted in a morally reprehensible manner involving employees of the Company involving allegedly sexist, condescending and vulgar sexual references; and (vii) a panoply of additional false, defamatory, or derogatory comments that could reasonably be expected to damage the reputation of the Frydman.

81. The Alleged November 29th Letter, together with a second similar letter that Verschleiser also claims was dated November 29, 2013 (collectively the "Alleged November 29th Letters"), were each created by Verschleiser to stand for the proposition that it was NOT Verschleiser who was terminated by Frydman on December 2, 2013, but rather it was Verschleiser who terminated Frydman FIRST, on November 29, 2013.

82. In truth, the Alleged November 29th Letters did not exist on November 29th as claimed by Verschleiser. They were fraudulently created by Verschleiser on or after December 3, 2013 AFTER Verschleiser received, and then copied, Frydman's December 2nd termination notices to Verschleiser.

83. On March 21, 2014, using the same service provided by Surfeasy, Verschleiser, with the assistance of Delforno, Parnasi, and Onica posted a disparaging report on ripoffreport.com, allegedly by an "Ex Employee Whistle Blower" entitled "Jacob Frydman," with subheading, "Jacob Frydman, Jake Frydman, Jake the snake Frydman, Jacob A Frydman, United Realty Realty Partners, United Realty Realty Trust, … Master of deception, Megalomaniac, Scam, Fraud, Thief, Criminal, Ponzi New York New York," was posted on Ripoffreport.com. The March 21, 2014 ripoff report states: "Jacob Frydman is trying to raise money from the public through a Non Traded REIT, United Realty Realty Trust. He has induced many to work for his failing company by promising them stock as an incentive which he never delivers. His partner who funded the company resigned and sued him for stealing and fraud. Jacob Frydman will

wine you, dine you, then screw you.  He does not pay his bills, even the smallest of them. … Can it be a scam?  Is it like Madoff on a small scale?  Is there a fraud taking place?  How many banks are screwed?  Is there a criminal hiding within?  Protect yourself as the poor innocent people get hurt daily in this fictitious world of Wall Street wannabes."

84. Verschleiser is no stranger to RipoffReprt.com.  In fact he was a victim of Ripoffreport, and on July 3, 2013 the Daily News reported that Verschleiser filed a lawsuit against a person "accusing him of being a crook and once being "Brooklyn's infamous ecstasy dealer' in a posting by Christopher Justice on RipoffReport.com".

85. Having suffered through what Verschleiser claimed is a false and defamatory report posted against him on RipoffReport.com, Plaintiffs believe and hereby assert that Verschleiser simply took someone else's playbook against Verschleiser and turned it on Frydman and United Realty.

86. On April 12, 2014, upon information and belief, Verschleiser, with the assistance of Delforno, Parnasi, and Onica posted yet another disparaging post on ComplaintsBoard.com claiming that Jacob Frydman and United Realty  "will not give you back your money when you ask for it back.  be a aware. [sic] look up the ceo Jacob frydman [sic] and it seems like he is not honest or a wall street theif".

87. On April 12, 2014 Verschleiser, with the assistance of Delforno, Parnasi, and Onica posted yet another disparaging post on ScamGuard.com claiming that: United Realty Realty: "They take your investment in the stock they sell and then dont let you get the money back.  This company is supposed to be public and audited by earnst [sic] and young. they promise to give you your money back and when you request it they say you can not get it back. it is a non- traded

reit [sic] that i now see has many problems. i will call the sec to complain. Please help me it is all of my retirement money."

88. On April 14, 2014, Verschleiser sent the false and fraudulent November 29th disparagements as attachments in an email to David Newman, a member of the board of directors of United Realty Trust, under the subject heading: "[f]or your read", and suggesting in the email "I was told that I should share this with you as it is likely to become a very public story in the near future".

89. On April 14, 2014, on information and belief, Verschleiser, with the assistance of Delforno, Parnasi, and Onica posted yet another disparaging post on REITwrecks.com claiming that "i [sic] searched Jacob Frydman and see fraud cases with this ceo [sic] of United Realty realty [sic]".

90. On April 17, 2014, on information and belief, Verschleiser, with the assistance of Delforno, Parnasi, and Onica posted yet another disparaging post on Ripoff Report.com claiming that "Jacob Frydman will do anything to hurt anyone".

91. On July 11, 2014, upon information and belief, Verschleiser, with the assistance of Delforno, Parnasi, and Onica posted yet another disparaging post on REITwrecks.com claiming that: "United Realty Trust Jacob Frydman Fraud by PutJacobInJail » Sat Jul 12, 2014 12:05 am look into the CEO before giving them money. He clearly has many issues relating to FRAUD. Jacob Frydman of http://www.urpa.com has been sued many times for fraud . . . He can end up in Jail.

92. On July 12, 2014, upon information and belief, Verschleiser, with the assistance of Delforno, ParnasI, and Onica posted yet another disparaging post, and, in fact, violated Frydman's privacy rights, by illegally using his name and likeness to create a blog A titled:

"JacofFrydmanFraud" through which he posted the following words under a large banner that stated: "FRAUD" with a large picture of Mr. Frydman's face that stated: "JACOB FRYDMAN SCAM Posted by jacob It is amusing to see that the SEC and FINRA lets a complete fraud take place with a public company http://www.United Realtyrealtytrust.com Jacob Frydman steals old peoples money, has his friends and lawyers on his independent board, then buys notes with other notes and gives it to the public in exchange for cash he NEVER paid for it."

93. On July 15, 2014, Verschleiser, with the assistance of Delforno, Parnasi, and Onica posted yet another disparaging post on ScamGuard.com stating: "Jacob Frydman and United Realty - Beware: The too good to be true United Realty - Frydman new scam. The CEO has many lawsuits against him especially FRAUD….".

94. On February 11, 2014, Frydman learned that "anonymous" emails had been sent to the lender and sub-landlord with whom Frydman was then dealing, the identities of whom could have been learned only by hacking into Frydman's email account.

95. On February 11, 2014, as a result of the foregoing, Frydman contacted Intermedia and was directed to Ryan Barrett, an Intermedia executive who was responsible for security.

96. Barrett commenced an investigation and provided Frydman with logs of activities on the United Realty email exchange server that revealed that Verschleiser, with the assistance of Delforno, Parnasi, and Onica, had hacked Frydman's email mailbox on the United Realty email exchange server and secreted confidential proprietary data regarding, *inter alia,* a $10 million loan and a $1.4 million lease Frydman was then negotiating.

97. The information provided by Barrett, as well as archived emails which United Realty has since been able to recover and additional logs obtained from Intermedia, disclosed that Verschleiser, with the assistance of Delforno, Parnasi, and Onica had, without authorization,

infiltrated the United Realty email exchange server and conducted an intensive, long-term, organized, criminal conspiracy to wrongfully access Plaintiffs' email exchange server, intercept email communications, and conduct fraudulent activities in connection with United Realty's email exchange server in violation of the CFAA, ECPA, and SCA.

98. As detailed above, from and after December 11, 2013, Verschleiser, with the assistance of Delforno, Parnasi, and Onica, without authorization, secretly logged into Frydman's email mailbox using Frydman's login information and intercepted and read Frydman's emails.

## FIRST CAUSE OF ACTION
## COMPUTER FRAUD AND ABUSE ACT - 18 U.S.C. § 1030

99. The allegations set forth in paragraphs 1 through 98 of this Complaint are realleged as if fully set forth herein.

100.    United Realty's email exchange server is hosted on a "protected computer", as that term is defined in 18 U.S.C. § 1030(e)(2)(B), in that it is hosted by Intermedia on a data storage or communications facility directly relating to and operating in connection with an electronic, magnetic, optical, electrochemical or other high speed data processing device performing logical, arithmetic, and/or storage functions, which is used in and affects interstate commerce and communication.

101.    Verschleiser, Delforno, Parnasi, and Onica intentionally accessed United Realty's protected computer without authorization, in that Defendants used Frydman's credentials to access such computer, without Plaintiffs' permission, in violation of 18 U.S.C. § 1030(a)(2)(C); and, more specifically, with the knowing, conscious and willful intent to obtain Plaintiffs' confidential, proprietary and trade secret information.

102.    Verschleiser intentionally and unlawfully accessed access Plaintiffs' protected computer without authorization, in that Verschleiser used his former credentials to access such

computer, after his employment with United Realty had been terminated, and his permission to access such computer had been terminated by United Realty, in violation of 18 U.S.C. § 1030(a)(2)(C); and, more specifically, with the knowing, conscious and willful intent to obtain Plaintiff's confidential, proprietary and trade secret information.

103.     Parnasi intentionally accessed Plaintiffs' protected computer without authorization, in that Parnasi attempted to use his former credentials and/or such credentials as Verschleiser and/or Delforno had wrongfully provided to Parnasi to access such computer, after his employment with United Realty had been terminated, and his permission to access such computer had been terminated by United Realty, in violation of 18 U.S.C. § 1030(a)(2)(C); and, more specifically, with the knowing, conscious and willful intent to obtain Plaintiff's confidential, proprietary and trade secret information.

104.     Onica intentionally accessed Plaintiffs' protected computer without authorization, in that Onica attempted to use credential she obtained as an IT consultant to United Realty and/or such credentials as Verschleiser and/or Delforno had wrongfully provided to Onica to access such computer, after his consulting arrangement with United Realty had ended, and his permission to access such computer had been terminated by United Realty, in violation of 18 U.S.C. § 1030(a)(2)(C); and more specifically, with the knowing, conscious and willful intent to obtain Plaintiff's confidential, proprietary and trade secret information.

105.     Delforno, knowingly, and with the intent to defraud Plaintiffs, accessed United Realty's  protected computer without authorization and "exceeding authorized access" as that term is defined in 18 U.S.C. § 1030(e)(6), and by means of such conduct furthered his fraudulent scheme to obtain Plaintiffs confidential, proprietary and trade secret information, and misappropriate such information to steal United Realty proprietary information to assist

Verschleiser, including by means of fraudulent misrepresentations made to the Company, in violation of 18 U.S.C. § 1030(a)(4).

106.     Verschleiser, Delforno, Parnasi, and Onica caused losses and damages to United Realty  exceeding $ 5,000 in value in one or more one-year periods, specifically at during the period December 2, 2013 through July 15, 2014, as prescribed by 18 U.S.C. § 1030(c)(4)(A)(i)(I).

107.     On account of Defendants' actions, Plaintiffs have sustained losses and damages in an amount to be determined at trial, but believed to be not less than $50 Million, including but not limited to lost loans, lost leases, lost revenues and the cost of responding to Defendants' offenses and conducting damage assessment, and Verschleiser, Delforno, Parnasi, and Onica are each liable, jointly and severally to Plaintiffs for such damages pursuant to 18 U.S.C. § 1030(g).

## SECOND CAUSE OF ACTION
### WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS ACT – 18 U.S.C. § 2520

108.     The allegations set forth in paragraphs 1 through 107 of this Complaint are realleged as if fully set forth herein.

109.     Verschleiser, Delforno, Parnasi, and Onica's actions as above set forth constitute the intentional illegal interception, use and disclosure of protected communications in violation of the Wire and Electronic Communications Interception and Interception of Oral Communications Act, 18 U.S.C. § 2520.

110.     Verschleiser's, Delforno's, Parnasi's, and Onica's actions as above set forth constitute the use and disclosure of the illegally intercepted emails in violation of 18 U.S.C. §2511(1)(c).

111.     On account of Defendants' actions, Plaintiffs have sustained losses and damages in an amount to be determined at trial, but believed to be not less than $50 Million, including but not limited to lost loans, lost leases, lost revenues and the cost of responding to Defendants' offenses and conducting damage assessment, and Verschleiser, Delforno, Parnasi, and Onica are each liable, jointly and severally to Plaintiffs for such damages pursuant to 18 U.S.C. § 2510 et seq.

### THIRD CAUSE OF ACTION
### STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS ACT - 18 U.S.C. § 2707

112.     The allegations set forth in paragraphs 1 through 112 of this Complaint are realleged as if fully set forth herein.

113.     With the exception of certain emails sent by Frydman to, or received from Delforno while Delforno was an employee of United Realty, none of the Defendants were the senders or the intended recipients of the Electronic Communications stored in Frydman's mailbox on the United Realty email exchange server.

114.     Defendants' access to the digitally stored email messages and attachments thereto was not authorized by Plaintiffs.

115.     By their actions as set forth above, Verschleiser, Delforno, Parnasi, and Onica intentionally accessed without authorization a facility through which an electronic communication service was provided;" and /or "intentionally exceeded" authorization to access that facility; and thereby obtained electronic communications while in electronic storage in such system in contravention of 18 U.S.C. 2701(a)(1)-(2).

116.     None of the Defendants had a property or possessory interest in the facility utilized to access and download the stored emails, attachments and data or to reproduce or access the emails accessed, backed-up and downloaded on the dates set forth above.

117.     The emails which were wrongfully accessed by Defendants as above set forth are "electronic communications" under the Stored Communications Act.

118.     On account of Defendants' actions, Plaintiffs have sustained losses and damages in an amount to be determined at trial, but believed to be not less than $50 Million, including but not limited to lost loans, lost leases, lost revenues and the cost of responding to Defendants' offenses and conducting damage assessment, and Verschleiser, Delforno, Parnasi, and Onica are each liable, jointly and severally to Plaintiffs for such damages pursuant to 18 U.S.C. § 2700 et seq.

## FOURTH CAUSE OF ACTION
## INJUNCTIVE RELIEF UNDER THE STORED COMMUNICATIONS ACT

119.     The allegations set forth in paragraphs 1 through 118 of this Complaint are realleged as if fully set forth herein.

120.     18 U. S. C § 2707 permits the filing of a Civil Action for violations of the Stored Communications Act, and includes the right to seek injunctive relief.

121.     Plaintiffs have suffered irreparable injury in that they have been deprived of the content of all the back-up and archived files which Defendants have wrongfully scheduled, caused to be created, downloaded, copied and deleted from the United Realty email exchange server.

122.     Plaintiffs request that this court enter am Injunctive Order which by its terms prohibits the continued access, storage, dissemination and publication of the emails and attachments which Defendants illegally obtained, and order Defendants to immediately return to

Plaintiffs all unlawfully accessed stored communications, including, without limitation, each of the each of the following Backup files (in electronic form) made and copied after December 2, 2013: 'Jacob_Frydman_12-06-2013.pst'; 'Eli_Verschleiser_12-06-2013.pst';' 'URPA_Backup_ Joseph_Santacruz_12-01-2013.pst'; 'Asher_Gulko_12-06-2013.pst'; 'Monica_Frydman_12-06-2013.pst'; 'Cathy_Larson_12-08-2013.pst', and 'Jacob_Frydman_12-09-2013.pst', including all copies thereof in their possession or under their control.

## FIFTH CAUSE OF ACTION
## INJUNCTIVE RELIEF UNDER THE UNITED REALTY EMPLOYEE MANUAL

123.    The allegations set forth in paragraphs 1 through 122 of this Complaint are realleged as if fully set forth herein.

124.    As set forth above, Verschleiser's and Delforno's actions are in violation of their undertakings pursuant to the United Realty Employee Manual.

125.    As a result of Defendant Verschleiser and Deldorno's violations of the United Realty Employee Manual, Plaintiff United Realty has suffered irreparable injury in it has been deprived of the content of all the back-up and archived files which Verschleiser wrongfully accessed, and then created, downloaded, copied and deleted from the United Realty email exchange server as above set forth.

126.    Plaintiff United Realty requests that this Court enter an Injunctive Order which by its terms prohibits the continued access, storage, dissemination and publication of the emails and attachments which Verschleiser illegally obtained, and order Defendant Verschleiser to immediately return to United Realty all unlawfully accessed stored communications which he copied, including, without limitation, each of the each of the following Backup files (in electronic form) made and copied after December 2, 2013: 'Jacob_Frydman_12-06-2013.pst';

'Eli_Verschleiser_12-06-2013.pst';' 'URPA_Backup_ Joseph_Santacruz_12-01-2013.pst';

'Asher_Gulko_12-06-2013.pst'; 'Monica_Frydman_12-06-2013.pst'; 'Cathy_Larson_12-08-

2013.pst', and 'Jacob_Frydman_12-09-2013.pst',  including all copies thereof in Verschleiser's

possession or under his control.

## SIXTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

127.     The allegations set forth in paragraphs 1 through 126 of this Complaint are

realleged as if fully set forth herein.

128.     By virtue of the confidential, proprietary and trade secret information that

Verschleiser and Delforno obtained during the term of their employment with United Realty, and

by virtue of the confidential, proprietary and trade secret information Verschleiser obtained by

his illegal and improper hacking into United Realty's email exchange server and Frydman's

email account, Verschleiser and Delforno became aware of a $10 million loan being negotiated

by Frydman with Bancorp in early February 2014, and of a sublease for space located at 180

maiden Lane in New York City which Frydman was then negotiating with Opera Real Estate for

United Realty's new corporate offices.  Verschleiser and Delforno wrongfully misappropriating

such information, maliciously sent "anonymous" disparaging emails to the prospective lenders

and sublandlord, intending to interfere with the putative transactions.

129.     But for Verchleiser's and Delforno's tortious interference, Plaintiffs would have

concluded the loan transaction and the sublease.

130.     Verschleiser's and Delforno's conduct was fraudulent and culpable, including by

reason of their wrongful use of Plaintiffs' confidential, proprietary and trade secret information

to send disparaging emails to said lenders and sublandlord.

131.     By reason of Verschleiser's and Delforno's tortious interference, Plaintiffs were damaged in an amount to be determined at trial, but believed to be not less than $11,400,000.00.

132.     In addition, because Verschleiser's and Delforno's conduct was so willful, contumacious, and contrary to societal norms, Plaintiffs are entitled to recover exemplary and punitive damages, in the sum of $25,000,000.00 or such other amount as this Court may determine.

### SEVENTH CAUSE OF ACTION
### BREACH OF UNDERTAKINGS PURSUANT TO THE UNITED REALTY EMPLOYEE MANUAL BY VERSCHLEISER

133.     The allegations set forth in paragraphs 1 through 132 of this Complaint are realleged as if fully set forth herein.

134.     By virtue of Verschleiser's conduct as set forth in this Complaint, Verschleiser breached the undertakings required of each United Realty employee under the United Realty Employee Manual regarding confidentiality and non-solicitation.

135.     On account of Verschleiser's breaches of his employment undertakings, United Realty was damaged in an amount to be determined at trial, but believed to be not less than $ 50 Million.

### EIGHTH CAUSE OF ACTION
### BREACH OF DUTY OF LOYALTY BY DELFORNO

136.     The allegations set forth in paragraphs 1 through 135 of this Complaint are realleged as if fully set forth herein.

137.     During the term of his employment with Plaintiff United Realty, Defendant Delforno owed Plaintiff United Realty a duty of loyalty.

138.     During the term of his employment with Plaintiff United Realty, Defendant Delforno acted contrary to Plaintiffs' interests.

139.     Defendant Delforno breached his duty of loyalty to Plaintiff United Realty and has caused United Realty to suffer damages in an amount to be determined at trial and for which United Realty now sues but believed to be not less than $50 Million.

## NINTH CAUSE OF ACTION
## CIVIL CONSPIRACY

140.     The allegations set forth in paragraphs 1 through 139 of this Complaint are realleged as if fully set forth herein.

141.     Defendants conspired with one another to illegally access, without authorization, Plaintiffs' email exchange server and the mailboxes of United Realty employees maintained thereon, misappropriate United Realty's trade secrets, and intentionally interfere with the business relations of Plaintiffs and as otherwise set forth herein.

142.     Defendants committed numerous overt acts in furtherance of the conspiracy including, but not limited to the actions detailed above, and retaining United Realty's proprietary data and confidential information and trade secrets; copying or then destroying United Realty's electronically stored information; as well as other overt acts.

143.     As a direct result of the foregoing conduct, undertaken by Defendants, Defendants have caused and continue to cause damages to United Realty, including but not limited to attorneys' fees and costs expended that will be expended in the future by United Realty to enforce its legal rights.

144.     Defendants' conspiracy was willful and malicious and performed with an evil motive and with reckless indifference to the rights of others, entitling Plaintiffs to punitive damages.

## TENTH CAUSE OF ACTION
## CONVERSION

145.     The allegations set forth in paragraphs 1 through 144 of this Complaint are realleged as if fully set forth herein.

146.     After December 2, 2013 and at other times unknown to Plaintiffs, Defendants assumed the right of ownership over personal property of United Realty including, but not limited to the confidential and proprietary information, trade secrets, email communications and attachments and Backup files made and copied after December 2, 2013, including, without limitation, 'Jacob_Frydman_12-06-2013.pst'; 'Eli_Verschleiser_12-06-2013.pst';' 'URPA_Backup_ Joseph_Santacruz_12-01-2013.pst'; 'Asher_Gulko_12-06-2013.pst'; 'Monica_Frydman_12-06-2013.pst'; 'Cathy_Larson_12-08-2013.pst', and 'Jacob_Frydman_12-09-2013.pst', and such other property of Plaintiffs as is set forth above.

147.     The assumption by Defendants of right of ownership over the personal property as listed above was without authorization by Plaintiffs and Defendants have continued to exercise ownership and dominion to the exclusion of Plaintiffs over said property even though Plaintiffs have made a demand for return of said property and Defendants' have been under an obligation to return said property.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs United Realty and Frydman pray for judgment as follows:

    (a) Permanently restraining Verschleiser, Delforno, Parnasi and Onica, and all those acting in concert with them, on their behalf, or obtaining or purporting to obtain rights by and through any of them, from: (i) using, distributing, selling, licensing, offering for sale, or otherwise disclosing United Realty and Frydman's confidential, proprietary and trade secret information, as gained during the course of their employment with United Realty, and by reason of their illegal hacking into United Realty's email exchange server and other computers and systems; (ii) tortiously interfering with United Realty's prospective economic relations, or those of United Realty's successors, affiliates or assigns, with any third parties (iv) violating the Employment Agreement and the United Realty Employment Manual; (v) accessing the computer systems, servers and files of United Realty and Frydman and their respective successors, affiliates or assigns, without proper, express and written authorization to so; (vi) violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Wire and Electronic Communications Interception and Interception of Oral Communications Act 18 U.S.C. § 2520, the Stored Wire and Electronic Communications and Transactional Records Access Act, 18 U.S.C. § 2707; or (vii) attempting to do any of the foregoing;

    (b) Entering an order prohibiting Defendants Verschleiser, Delforno, Parnasi, and Onica from the continued access, storage, dissemination and publication of the emails and attachments which Defendants illegally obtained, and order Defendants to immediately return to Plaintiffs all unlawfully accessed stored communications, including, without limitation, each of the following Backup files (in electronic form) made and copied after December 2, 2013: 'Jacob_Frydman_12-06-2013.pst'; 'Eli_Verschleiser_12-06-2013.pst';' 'URPA_Backup_ Joseph_Santacruz_12-01-2013.pst'; 'Asher_Gulko_12-06-2013.pst'; 'Monica_Frydman_12-06-2013.pst'; 'Cathy_Larson_12-08-2013.pst', and 'Jacob_Frydman_12-09-2013.pst',  including all copies thereof in their possession or under their control.

    (c) On the first, second, and third causes of action, awarding a sum to be determined at trial in favor of Plaintiffs and against Defendants, jointly and severally;

    (d) On the sixth cause of action, awarding a sum to be determined at trial in favor of United Realty and against Verschleiser and Delforno; plus exemplary and punitive damages, in the sum of $25 Million, or such other amount as this Court may determine;

    (e) On the seventh cause of action, awarding a sum to be determined at trial in favor of United Realty and against Verschleiser;

    (f) On the eighth cause of action, awarding a sum to be determined at trial in favor of United Realty and against Delforno;

    (g) On the ninth cause of action, entering a judgment in favor of Plaintiffs and against Verschleiser, Delforno, Parnasi and Onica, jointly and severally, for exemplary and punitive damages, in the sum of $25 Million, or such other amount as this Court may determine because

Defendants' conduct is willful, wanton, malicious, and done with the intent of causing injury to Plaintiffs;

(h) On the tenth cause of action, awarding a sum to be determined at trial in favor of Plaintiffs and against Verschleiser, Delforno, Parnasi and Onica, jointly and severally and ordering Defendants to return to Plaintiffs all proprietary, confidential, and trade secret information belonging to Plaintiff, including, without limitation, each of the following Backup files (in electronic form) made and copied after December 2, 2013: 'Jacob_Frydman_12-06-2013.pst'; 'Eli_Verschleiser_12-06-2013.pst';' 'URPA_Backup_Joseph_Santacruz_12-01-2013.pst'; 'Asher_Gulko_12-06-2013.pst'; 'Monica_Frydman_12-06-2013.pst'; 'Cathy_Larson_12-08-2013.pst', and 'Jacob_Frydman_12-09-2013.pst',  including all copies thereof in their possession or under their control.

(i) awarding Plaintiffs interest on its judgment, and its costs, disbursements and reasonable attorneys' fees incurred in connection with this action to the extent permitted by law; and

(j) Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
July 29, 2014

By:_____
Jacob Frydman
*Pro se*
60 Broad Street, 34th Floor
New York, New York 10004
(212) 388-6800
Jacob.F@urpa.com

WROBEL SCHATZ & FOX LLP

By:_____
David C. Wrobel (DW-5242)
M. Katherine Sherman (KW-7490)
1040 Avenue of the Americas, 11th Floor
New York, NY 10018
(212) 421-8100
wrobel@wsfny.com
sherman@wsfny.com