**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED REALTY ADVISORS, LP and
JACOB FRYDMAN,

       Plaintiffs,

vs.

ELI VERSCHLEISER, RAUL DELFORNO,
OPHIR PINHASI, ALEX ONICA,

       Defendants.

Index No.: 14-cv-5903 (JGK)

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Defendants*
*Eli Verschleiser, Raul Delforno, Ophir Pinhasi and Alex Onica*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

FACTURAL BACKGROUND ..................................................................................2

    A.   The Frydman State Action: *JFURTI v. Verschleiser* .......................... 2

    B.   The Verschleiser State Action: *EVUNP v. Frydman* ............................. 4

    C.   The Frydman Federal Action: *United Realty Advisors v. Verschleiser* ................. 4

    D.   Lawsuit Number Three: *Winter Investors, LLC v. Panzer* ..................... 5

    E.   Lawsuits Number Four and Five: The *Caesars* Action and the *AJC* Action.......... 6

ARGUMENT ..................................................................................7

I.    THE COURT SHOULD ABSTAIN FROM EXERCISING JURISIDCTION IN FAVOR OF THE PENDING STATE COURT ACTION. ..................................................................................7

    A.   This Action is Parallel to the Proceedings Frydman Initiated in State Court ......... 8

    B.   Application of the *Colorado River* Factors Shows that the New York Court is the Most Appropriate Forum for Resolving this Dispute. ......................................... 10

        1.   The Avoidance of Piecemeal or Duplicative Litigation or Inconsistent Rulings ................................................................ 11

        2.   Mr. Frydman's  Lawsuits Were Filed to Harass Mr. Verschleiser .......... 13

        3.   The State Actions Were Filed Five Months Before This Action and Have Progressed Significantly ...................................... 15

        4.   The Federal Claims are Identical to the State Claims............................. 16

II.   PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6) ...............................................17

    A.   The Complaint Does Not Allege That Onica and Pinhasi Engaged In Any Unlawful Acts ........................................................ 18

    B.   Plaintiffs' Computer Fraud and Abuse Act Claims Should Be Dismissed........... 19

        1.   Plaintiffs Do Not Plead $5,000 or More in Losses ................................... 20

        2.   Count One Fails Because Plaintiffs Do Not Plead That Each Defendant Trafficked Plaintiffs' Passwords.............................................. 22

        3.   Count Two Fails Because Plaintiffs Do Not Plead Extortion................... 23

        4.   Counts Three and Four for Injunctive Relief and Conspiracy  Do Not State a Claim ................................................................ 24

    C.   The Electronic Communications Privacy Act Claims Should Be Dismissed....... 26

        1.   Counts Five Through Eight Fail Because the Complaint Does Not Plead that Verschleiser, Pinhasi or Onica Intercepted a Communication .......... 26

2.    Count Six Must Be Dismissed as to Delforno, Pinhasi  and Onica Because the Complaint Does Not Plead That They Disclosed an Intercepted Communication ...................................................................................... 27

3.    Counts Seven Must Be Dismissed Because the Complaint Does Not Plead That Delforno, Pinhasi and Onica Used an Intercepted Communication . 28

4.    Count Eight Is Not a Substantive Cause of Action ................................... 28

D.    Certain Stored Communications Act Claims Should be Dismissed .................... 29

E.    The New York Penal Law Claims Should Be Dismissed ..................................... 29

III.    The Court Should Award Defendants Their Costs Defending this Frivolous Lawsuit ...........................................................................................................30

CONCLUSION ............................................................................................................32

# TABLE OF AUTHORITIES

## Cases

*Am. Disposal Servs., Inc. v. O'Brien*,
  839 F.2d 84 (2d Cir. 1988) ........................................................................ 16

*Arizona v. San Carlos Apache Tribe of Ariz.*,
  463 U.S. 545 (1983) .................................................................................. 11

*Arkwright-Boston Mfg. Mut. Ins. Co. v. City of New York*,
  762 F.2d 205 (2d Cir. 1985) ........................................................... 7, 10, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 17, 19, 23

*Atpac, Inc. v. Aptitutde Solutions, Inc.*,
  730 F.Supp.2d 1174 (E.D. Cal. 2010) ...................................................... 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 17, 23

*Blissworld, LLC v. Kovack*,
  No. 125431/00, 2001 WL 940210 (N.Y. Sup. Ct. Jul. 9, 2011) ................ 30

*Caro v. Weintraub*,
  618 F.3d 94 (2d Cir. 2010) ........................................................................ 29

*Casey Sys., Inc. v. Firecom*,
  No. 94-cv-9327, 1995 WL 704964 (S.D.N.Y. Nov. 29, 1995) .................. 30

*Ciambriello v. County of Nassau*,
  292 F.3d 307 (2d Cir. 20002) ................................................................... 25

*Colorado River Water Conservation District v. United States*,
  424 U.S. 800 (1976) .................................................................................... 7

*Davey v. Dolan*,
  453 F. Supp. 2d 749 (S.D.N.Y. 2006), *aff'd*, 292 F. App'x 127 (2d Cir. 2008) ...................... 30

*DirecTV, Inc. v. Lewis*,
  2005 WL 1006030 (W.D.N.Y. 2005) ........................................................ 24

*Elektra Entm't Grp., Inc., v. Santangelo*,
  No. 06 cv 11520, 2008 WL 4452393 (S.D.N.Y. Oct. 1, 2008) ................ 25

*EMS Indus. Corp. v. Acciai Speciali Terni, USA, Inc.*,
  No. 99 CIV. 9050, 2000 WL 101233 (S.D.N.Y. Jan. 26, 2000) .......... 15, 16

*Ferolito v. Menashi*,
  918 F. Supp. 2d 136 (E.D.N.Y. 2013) ...................................................... 12

*Fisk v. Letterman*,
  424 F. Supp. 2d 670 (S.D.N.Y. 2006) ...................................................... 25

*Freckleton v. City of Hartford*,
  No. 11 cv 798, 2012 WL 1565127 (D. Conn. May 2, 2012) ............... 25, 29

*Garcia v. Tamir,*
No. 99 CIV 0298, 1999 WL 587902 (S.D.N.Y. Aug. 4, 1999) ............................... 8, 16, 17, 32

*Gen. Reinsurance Corp. v. CIBA-Geigy Corp.,*
853 F.2d 78 (2d Cir. 1988) ................................................................................. 10

*Gen. Star Int'l Indem., Ltd. v. Chase Manhattan Bank,*
57 F. App'x 892 (2d Cir. 2003) ............................................................................ 11

*G-I Holdings, Inc. v. Baron & Budd,*
179 F.Supp.2d 233 (S.D.N.Y. 2001) .................................................................... 24

*Hudson v. Goldman Sachs & Co. Inc.,*
283 A.D.2d 246 (1st Dep't 2001) ........................................................................ 17

*Inn Chu Trading Co. v. Sara Lee Corp.,*
810 F. Supp. 501 (S.D.N.Y. 1992) ........................................................................ 7

*International Chauffeured Service, Inc. v. Fast Operating Corp.,*
No. 11-2262, 2012 WL 1279825 (S.D.N.Y. Apr. 16, 2012) ............................... 20, 22

*JBCHoldings NY, LLC v. Pakter,*
931 F. Supp. 2d 514 (S.D.N.Y. 2013) .................................................................. 19

*KM Enterprises, Inc. v. McDonald,*
2012 WL 4472010 (E.D.N.Y. 2012) .................................................................. 25, 29

*Larson v. Liberty Mut. Fire Ins. Co.,*
No. 11-cv-00272, 2012 WL 93181 (D. Hawaii Jan. 10, 2012) ............................ 26

*MidAmerica Productions, Inc. v. Derke,*
33 Misc. 3d 1209(A) (Sup. Ct. N.Y. County Dec. 27, 2010) ............................... 17

*Modis, Inc. v. Baradelli,*
531 F.Supp.2d 314 (D. Conn. 2008) ................................................................. 20, 22

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,*
460 U.S. 1 (1983) ................................................................................................ 8

*MSCI Inc. v. Jacob,*
96 A.D.3d 637 (1st Dep't 2012) .......................................................................... 17

*Nakahara v. Bal,*
No. 97 cv 2027, 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ............................... 24

*Nexans Wires S.A. v. Sark-USA, Inc.,*
166 Fed. Appx. 559 (2d Cir. 2006) ..................................................................... 20

*Nexans Wires S.A. v. Sark-USA, Inc.,*
319 F.Supp.2d 468 (S.D.N.Y. 2004) *aff'd* 166 F. App'x 559 (2d Cir. 2006) .......... 22

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,*
673 F.3d 84 (2d Cir. 2012) ............................................................................... 8, 11

*Peavy v. WFAA-TV, Inc.,*
221 F.3d 158 (5th Cir. 2000) .............................................................................. 27

*PNC Mortgage v. Superior Mortgage Corp.,*
   No. 09 cv 5084,2012 WL 927995 (E.D. Pa. Feb. 27, 2012)..................... 25

*Pure Power Boot Camp v. Warrior Fitness Boot Camp,*
   587 F.Supp.2d 548 (S.D.N.Y. 2008) ....................................................... 26

*Sanders v. Grenadier Realty, Inc.,*
   367 F. App'x 173 (2d Cir. 2010) ............................................................. 19

*Schefts v. Petrakis,*
   954 F.Supp.2d 769 (C.D. Ill. Jun. 21, 2013)........................................... 27

*Snyder v. Fantasy Interactive, Inc.,*
   No. 11 cv 3593, 2012 WL 569185 (S.D.N.Y. Feb. 9, 2012) .................... 30

*Sprint Solutions Inc., v. Pac. Cellupage Inc.,*
   No. 13-cv-07862, 2014 WL 3715122 (C.D. Cal. Jul. 21, 2014) ......... 20, 22

*State Analysis, Inc. v. American Financial Serv. Assoc.,*
   621 F.Supp.2d 309 (E.D. Va. 2009) ........................................................ 23

*Telesco v. Telesco Fuel & Masons' Materials, Inc.,*
   765 F.2d 356 (2d Cir. 1985) ......................................................... 8, 10, 14

*United States v. Blake,*
   942 F.Supp.2d 285 (E.D.N.Y. 2013) ......................................................... 9

*United States v. Nosal,*
   676 F.3d 854 (9th Cir. 2012) ................................................................... 18

*Vishipco Line v. Charles Schwab & Co.,*
   No. 02 Civ. 7823, 2003 WL 1345229 (S.D.N.Y. Mar. 19, 2003) ....... 30, 32

*Winter Investors, LLC, et al., v. Panzer, et al.,*
   14-cv-6852 (S.D.N.Y.) ......................................................................... 5, 6

**Statutes**

18 U.S.C. § 1029(e)(5)................................................................................ 23

18 U.S.C. § 1030........................................................................................ 17

18 U.S.C. § 1030(a) ................................................................................... 20

18 U.S.C. § 1030(a)(6)............................................................................... 23

18 U.S.C. § 1030(a)(7)........................................................................... 20, 24

18 U.S.C. § 1030(b) ................................................................................... 20

18 U.S.C. § 1030(e)(11)............................................................................. 20

18 U.S.C. § 1030(g) ................................................................................... 20

18 U.S.C. § 1030(c)(4)(A)(i)(I) .................................................................. 20

18 U.S.C. § 2511........................................................................................ 26

18 U.S.C. § 2511(1)................................................................................... 29

18 U.S.C. § 2511(2)(d) ............................................................................................ 29

18 U.S.C. § 2520 ...................................................................................................... 26

18 U.S.C. § 2511(1)(d) ............................................................................................ 28

18 U.S.C. § 2511(2)(d) ...................................................................................... 28, 29

18 U.S.C. § 2520 ...................................................................................................... 18

18 U.S.C. § 2521 ...................................................................................................... 29

18 U.S.C. § 2701(b)(1) ............................................................................................ 29

18 U.S.C. § 2707 ...................................................................................................... 18

28 U.S.C. § 1927 ...................................................................................................... 30

New York Penal Law 156 .................................................................................. 18, 29

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) .................................................................. 27

S. REP. NO. 104-357 at 12 (1996) ........................................................................... 24

Defendants Eli Verschleiser, Raul Delforno, Ophir Pinhasi and Alex Onica (collectively "Defendants") by their attorneys Reed Smith LLP, respectfully submit this memorandum of law in support of their Motion to Dismiss Jacob Frydman and United Realty Advisors, LP's (collectively, "Plaintiffs") Amended Complaint ("Am. Compl.") dated October 15, 2014.

## PRELIMINARY STATEMENT

This is one of the extraordinary situations meriting abstention under *Colorado River*. Plaintiff Jacob Frydman has abused this Court's jurisdiction by recently filing multiple, meandering lawsuits in federal court that are duplicative of the claims that he first asserted in state court eight months ago.

Since March 2014, Mr. Frydman filed five separate lawsuits against his former business partner, Mr. Verschleiser. Three of these lawsuits, including the instant action, are predicated on claims that Mr. Verschleiser "hacked" into Mr. Frydman's email, and used the information he obtained to make disparaging statements to Frydman's potential business partners. Two of these lawsuits were filed by Mr. Frydman mere hours after the Court held its pre-motion conference, without notifying the Court that he intended to do so.

Each of these lawsuits asserts claims against different defendants, and unquestionably pose the risk of inconsistent outcomes, which is the "paramount consideration" in favor of abstention under *Colorado River*. At a recent hearing, Justice Bransten, the state court judge, substantiated this concern, stating that it is "more likely than not" that the parties would receive "two opposite decisions" from the state and federal courts.

The Court should also abstain because the state lawsuit has progressed significantly while the instant action is in its infancy. In the state action, the parties have conducted extensive discovery and the court held several hearings, rendering decisions on the scope of discovery and

admissibility of evidence. On January 8, 2015 the state court will hold a hearing on the merits of Mr. Frydman's hacking and disparagement claims, in the context of his motion for a preliminary injunction.

Should the Court decline to dismiss or stay this action under *Colorado River*, many of Plaintiffs' causes of action must be dismissed in whole or part for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on three principal grounds. *First,* Plaintiffs' Computer Fraud and Abuse Act claims do not allege that they suffered $5,000 or more in cognizable losses. *Second,* Plaintiffs claims under the Electronic Privacy Act are devoid of allegations that Verschleiser, Pinhasi and Onica intercepted a communication, and that Delforno, Pinhasi and Onica used or disclosed an intercepted communication. *Finally,* there is no private right of action for Plaintiffs' New York's Penal Law claims.

## FACTUAL BACKGROUND

### A. The Frydman State Action: *JFURTI v. Verschleiser*

In March of 2014, Mr. Frydman sued his former business partner, Eli Verschleiser in New York State Supreme Court, New York County seeking a declaratory judgment that Mr. Verschleiser[1] breached the terms of their separation agreement by, *inter alia,* allegedly (i) hacking into Frydman's computer to obtain information which Verschleiser then used to send disparaging statements to Frydman's potential business associates and (ii) failing to transfer control of certain administrative rights to their email system by December 5, 2013(the "Frydman

---

[1] The state complaint also names as plaintiffs several of Mr. Frydman's entities and as defendants several of Mr. Verschleiser's entities. *See infra,* n. 7.

State Action"). *See* Am. State Compl. ¶¶ 55-69, 70-73, 77-78, *JFURTI v. Verschleiser,* Cooper

Aff., Ex. 2.[2]

At the first hearing before Justice Bransten, the presiding judge in the Frydman State

Action, Mr. Frydman explained to the court the basis for his belief that Mr. Verschleiser hacked

into his computer and sent the disparaging messages:

> Mr. Frydman: I immediately contacted Intermedia, which is a third party service
> provider that handles our mail server, and they put their security personnel on it,
> and on February 13th, the security personnel issued to me their findings, and their
> findings show that Mr. Verschleiser through his computer called 1X1 Carbon
> hacked into my email 46 separate times between January 11th and February 12th
> of 2014 and caused one of his other people to hack in 78 times, and they got that
> information and sent those emails. 4/14 State Tr. 13:23-14:7, Cooper Aff., Ex. 3.

Mr. Frydman repeated this theme throughout the subsequent hearings and motions.  For

example, in a recent filing, Mr. Frydman described his state case as alleging that "Verschleiser

illegally hacked into United Realty's computer, and set the stage for an intensive, long-term,

criminal conspiracy to wrongfully access Plaintiffs' confidential and proprietary information and

trade secrets, [and] intercept email communications, and used the information to send

disparaging notices to Frydman's potential business partners." *See* Pls. Mem. of Law In Supp. of

Order to Show Cause at 2, *JFURTI v. Verschleiser* , 650803/2014, ECF No. 91 (Sup. Ct. N.Y.

County August 11, 2014).

In the eight months since filing, the Frydman State Action has progressed significantly.

The court heard and denied Frydman's request for a temporary restraining order.  The parties

exchanged discovery demands, produced over 20,000 pages of documents, responded to

interrogatories and took six depositions, including those of Messrs. Frydman and Verschleiser.

---

[2] The Complaint was originally filed on March 12, 2014 but was amended on April 14.  All references to the
Frydman State Action will be to the Amended Complaint.

The court ordered extensive briefing on discovery-related disputes, and held several hearings to resolve those disputes.[3]  A hearing on Mr. Frydman's motion for a preliminary injunction is scheduled for January 8, 2015.

### B.  The Verschleiser State Action: *EVUNP v. Frydman*

On March 14, 2014, Mr. Verschleiser sued Mr. Frydman in New York State Supreme Court, New York County.   *See* Complaint, *EVUNP v. Frydman*, Cooper Aff., Ex. 4.  The Complaint alleges, *inter alia*, that Mr. Frydman conspired with Mr. Verschleiser's attorney to fraudulently induce Mr. Verschleiser to enter into the agreement that separated their business interests. *Id.* ¶¶ 36-56; 85-89. Mr. Frydman filed three motions to dismiss which all violated the court's rules and so Mr. Verschleiser filed a motion to strike these motions. On November 12 the court granted Mr. Verschlesier's motion to strike and ordered Mr. Frydman to pay the costs and attorneys' fees incurred by Mr. Verschlesier in filing this motion.[4]  The court permitted Mr. Frydman to file a new motion to dismiss, with the briefing and argument to be completed by mid-January 2015.

### C.  The Frydman Federal Action: *United Realty Advisors v. Verschleiser*

After suffering several adverse rulings in his state action, and being reprimanded by Justice Bransten for abusive discovery practices,[5] Mr. Frydman shopped for a more favorable forum and initiated the instant action in the Southern District of New York.

---

[3] The hearings were conducted on June 16, June 23, July 29, August 12 and October 20, 2014.

[4] The transcript for this hearing was not available at the time this motion was filed, but will be attached to Defendants' reply brief.

[5] For example, after Mr. Frydman produced documents in illegible micro-script (when he had the legible native files in his possession), Justice Bransten said: "Mr. Frydman, what you have done is not only snubbed this Court when I

Like the state action, this action seeks to hold Mr. Verschleiser responsible for allegedly

hacking into Mr. Frydman's email system, and using the information he obtained to make

disparaging statements about Mr. Frydman.  *See, e.g.,* Am. Compl. ¶¶16, 141–142.

The identical nature of these two cases was recognized by Justice Bransten at a recent

hearing in the Frydman State Action, where she stated that:

> A very similar motion or case is filed across the street in the Southern District. No
> real, no real differences. You are seeking basically what is a similar remedy as
> here, except you are trying to go to Federal law – that it will make it better. *There
> is no doubt, reading the second complaint that you have indeed, used a good deal
> of what has been discovered by my granting of discovery in this particular case,
> as a bolster of what you are doing in Federal Court.*  10/15 State Tr., 3:20-26,
> Cooper Aff., Ex. 6.  (emphasis added).

### D.  Lawsuit Number Three: *Winter Investors, LLC v. Panzer*

On August 22, 2014, Mr. Frydman sued Mr. Verschleiser again in a twenty-three count

complaint titled *Winter Investors, LLC, et al., v. Panzer, et al.*, 14-cv-6852 (S.D.N.Y.).  While

*Panzer* relates to Frydman's partnership with several individuals, including Mr. Verschleiser, in

ETRE Financial LLC, it too makes reference to the hacking and disparagement claims.  The

Complaint alleges that Mr. Verschleiser accessed Mr. Frydman's email exchange server,

obtained proprietary and sensitive documents, and used the information to interfere with Mr.

Frydman's business.  *See, e.g.,* Compl. ¶ 169, *Winter Investors v. Panzer*, ECF No. 1.

On November 3, Mr. Frydman amended his complaint to add another four causes of

action and even more allegations about Mr. Verschleiser's alleged hacking and disparagement.

*See* Am. Compl. ¶¶ 1-3, 131-137, *Winter Investors, LLC v. Panzer,* Cooper Aff., Ex. 7.  For

example, Mr. Frydman pleads that Mr. Verschleiser defamed and disparaged Mr. Frydman

---

ordered you to give copies of information to Mr. Cooper . . . I mean, I am astounded that an attorney . . . would

consider this to be a proper production."  6/16 State Tr. 9:18-10:1, Cooper Aff., Ex. 5.

through an "internet smear campaign." *Id*. at ¶ 2. Furthermore, Mr. Frydman also pleads that Mr. Verschleiser copied confidential information, deleted data, created anonymous web sites to discourage potential business partners and hired former United Realty employees to disparage Frydman. *Id*. at ¶ 137.

### E. Lawsuits Number Four and Five: The *Caesars* Action and the *AJC* Action

At the pre-motion conference for this motion to dismiss on October 7, 2014, the Court provided Mr. Frydman with an opportunity to amend his complaint. *See* Order, Dckt. No. 17 (Oct. 8, 2014). Mr. Frydman agreed, but failed to inform the Court that the very same day, he was filing another two lawsuits against Mr. Verschleiser in federal and state courts, one of which was again based on the hacking and disparagement allegations.

The new federal complaint is one-hundred and thirty-one pages long and asserts twenty-one causes of action against, among others, Caesars casino in Las Vegas and Mr. Verschleiser, alleging many of the same hacking and disparagement claims, but this time styling them as RICO claims. *See* Complaint, *Frydman v. Verschleiser*, 14-cv-8084 (S.D.N.Y. Oct. 7, 2014), Cooper Aff., Ex. 8. [6] This RICO Complaint alleges that Mr. Verschleiser's purported hackings are the predicate acts for a vast "criminal mission to seek to destroy Frydman and his business." *Id*. ¶¶ 6-7. As predicate acts, Mr. Frydman alleges that Mr. Verschleiser violated The Computer Fraud and Abuse Act, The Electronic Communications Privacy Act The Stored Communications Act, The Hobbs Act and Article 156 of the New York Penal Law when he allegedly accessed United Realty's computer, intercepted email communications, accessed confidential information and made several Internet postings, the very claims that Mr. Frydman asserts in this action. *See, e.g., id*. ¶¶ 40-46. 50-57, 71-81, 89-148.

---

[6] At Mr. Frydman's request, this action was assigned to this Court as a related case.

The new state complaint alleges that Mr. Verschleiser, along with the other nineteen board members of the American Jewish Congress (the "AJC") committed fraud and breached various duties by allowing Mr. Verschleiser to serve as treasurer of that organization. *See Frydman v. Rosen et al.,* 159833/2014 (Sup. Ct. N.Y. County Oct. 7, 2014), Cooper Aff., Ex. 9.

A week after filing these two actions, Mr. Frydman amended his complaint in this action, adding another fifty-two pages and nine causes of action. *See Am. Compl.*, ECF No. 19 (Oct. 15, 2014).

## ARGUMENT

## I. THE COURT SHOULD ABSTAIN FROM EXERCISING JURISIDCTION IN FAVOR OF THE PENDING STATE COURT ACTION.

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Supreme Court held that "a district court may abstain from exercising its authority when a state forum has concurrent jurisdiction, and when 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' counsels such abstention." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985) (quoting *Colorado River*, 424 U.S. at 817). The "overriding concerns" of *Colorado River* abstention are "the avoidance of piecemeal or purely duplicative litigation and the concomitant waste of judicial resources." *Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F. Supp. 501, 508 (S.D.N.Y. 1992).

Applying *Colorado River*, federal courts consider six factors in deciding whether to exercise concurrent jurisdiction with the parallel state court action: "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and

whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100-01 (2d Cir. 2012) (internal citations and quotations omitted). The Supreme Court also found "'considerable merit'" in an additional factor, stating that "'the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*.'" *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 17 n. 20 (1983)). The "test is not subject to precise rules" and "should be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 362 (internal citations and quotations omitted).

### A. This Action is Parallel to the Proceedings Frydman Initiated in State Court

The threshold inquiry for *Colorado River* abstention is whether the federal action is parallel to the state proceeding. An action is parallel if the "same events . . . underlie both the state and federal actions," even if "different relief is sought in the two actions, or the claims are not exactly the same." *Garcia v. Tamir*, No. 99-cv-0298, 1999 WL 587902, at *3-4 (S.D.N.Y. Aug. 4, 1999). "Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." *Telesco,* 765 F.2d at 362.

This action, like the Frydman State Action, alleges that Mr. Verschleiser hacked into Mr. Frydman's email system and used the information he obtained to send two emails and make several Internet postings discouraging potential business partners from doing business with Frydman. *Compare* Am. Compl. ¶¶ 24, 126-130, 153-202 *with* Am. State Compl. ¶¶ 1-2, 55-69.

Mr. Frydman asserts that this conduct breached his separation agreement with Mr. Verschleiser, and seeks a declaratory judgment to that effect. *See* Am. State Compl. ¶¶ 74-76. [7]

Similarly, this Action alleges that Mr. Verschleiser "refused . . . to restore the United Realty email exchange server, web hosting servers and computer network to their status prior to November 15, 2013 . . . " which is asserted as the Third Cause of Action in the Frydman State Action. *Compare* Am. Compl. ¶ 43 *with* Am. State Compl. ¶¶ 77-78. Both actions also allege that Verschleiser sought to extort Frydman by threatening him with litigation unless he paid Verschleiser $500,000. *Compare* Am. Compl. ¶¶ 81- 93, 227-240 *with* Am. State Compl. ¶¶ 44-53.

The State Court Commercial Division Justice agreed. Justice Bransten opined at a recent hearing that there were "no real differences" between the two cases and that Mr. Frydman is "seeking basically what is a similar remedy as here, except [under] Federal law." 10/15 State Tr. 3:15-26, Cooper Aff., Ex. 6.

In sum, the state and federal actions are parallel because they both allege that Mr. Verschleiser hacked into Mr. Frydman's computer and used the information he obtained to send derogatory statements to Frydman's potential business partners.

---

[7] Although there are additional plaintiffs and defendants in the state and federal action "perfect symmetry of parties and issues is not required" for a court to abstain pursuant to *Colorado River*. *United States v. Blake*, 942 F. Supp. 2d 285, 297 (E.D.N.Y. 2013) (internal citations and quotations omitted). Furthermore, the other parties in this action are entities that are owned or controlled by Frydman or Verschleiser, or individuals acting at the direction of Verschleiser. In the Frydman State Action, the additional plaintiffs and defendants are entities owned or controlled by Messrs. Frydman and Verschleiser. Am. State Compl. ¶ 14. In this action, Mr. Frydman is the CEO of co-plaintiff United Realty Advisors and all of the other defendants are alleged to have been working at the direction of Mr. Verschleiser. Am. Compl. ¶ 11.

**B. Application of the *Colorado River* Factors Shows that the New York Court is the Most Appropriate Forum for Resolving this Dispute**

A balancing of the *Colorado River* factors here shows that "wise judicial administration" counsels for abstention in favor of the New York court.  As in *Colorado River* itself and numerous Second Circuit decisions, "[t]he first two factors are not applicable to the present case" because "there is no res or property involved" and "the state and federal courthouses in New York City are next-door neighbors." *Arkwright-Boston*, 762 F.2d at 210; *see also Gen. Reinsurance Corp. v. CIBA-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988).  Although a tie is credited in favor of not abstaining, courts regularly abstain pursuant to *Colorado River* even where the first two factors favor keeping the action in federal court.  *See Arkwright-Boston, 762 F.2d at 210* (abstaining under *Colorado River* even though the first two factors favored the retention of federal jurisdiction); *Gen. Reinsurance Corp*, 853 F.2d at 81 (same).

Similarly, Plaintiffs cannot argue that the New York State courts are inadequate to protect their rights.  *See Arkwright-Boston*, 762 F.2d at 211 (holding that New York state-court forum would not "be in any way inadequate to protect [plaintiffs'] rights").  In fact, Mr. Frydman admitted as much in his pre-motion letter, stating that "the New York courts provide a fair alternative forum that is capable of resolving federal issues."  *See* Letter from J. Frydman to J. Koeltl at 5, ECF No. 13 (Sept. 12, 2014).

"The discussion should therefore analyze the remaining considerations of avoidance of piecemeal litigation, order of jurisdiction, [and] which forum's substantive law governs the merits of the litigation . . . " and whether federal litigations were initiated to harass defendants.  *Arkwright-Boston*, 762 F.2d at 210-211; *Telesco,* 765 F.2d at 363.  Each of these factors weighs decidedly in favor of the state court forum.

1.  *The Avoidance of Piecemeal or Duplicative Litigation or Inconsistent Rulings*

The Supreme Court has held that the "crucial" element in the *Colorado River* abstention analysis is whether "concurrent federal proceedings are likely to be duplicative and wasteful." *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 567 (1983). "[T]he existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first — a race [that is] prejudicial, to say the least, to the possibility of reasoned decision making by either forum." *Id.* at 567-68.  The Supreme Court has thus made clear that abstention is a proper remedy when a concurrent federal action may be "duplicative, wasteful, . . . [and] likely to 'generate additional litigation' as a result of inconsistent dispositions . . . ." *Id.* at 565 n.16 (quoting *Colorado River*, 424 U.S. at 819). These concerns are squarely implicated here.

**First,** this Circuit has explained that there is a particular concern for inconsistent outcomes in situations:

> not preventable by principles of res judicata and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties. *Niagara*, 673 F.3d at 101-02 (internal citations and quotations omitted).

That is the case here. Mr. Verschleiser and his entities are the only defendants in the Frydman State Action. In contrast, in this action, Mr. Verschleiser has been sued alongside several other individual defendants who purportedly acted at his direction. The state court may make a factual finding that Mr. Frydman's email servers were not inappropriately accessed, thereby setting up the potential for an inconsistent outcome by the federal court with respect to the other federal defendants. *See Gen. Star Int'l Indem., Ltd. v. Chase Manhattan Bank*, 57 F. App'x 892, 894 (2d Cir. 2003) (affirming abstention even though "several of the factors slightly

favored the retention of federal jurisdiction" where "there is a risk of inconsistent outcomes" because parties to the state litigation were not present in the federal action).

This concern for inconsistent outcomes was recognized by Justice Bransten, who said that it is "more likely than not" that the parties would receive "two opposite decisions" from the state and federal courts. 10/15 State Tr. 4:2-10, Cooper Aff., Ex.6.

The Verschleiser State Action also presents the concern for inconsistent outcomes. A decision for Mr. Verschleiser in that action would nullify the parties' separation agreement. As a result, Mr. Verschleiser, as co-owner of these business interests, will have maintained full access rights to all servers that are alleged in this action to have been improperly accessed. Mr. Verschleiser would also retain full rights to review the emails of any company employee, including Mr. Frydman, rendering Mr. Frydman's federal claim that Mr. Verschleiser improperly accessed his emails moot.

**Second,** even before a final determination in each action, this Court and the New York court "would be considering the same issues and will likely hear similar pretrial motions, evidence, and witnesses," concerning Mr. Verschleiser's alleged hacking, which "would waste judicial resources and invite duplicative efforts," a fact that alone "weighs heavily in favor of abstention." *Ferolito v. Menashi*, 918 F. Supp. 2d 136, 143 (E.D.N.Y. 2013). Because of the factual overlap between the two actions, there is an acute risk of inconsistent interim rulings which would be law of the case in their respective actions, but would have no preclusive effect on the other court because they would not be final judgments. Even if the court that wins the race to final judgment is then able to bind the other court, inconsistent interim rulings would create the potential for a post-trial fight over whether the first judgment is even entitled to preclusive effect.

For example, in the Frydman State Action, Plaintiffs submitted an expert report which is titled "Analysis and Opinion of Email Hacking" and purports to demonstrate that Mr. Verschleiser hacked into Mr. Frydman's email.  *See* Plaintiffs' Expert Report, *JFURTI v. Verschleiser*, No. 650803/2014, ECF No. 72 (July 23, 2014).  The introduction states that the experts were "retained by United Realty Group of Companies . . . [to] offer expert opinion on a series of unauthorized accesses to the United email server and its control system, unauthorized access to specific mailboxes, including that which belongs to Jacob Frydman, the CEO of United, as well as malicious and inflammatory emails and web postings on various Internet websites. . . ."  *Id.* at 4.

The state court recently struck sections of this expert report because it utilized Mr. Verschleiser's confidential data that Mr. Frydman inappropriately obtained and refused to return. *See* Decision and Order, *JFURTI v. Verschleiser*, Cooper Aff., Ex. 10.  If Mr. Frydman utilizes the same data in this action, it is unlikely that the state court would grant *res judicata* effect to a judgment from the federal court because it would be based on information that the state court deemed tainted.

For all of these reasons, "[m]aintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort.  Plainly, avoidance of piecemeal litigation is best served by leaving these [claims] in the state court." *Arkwright-Boston*, 762 F.2d at 211.  This factor thus tilts decisively in favor of abstention.

2. *Mr. Frydman's Lawsuits Were Filed to Harass Mr. Verschleiser*

Mr. Frydman's decision to initiate two separate actions in federal court, rather than bringing these hacking and disparagement claims in his state court action, is motivated primarily by his desire to cause Mr. Verschleiser to incur significant legal bills.  The vexatious nature of

Mr. Frydman's actions is borne out by his statement to counsel at a meet and confer in the

Frydman State Action when he refused to produce certain documents in an accessible format,

telling counsel that he wanted to generate more work for counsel and hoped to cause Mr.

Verschleiser to "run up six-figure [legal] bills each month" defending his lawsuits. *See* Kadosh

Aff. ¶¶ 11-12, *JFURTI v. Verschleiser*, Cooper Aff., Ex. 11.

Mr. Frydman's intent to engage in wasteful litigation is also apparent from his actions in

this proceeding. At the pre-motion conference for this motion, the Court permitted Mr. Frydman

to amend his complaint. The very same day, without notifying the Court, Mr. Frydman filed two

additional complaints in state and federal court against Mr. Verschleiser.[8] The new federal

action, titled *Frydman v. Verschlesier*, alleges many of the same hacking and disparagement

claims as the prior state and federal actions, but this time styling them as RICO claims. These

new complaints brought to five the total number of litigations that Mr. Frydman initiated against

Mr. Verschleiser in the past several months in New York State and Federal Court.

The Court should not lend further support to Mr. Frydman's abuse of this Court's

jurisdiction by allowing him to proceed with his duplicative and frivolous litigation but should

instead stay or dismiss this action pursuant to *Colorado River. Telesco*, 765 F.2d at 363 (2d Cir.

1985) (affirming dismissal under *Colorado River* where the "sequence of events in this case . . .

and the hostile history of the case strongly indicate the vexatious nature of the litigation").

---

[8] Mr. Frydman engaged in similar conduct in state court. Justice Bransten permitted Mr. Frydman to file two discovery-related motions—one for him personally, and one for his corporate entities. The court ordered the parties to appear personally in order to set a briefing schedule for these motions. An hour before the hearing, Mr. Frydman filed a third discovery-related motion but neglected to tell Justice Bransten of this fact during the hearing. *See* 10/15 State Tr. 4:12-5:4.

3. *The State Actions Were Filed Five Months Before This Action and Have Progressed Significantly*

Where the state actions are filed first, *Colorado River* favors the federal court's abstention. *EMS Indus. Corp. v. Acciai Speciali Terni, USA, Inc.*, No. 99-cv-9050, 2000 WL 101233, at *3 (S.D.N.Y. Jan. 26, 2000). That is the case here. Both the Frydman and Verschleiser State Actions were filed in March of 2014. This action was filed almost five months later on July 30.

Abstention is also appropriate here because both state actions have made considerable progress, the state court rendered several decisions, and will hold a hearing on the merits of Frydman's claim, in the context of Frydman's motion for a preliminary injunction, on January 8, 2015.

In the Frydman State Action:

- The court denied Frydman's motion for a temporary restraining order on April 29. *See* Order to Show Cause at 3-4, *JFURTI v. Verschleiser*, 650803/2014, ECF No. 27.

- Defendants answered the complaint on May 19. *Id.*, ECF No. 34.

- The parties issued and responded to document requests and interrogatories on May 5 and 12.

- The parties exchanged over 20,000 pages of documents.

- Six depositions were conducted, including depositions of Messrs. Verschleiser and Frydman.

- Plaintiffs submitted an expert report, and will submit another expert report on the date of this motion. Defendants will file their expert report on December 5.

- The court held four in-person and three telephonic hearings, and issued several decisions concerning the admissibility of evidence and the scope of discovery. *See, e.g.*, 6/23 State Transcript, Cooper Aff., Ex. 12; 10/15 State Transcript, Cooper Aff., Ex. 6.

- The parties will be submitting briefs and expert reports on the merits of Frydman's claims by December 5, 2014, and the court will hold a full-day hearing on January 8, 2015.  *See* 10/15 State Tr. 28-29.

In the Verschleiser State Action:

- Frydman filed three separate motions to dismiss.  *See EVUNP v. Frydman*, 650841/2014, ECF Nos. 6, 30, and 34.

- Verschleiser moved to strike Frydman's motions to dismiss on the grounds that they violated court rules.  *Id.*, ECF. No 36-37 (June 3, 2014).

- At a hearing on the motion to strike on November 12, 2014, the court struck Frydman's motion and ordered him to pay the costs and attorney's fees for Verschleiser's motion to strike.

- The court granted Frydman leave to file one final motion to dismiss, which will be fully briefed by January 6, 2015 and argued on January 16.

Given the considerable progress of the state actions, and relative infancy of the federal action, this factor thus tilts unambiguously in favor of abstention.  *See, e.g., Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 88 (2d Cir. 1988) (abstaining because, *inter alia*, "the state court has already conducted five days of factual hearings into the subject matter underlying these parallel actions, has received extensive briefing on the issues involved, has heard oral arguments, and has rendered interlocutory orders addressing the merits of the underlying claims"); *EMS Indus. Corp*, 2000 WL 101233, at *3 (abstaining because "[t]he State Action was filed first, and, although it is in its early stages, it has proceeded further than the instant action. An answer has been filed in the State Action, and discovery demands have been made").

### 4.  *The Federal Claims Are Identical to the State Claims*

While the existence of federal claims is typically a factor favoring retaining federal jurisdiction, that is not the case where "the federal claims are virtually identical to the state claims asserted in the other action" in that "their determination is based on precisely the same factual question." *Garcia*, 1999 WL 587902, at *7.  That is the case here.  Both the federal and

state claims are wholly predicated on the allegation that Mr. Verschleiser hacked into Mr.
Frydman's email system and used the information he obtained to send disparaging messages.
Because the factual predicate of the state and federal claims is identical, abstention is warranted.
*Id.* at *7-8 (abstaining from case asserting federal FLSA claims where the state case asserted
claims premised on identical facts).  Further, the state court has concurrent jurisdiction over each
of these federal statutes.  *See MSCI Inc. v. Jacob*, 96 A.D.3d 637, 637 (1st Dep't 2012)
(affirming trial court's dismissal of CFAA claim); *Hudson v. Goldman Sachs & Co. Inc.*, 283
A.D.2d 246, 247 (1st Dep't 2001) (reinstating ECPA claim); *MidAmerica Prods, Inc. v. Derke*,
33 Misc. 3d 1209(A), at *3 (Sup. Ct. N.Y. County Dec. 27, 2010) (analyzing merits of SCA
claim).

## II.    PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)

Should the Court decline to dismiss or stay this action pursuant to *Colorado River*, the
majority of Plaintiffs' claims must be dismissed for failure to state a cause of action under Fed.
R. Civ. P. 12(b)(6).

To survive a motion to dismiss, Plaintiffs must state "enough *facts* to state a claim to relief
that is *plausible* on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-70 (2007) (emphasis
added).  Plaintiffs must establish the elements of each claim through factual allegations sufficient
"to raise a right to relief above the speculative level."  *Id.* at 555.  Mere "'naked assertion[s]'
devoid of 'further factual enhancement'" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (quoting *Twombly*, 550 U.S. at 557)). "[A] sheer possibility that a defendant has acted
unlawfully" is insufficient, as a matter of law, to state a claim. *Id.* at 678.

In the Amended Complaint, Plaintiffs assert multiple theories of liability pursuant to, *inter
alia*, four statutes: (1) The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); (2) The

Electronic Communications Privacy Act, 18 U.S.C. § 2520 (the "ECPA"); (3) The Stored

Communications Act, 18 U.S.C. § 2707 (the "SCA"); and (4) Article 156 of the New York Penal

Law ("Article 156").[9] These statutes are criminal laws that must be narrowly construed "so that

Congress will not unintentionally turn ordinary citizens into criminals." *See United States v.*

*Nosal*, 676 F.3d 854, 863 (9th Cir. 2012)

### A. The Amended Complaint Does Not Allege That Onica and Pinhasi Engaged In Any Unlawful Acts

As a threshold matter, Plaintiffs' claims must be dismissed against Onica and Pinhasi as the

Amended Complaint is devoid of any factual allegations against them.

The gravamen of the Amended Complaint is that Verschleiser "hacked" into United Realty

and Mr. Frydman's email and used the information he discovered to dissuade potential partners

from doing business with Mr. Frydman. *See, e.g.,* Am. Compl. ¶¶ 16, 141–142. The Amended

Complaint also alleges that Mr. Delforno, United Realty's former head of Information

Technology, created an email forwarding system that allegedly "permit[ted]" Verschleiser and

his assistant to receive Frydman's emails. *Id.* ¶ 107. But the Amended complaint does not plead

a single factual averment indicating that Onica or Pinhasi engaged in any conduct relating to

these allegations.

---

[9] At the pre-motion conference, the Court granted Plaintiffs the opportunity to cure any deficiencies in their complaint but warned Plaintiffs that they would not be given a further opportunity to amend. *See* 10/7 Tr. 12:10-15. Plaintiffs took advantage of this by adding an additional 209 paragraphs and 9 causes of action and therefore, any claims which are still deficiently pled should be dismissed with prejudice.

Instead, the Amended Complaint attempts to shoehorn Onica and Pinhasi into its allegations against Verschleiser by stating that Pinhasi and Onica "were each employed by, consultants to, or acting as agents of, and/or were co-conspirators of" Verschleiser. *Id.* ¶ 11. Similarly, in the "facts common to all counts" section, Plaintiffs baldly plead that Onica and Pinhasi "assisted" Verschleiser. *See, e.g.,* Am. Compl. ¶¶ 44-45, 53-73, 123-135. Finally, in the "substantive" counts section, Plaintiffs allege, in conclusory fashion, that Onica and Pinhasi's "conduct set forth above" constitutes violations of the CFAA, ECPA, SCA, New York Penal Law and New York common law. *See, e.g., id.* ¶¶ 224, 239, 243, 298.

Plaintiffs' threadbare and conclusory allegations that merely track the elements of a cause of action are insufficient to state a claim. *See JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 525-26 (S.D.N.Y. 2013) (holding that plaintiffs' allegation that "'all Defendants' have been using two notebooks belonging to plaintiffs" and that "someone, currently believed to be Janou, or one of her agents, placed a flash memory drive on JBC and JP computer servers . . . in an effort to surreptitiously rip information from the drives" were "precisely the sort of speculative" assertions unable to survive a motion to dismiss); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice").

## B. Plaintiffs' Computer Fraud and Abuse Act Claims Should Be Dismissed

Counts One through Four of the Amended Complaint are brought pursuant to the CFAA, which makes it unlawful to access a computer without or in excess of authorization and

subsequently engage in forbidden acts such as causing damage to a computer or computer data.[10]
*See generally* 18 U.S.C. §§ 1030(a), (g). Counts One through Four fail to state a claim.

   *1.   Plaintiffs Do Not Plead $5,000 or More in Losses*

   Plaintiffs may only maintain a civil action under the CFAA if they unambiguously plead that

they suffered a $5,000 or greater loss as a result of Defendants' purported hacking.  18 U.S.C. §§

1030(g), (c)(4)(A)(i)(I); *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 Fed. App'x. 559, 562 (2d Cir.

2006); *Sprint Solutions Inc., v. Pac. Cellupage Inc.*, No. 13-cv-07862, 2014 WL 3715122, at *6

(C.D. Cal. July 21, 2014).  The CFAA's loss requirement, which is a jurisdictional minimum, is

often case dispositive.  *See, e.g., Sprint Solutions Inc.*, 2014 WL 3715122, at *6; *Int'l

Chauffeured Serv. Inc. v. Fast Operating Corp.*, No. 11-cv-2662, 2012 WL 1279825, at *3-4

(S.D.N.Y. Apr. 16, 2012); *Modis, Inc. v. Baradelli*, 531 F. Supp. 2d 314, 319 (D. Conn. 2008).

   Loss is defined as "any reasonable cost to any victim, including the cost of responding to an

offense, conducting a damage assessment, and restoring the data, program, system, or

information to its condition prior to the offense . . . ." 18 U.S.C. § 1030(e)(11).  The scope of

cognizable loss is "construed narrowly," and "includes only costs actually related to computers,"

namely, "any remedial costs of investigating the computer for damage, remedying the damage

and any costs incurred because the computer cannot function while or until repairs are made."

*International Chauffeured Service*, 2012 WL 1279825, at *3-4 (internal citations and quotations

omitted). Consequential damages may only constitute loss if they were caused by an interruption

in service. Subsequent prophylactic measures are not losses. *Id.*

---

[10] *See* Am. Compl. ¶¶ 203-52 (alleging violations of  18 U.S.C. § 1030(a)(6), § 1030 (a)(7), § 1030(b), and §
1030(g)).

The Amended Complaint alleges the following losses:

> 220.    Plaintiffs expended in excess of $5,000 in hiring external computer forensic consultants to conduct a damage assessment, including but not limited to assessment of permanently deleted, altered or erased files, programs, usage history, and other data.
>
> 222.    Verschleiser, Delforno, Pinhasi and Onica caused losses and damages to United Realty exceeding $5,000 in value in one or more one-year periods . . . , including, without limitation, for costs of responding to an offense, conducting a damage assessment, and restoring conditions prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service, as well as loss resulting from the theft of trade secrets, and deletion of files, data and information.
>
> 225. Moreover, Plaintiffs' loss in value in one or more one-year period includes expenses incurred to respond to a data breach, assess damage, and restore a computer system to its pre-breach condition, loss of the value of the trade secrets stolen by Defendants, the value of lost files, information and data, the development costs to recreate same, and consequential damages as a result of Defendants' offenses.

Plaintiffs' loss allegations are deficient because the Amended Complaint improperly groups both cognizable and unrecognized losses together. *See, e.g.*, Am. Compl. ¶ 225 (alleging that Plaintiffs suffered $5,000 in losses responding to a data breach *and* because of the "loss of value of the[ir] trade secrets . . . ."). In so doing, Defendants—and this Court—are left to speculate what losses were incurred on conducting a damage assessment and what losses were incurred for activity that is not a cognizable loss under the CFAA. Indeed, Plaintiffs' deliberate vagueness is noteworthy as this Court permitted Plaintiffs to amend their Amended Complaint on notice of this defect. 10/7 Tr. 12:10-15.

Plaintiffs' loss allegations in paragraphs 136 through 139 of the Amended Complaint are similarly flawed. First, although Plaintiffs allege that they entered into a contract with Precision IT, which "calls for" payments of more than $4,000 a month, Plaintiffs do not plead that they actually paid Precision IT $5,000 or more to investigate and remedy the effects of the alleged

unauthorized access. *See* Am. Compl. ¶ 136.  Second, Plaintiffs claim that they spent over

$20,000 on, among other things, hardware and software enhancements, spyware and malware

installations, and "related investigations" is insufficient because prophylactic measures aimed at

preventing future offenses are insufficient to meet the $5,000 threshold. *Id.* ¶¶  137-38; *Int'l*

*Chauffeured Serv.*, 2012 WL 1279825 at *3-4. Third, Plaintiffs' allegation that Frydman spent

$3,500 travelling from New York to California to meet with Intermedia, *id.* ¶ 139,  is of no

moment as "[n]othing in either case law or legislative history suggest that something as far

removed from a computer as the travel expenses of senior executives constitutes 'loss.'" *Nexans*

*Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp.2d 468, 477 (S.D.N.Y. 2004), *aff'd* 166 F. App'x 559

(2d Cir. 2006).

Plaintiffs' effort to make an end-run of CFAA's loss requirement by conflating these "losses"

should not be countenanced.  *Sprint Solutions Inc.*, 2014 WL 3715122, at *6 (dismissing CFAA

claim because the plaintiff impermissibly plead both coganizable and uncognizable loss within

the same paragraph); *see Modis*, 531 F. Supp. 2d at 320 (plaintiff failed to state a claim under the

CFAA because the "plaintiff's allegation as to loss requires speculation as to the grounds for

relief" as the "allegations fail to provide notice as to whether plaintiff is asserting losses based on

response costs or revenue due to an interruption of service").

2. *Count One Fails Because Plaintiffs Do Not Plead That Each Defendant Trafficked*
   *Plaintiffs' Passwords*

Count One of the Amended Complaint newly alleges that Defendants disclosed Frydman's

passwords to each-other in violation of § 1030(a)(6) of the CFAA.  Under that section, it is

unlawful to, "[1] with intent to defraud, [2] traffic[] in any password . . . [3] without

authorization . . . ."  Plaintiffs insufficiently pled the first two elements of this claim.

The Amended Complaint alleges, in a conclusory fashion, that each one of the Defendants revealed Plaintiffs' passwords to one another, as in a game of "telephone." *See* Am. Compl. ¶ 206.  But the mere receipt of a password without authorization does not constitute trafficking in passwords. *State Analysis, Inc. v. Am. Fin. Servs. Ass'n.*, 621 F. Supp. 2d 309, 317 (E.D. Va. 2009). Only those that "transfer, or otherwise dispose of" a password to another violate §1030(a)(6). 18 U.S.C. § 1029(e)(5). By alleging that each one of the Defendants disclosed the password to the other, *seriatim*, it is impossible to determine which, if any, of the Defendants transferred Plaintiffs' passwords, and which, if any, of the Defendants merely received passwords, necessitating dismissal of this claim.  *See State Analysis, Inc.*, 621 F. Supp. 2d at 317 (dismissing plaintiff's CFAA claim where the complaint alleged only that the defendant received and used a password without authorization); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

In any event, to state a claim, Plaintiffs must plausibly plead that Defendants acted with intent to defraud.  18 U.S.C. § 1030(a)(6). Intent to defraud requires more than mere "intent to impermissibly give access to another." *Atpac, Inc. v. Aptitutde Solutions, Inc.*, 730 F. Supp. 2d 1174, 1183 (E.D. Cal. 2010). Plaintiffs' conclusory allegation that Defendants acted with "intent to defraud" is insufficient to meet this standard. *Id.*; *see Iqbal*, 556 U.S. at 678.

   3.   *Count Two Fails Because Plaintiffs Do Not Plead Extortion*

In Count Two, Plaintiffs allege that Defendants violated 18 U.S.C. § 1030(a)(7), which makes it unlawful to "transmit[] in interstate or foreign commerce any communication containing any . . . demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion." Count Two also does not pass muster.

*First,* Plaintiffs do not plead extortion. The Amended Complaint alleges that Verschleiser threatened to file a lawsuit against Frydman unless Frydman gave him $500,000.  Am. Compl. ¶ 231.  Yet, the mere threat of litigation—even unmeritorious and economically ruinous litigation —does not constitute extortion. *See DirecTV, Inc. v. Lewis*, No. 03-cv-6241, 2005 WL 1006030 at *4, 7 (W.D.N.Y. Apr. 29,  2005) (holding that the plaintiff failed to state a claim under the Hobbs Act because a litigation threat is not extortion); *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001) (holding that the plaintiff failed to plead extortion under the Hobbs Act when the defendants threatened "economically ruinous litigation"); *Nakahara v. Bal*, No. 97-cv-2027, 1998 WL 35123, at *7 n. 7 (S.D.N.Y. Jan. 30, 1998) ("the threat of litigation or the initiation of unjustified lawsuits constituting malicious prosecution cannot alone from a predicate act for purposes of RICO").

*Second,* Plaintiffs' extortion claim must fail because they do not allege that Verschleiser "demand[ed] or request[ed] . . . money or other thing of value *in relation to damage to* a protected computer." 18 U.S.C. § 1030(a)(7)(C) (emphasis added). This section is designed to prohibit unlawful threats, such as "interference in any way with the normal operation of the computer or system in question, such as denying access to authorized users, erasing or corrupting data or programs, slowing down the operation of the computer or system, or encrypting data and then demanding money for the key." S. REP. NO. 104-357 at 12 (1996). Here, Plaintiffs have not alleged that Defendants made *any* threat in relation to damage to a computer. Instead, Plaintiffs merely allege that Verschleiser demanded money in relation to a discrete business dispute. *See* Am. Compl. ¶ 231.

   *4.  Counts Three and Four for Injunctive Relief and Conspiracy Do Not State a Claim*

Count Three of Plaintiffs' Amended Complaint alleges that Defendants conspired to violate the CFAA. Am. Compl. ¶ 243. Plaintiffs' conspiracy claims fail because Plaintiffs, as discussed above, do not plead an underlying CFAA violation. *PNC Mortg. v. Superior Mortg. Corp.*, No. 09-cv-5084, 2012 WL 627995, at *4 (E.D. Pa. Feb. 27, 2012) ("Because Plaintiff fails to state a claim under the CFAA, Plaintiff also fails to state a claim for conspiracy to violate the CFAA"); *Elektra Entm't Grp., Inc., v. Santangelo*, No. 06-cv-11520, 2008 WL 4452393, at *7 n.7 (S.D.N.Y. Oct. 1, 2008) (holding that the plaintiffs' may not rely on the CFAA as the basis for civil conspiracy claim as the defendants insufficiently stated an underlying CFAA violation). In any event, Plaintiffs' conspiracy claims fails because the Amended Complaint does not plead that the parties' intentionally participated in the furtherance of a plan, tortious conduct, or a single overt act in furtherance of the alleged conspiracy. *See Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) ("complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy . . . . are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct" (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 20002)).

In Count Four, Plaintiffs request that the Court grant injunctive relief. Am. Compl. ¶¶ 246-252. Although the CFAA provides that a person may receive injunctive relief, such a request is not a freestanding cause of action. *See KM Enters, Inc. v. McDonald*, No. 11-cv-5098, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) ("a request for injunctive relief is not a separate cause of action" (internal citations and quotations omitted)); *Freckleton v. City of Hartford*, No. 11-cv-798, 2012 WL 1565127, at *4 (D. Conn. May 2, 2012) (dismissing claim for injunctive relief because such a claim is not "an independent cause of action for liability"). Plaintiffs' request for injunctive relief must be pled in the prayer for relief, not as a substantive count. *Id.*

### C. The Electronic Communications Privacy Act Claims Should Be Dismissed

Counts Five through Eight are brought pursuant to the ECPA,[11] which creates criminal and civil liability for those who "intercept" electronic communications. *See generally Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 556 (S.D.N.Y. 2008) (Koeltl, J.).  As discussed below, Plaintiffs' ECPA claims fail.

> *1.   Counts Five Through Eight Fail Because the Amended Complaint Does Not Plead that Verschleiser, Pinhasi or Onica Intercepted a Communication*

To state a claim under the ECPA, Plaintiffs must credibly plead that Defendants intercepted a communication *contemporaneously* with its transmission. *See* 18 U.S.C. §§ 2511, 2520; *Pure Power Boot*, 587 F. Supp. 2d at 556; *Larson v. Liberty Mut. Fire Ins. Co.,* No. 11-cv-00272, 2012 WL 93181, at *9 (D. Hawaii Jan. 10, 2012).  Merely accessing an email that has already been delivered does not violate the ECPA.  *Pure Power Boot*, 587 F. Supp. 2d at 556 (no ECPA claim whether "there is no evidence that the later emails were intercepted at the same time that they were delivered"); *Larson*, 2012 WL 93181, at *9 ("As Larson alleges that Stephenson downloaded Larson's emails while they were on the internet service provider, Larson fails to state a claim under the Wiretap Act upon which relief can be granted.").

The Amended Complaint alleges that Verschleiser, Pinhasi and Onica violated the ECPA when they accessed Plaintiffs' emails, *see* Am. Compl. ¶¶ 53-75, but does not allege that they intercepted those emails contemporaneously with their transmission.  Plaintiffs' ECPA claims against them are deficient and must be dismissed.[12]

---

[11] The ECPA is also referred to by the courts as the Wiretap Act.

[12] To the extent Plaintiffs seek to ground their ECPA claims on the fact that Defendants established an automatic email forwarding rule, the Complaint only alleges that Mr. Delforno—and not Verschleiser, Parnasi and Onica— created the forwarding rule. *See* Am. Compl. ¶ 107. Because there is no civil liability for procuring a violation of

2.   *Count Six Must Be Dismissed as to Delforno, Pinhasi  and Onica Because the Amended Complaint Does Not Plead That They Disclosed an Intercepted Communication*

Section 2511(1)(c) of the ECPA makes it unlawful to disclose the contents of an intercepted communication.  To support its unlawful disclosure claim, the Amended Complaint pleads that "Verschleiser, Delforno, Pinhasi and/or Onica" disclosed the contents of intercepted communications to Kinzie Geldbach, and Amy Weins.  Am. Compl. ¶¶ 267-683. The Amended Complaint also pleads that Verschleiser, with the "assistance" of the other Defendants, made several Internet postings discouraging potential partners from doing business with Plaintiffs. Am. Compl. ¶¶ 153-202.

But these allegations fail because the Amended Complaint does not plead that the emails and postings disclosed the contents of a communication. *First,* the alleged emails to Geldbach and Weins merely state what Gelbach and Wiens already knew, i.e., that "[y]ou are about to enter into an agreement . . . ." with Frydman. *Id.* ¶¶ 126-31;  *Disclosure*, Black's Law Dictionary (9th ed. 2009) ("The act or process of making known something that was previously unknown; a revelation of facts"). *Second*, the alleged Internet postings stating, among other things,  that Frydman "does not pay his bills," "never delivers," "will not give you back your money when you ask," "will do anything to hurt anyone," and "[is] not honest," are statements of opinion and

---

ECPA, Frydman's allegation that Mr. Verschleiser "caused Delforno, as his agent" to create the forwarding rule is irrelevant. *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168-69 (5th Cir. 2000); *Schefts v. Petrakis*, 954 F. Supp. 2d 769, 777 (C.D. Ill. 2013) (holding that the defendant could not violate the ECPA under a "procurement," "agency," "conspiracy" or any other "secondary" theory of liability).

do not contain the substance of any intercepted communication.[13]  Thus, Count Six must be dismissed as to Delforno, Pinhasi and Onica.

3.  *Counts Seven Must Be Dismissed Because the Amended Complaint Does Not Plead That Delforno, Pinhasi and Onica Used an Intercepted Communication*

Section 2511(1)(d) makes it unlawful for a person to "intentionally use[], or endeavor[] to use, the contents of any wire, oral, or electronic communication . . . ." The Amended Complaint alleges that Defendants "used" intercepted communications to create, copy and then delete Plaintiffs' email back-up files.  Am. Compl. ¶ 276.  Yet, Plaintiffs do not explain how the contents of a communication could have been used to create, download, copy and delete Plaintiffs' email back-up folders.  Rather, the gravamen of the Amended Complaint is that Defendants used Plaintiffs' passwords—which were not alleged to be obtained via an intercepted communication—to log-in to Plaintiffs' email accounts and servers.  *See, e.g.,* Am. Compl. ¶ 31 ("Verschleiser wrongfully and without authorization directly, and/or with the assistance of the other Defendants, wrongfully accessed and hijacked United Realty's hosted email exchange server . . . giving Verschleiser unfettered control of the same, and the ability to . . . delete all of said data from United Realty's exchange server . . . .").  Because the Amended Complaint is devoid of any facts that plausibly indicate that Delforno, Parani or Onica used an intercepted communication, Count Seven must be dismissed as to them.

4.  *Count Eight Is Not a Substantive Cause of Action*

Count Eight alleges that Defendants violated 18 U.S.C. § 2511(2)(d) when they violated the Federal Identity Theft Act. Am. Compl. ¶¶ 281-91. Section 2511(2)(d) provides a cause of

---

[13] Plaintiffs can hardly be plausibly alleging that the alleged intercepted and disclosed communications included information such as  Frydman "never delivers, "will do anything to hurt anyone," and is "not honest." Am. Compl. ¶¶ 267-683.

action for a person "who has had her communications intercepted *by a party to those communications* for the purpose of committing a crime or tort." *Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) (emphasis added) (citing 18 U.S.C. §§ 2520, 2511(1), 2511(2)(d)). Here, however, Count Eight must be dismissed because Plaintiffs do not allege that Defendants were a party to any of the alleged intercepted communications. Am. Compl. ¶¶ 153-202, 267-683; *see* 18 U.S.C. § 2511(2)(d) (providing that a person may not be liable under the ECPA "*where such person is a party to the communication* or where one of the parties to the communication has given prior consent" unless the interception was undertaken "for the purpose of committing any criminal or tortious act . . . ."(emphasis added)).

### D. Certain Stored Communications Act Claims Should be Dismissed

Counts Ten and Eleven must be dismissed because they are not substantive causes of action. Count Ten asserts that Defendants violated 18 U.S.C. § 2701(b)(1) of the SCA by using "the contents of illegally accessed electronic communications while in electronic storage . . ." to violate the Federal Identity Theft Act. Am. Compl. ¶¶ 309-18.  However, Section 2701(b)— which is titled "punishment" —merely delineates the criminal penalties associated with  SCA violations but does not provide a private right of action.  Similarly, Count Eleven seeks injunctive relief. As discussed above, *supra* II(B)(4), an application for injunctive relief is not an independent cause of action. *KM Enterprises*, 2012 WL 4472010, at *20; *Frecleton*, 2012 WL 1565127, at *4.

### E. The New York Penal Law Claims Should Be Dismissed

Counts Twelve through Fifteen allege that Defendants violated five sections of Article 156 of the New York Penal Law, §§ 156, 156.10, 156.20, 156.30 and 156.35. These claims must

be dismissed because there is no private right of action under Article 156 of the Penal Law.[14]

*Snyder v. Fantasy Interactive, Inc.*, No. 11-cv-3593, 2012 WL 569185, at *3 (S.D.N.Y. Feb. 9,

2012); *Casey Sys., Inc. v. Firecom Inc.*, No. 94-cv-9327, 1995 WL 704964, at *4 (S.D.N.Y. Nov.

29, 1995) (holding that Section 156.00 of the Penal Code is a "criminal statute[] which do[es] not

create a private cause of action").

## III.    The Court Should Award Defendants Their Costs Defending this Frivolous Lawsuit

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United
> States . . . who so multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the excess costs,
> expenses, and attorneys' fees reasonably incurred because of such conduct.

Courts award these sanctions where a plaintiff initiates successive lawsuits arising out of

the same facts with the sole purpose of harassing defendants.  *Davey v. Dolan*, 453 F. Supp. 2d

749, 757-58 (S.D.N.Y. 2006) ("Given the utter lack of merit of plaintiff's claims, his vexatious

litigation history, and the fact that he has continually and continues to file repetitive suits despite

prior court orders, the Court can only reasonably conclude that his actions were undertaken for

some improper purpose, namely to continually harass the defendants."), *aff'd*, 292 F. App'x 127

(2d Cir. 2008); *Vishipco Line v. Charles Schwab & Co.,* No. 02-cv-7823, 2003 WL 1345229, at

*11 (S.D.N.Y. Mar. 19, 2003) ("Given the utter lack of merit of [plaintiff's] claims, as well as

the unreasonable and vexatious multiplicity of actions filed, this Court can only reasonably

---

[14] Although the Court in *Blissworld, LLC v. Kovack*¸ No. 125431/00, 2001 WL 940210, at *5 (N.Y. Sup. Ct. Jul. 9,

2011) recognized a private right of action, the *Snyder* court subsequently rejected *Blissworld* because it failed to

"address whether the legislature intended to create a private right of action, as required by the Supreme Court." No.

94-cv-9327, 2012 WL 5691585, at *3 (S.D.N.Y. Feb. 9, 2010).

conclude that his actions were undertaken for some improper purpose, such as harassing

defendants . . . . " (internal citations and citations omitted)).

As the ample record cited above demonstrates, Mr. Frydman is engaged in just such a

course of vexatious and harassing litigation.  Since March 2014, he has filed five separate

lawsuits against Mr. Verschleiser, three of which are based on the hacking and disparagement

claims first asserted in state court in March 2014. On the same day that this Court granted him

leave to amend his complaint, without notifying the Court, Mr. Frydman filed two of these

lawsuits, rather than including the "new" allegations in his amended complaint.  He then

amended the complaint in this action to add another 209 paragraphs and 9 causes of action.

Just last week, Mr. Frydman sued counsel in this action and their law firm for

representing business partners of Frydman, Warren and Scott Diamond, in an unrelated litigation

against Frydman. *See* Answer, Aff. Defenses, Counterclaim and Third Party Compl.  ¶¶ 291-310,

*Diamond v. Frydman* (asserting claims against counsel for aiding and abetting breach of

fiduciary duty, tortious interference and abuse of process), Cooper Aff., Ex. 13.   Mr. Frydman

then followed up with a letter demanding that counsel withdraw from representing the Diamonds

and Mr. Verschleiser because of the conflicts created by his suit against counsel. *See* Letter from

J. Frydman to S. Cooper (Nov. 11, 2014), Cooper Aff., Ex. 14.

There can be no doubt that Mr. Frydman's motivation in filing these multiple lawsuits is

to harass Mr. Verschleiser and cause him to incur significant legal bills because he expressly

admitted as much to counsel.  Specifically, at a meet and confer in the Frydman State Action in

June 2013, Mr. Frydman told counsel that he would not produce certain documents in an

accessible format because he wanted to generate more work for counsel and hoped to cause Mr.

Verschleiser to "run up six-figure [legal] bills each month" defending his lawsuits. *See* Kadosh

Aff. ¶¶ 11-12, attached to Cooper Aff., Ex. 11.   Mr. Frydman further told counsel that because he was representing himself *pro se*, these litigations were "costing him nothing." *Id.*

At a hearing in the Verschleiser State Action on November 12, Justice Bransten ordered Mr. Frydman to pay the attorneys' fees and costs associated with a motion to strike that Mr. Verschleiser was compelled to file after Frydman filed three successive motions to dismiss, each of which violated the court's rules.

Frydman's miasma of pointless litigation will continue to grow unless it starts to cost him something.  Defendants therefore respectfully ask the Court to award them the attorneys' fees and costs associated with defending this lawsuit.  *See Davey*, 453 F. Supp. 2d at 749  (awarding fees in light of  plaintiff's "vexatious litigation history"); *Garcia*, 1999 WL 587902, at *9 (awarding attorneys' fees and abstaining under *Colorado River*); *Vishipco Line,* 2003 WL 1345229, at *11 (awarding fees where plaintiff filed six separate lawsuits).

## CONCLUSION

For the above reasons, the Court should dismiss the Amended Complaint, in its entirety, with prejudice, award Plaintiffs the attorneys' fees they incurred in defending this motion, and order any such further relief as the Court may deem just.

Dated:      November 14, 2014
           New York, New York

Respectfully submitted,

**REED SMITH LLP**

By: _/s/ Steven Cooper_ _____

Steven Cooper
Samuel Kadosh
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

*Attorneys for Defendants Eli Verschleiser, Raul
Delforno, Ophir Pinhasi and Alex Onica*