

Arthur G. Jakoby
Partner
Phone: 212.592.1438
Fax: 212.545.3340
ajakoby@herrick.com

September 19, 2016

VIA ECF
The Honorable John G. Koeltl
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *United Realty Advisors, et al. vs. Eli Verschleiser, et al., 14 Civ. 5903 (JGK)*

Dear Judge Koeltl:

      I represent plaintiff, United Realty Advisors, LP, plaintiff in the captioned matter. *Pro se* plaintiff, Jacob Frydman, joins in this letter.[1]

      On Wednesday, September 14, 2016, the deposition of Alex Veen ("Veen") took place. It is alleged in the Consolidated Amended Complaint (the "Complaint") that Veen, at the direction of defendant Eli Verschleiser ("Verschleiser"), conspired to create defamatory websites and posted dozens of defamatory blogs and web pages disparaging Jacob Frydman by falsely accusing him of all sorts of fraud and unethical conduct in an attempt to cause reputational and monetary damage to Mr. Frydman. After being named as a defendant in this matter, Veen began to cooperate and, for a fee paid to him by Mr. Frydman, took down many of the websites which Verschleiser had paid him to put up. He further provided Plaintiffs with an Affidavit detailing everything that he did at the direction of Verschleiser and produced all emails, text messages and numerous tape recorded phone call conversations between him and Verschleiser -- all of which detail Verschleiser's RICO conduct exactly as alleged in the Complaint. A copy of Veen's affidavit is annexed hereto as **Exhibit 1**.

      At his deposition on Wednesday, September 14, 2016, Veen confirmed the accuracy of his Affidavit and gave further details of the instructions given to him by Verschleiser and the work he did, for a fee which was paid by Verschleiser. During the morning session of Veen's deposition, he was asked whether he knows a Leon Kourounis. Veen testified that Verschleiser had introduced him to Leon Kourounis and that Verschleiser and Kourounis have always been close.

      Paragraphs 14 -16 of the Complaint reference the allegation that Verschleiser and Kourounis were ecstasy drug dealers and that Kourounis was arrested in February of 2000 and was later sentenced to 24 months in jail. The Complaint further explains that prior sentencing, Verschleiser wrote a letter to Judge John F. Keenan, Kourounis' sentencing judge, seeking leniency for Kourounis.

      At Verschleiser's August 18, 2016 deposition, Kourounis' criminal record, including the letter which Verschleiser sent to Judge Keenan, was marked as Exhibit 2 and shown to Verschleiser (see **Exhibit 2** annexed hereto). Verschleiser refused to answer all questions related to Exhibit 2 and Kourounis. Mr. Gulko, Verschleiser's lawyer, was also given a copy of Exhibit 2. The following dialogue took place at pages 105 through 106 of Verschleiser's deposition (This testimony as well as the 4 pages preceding it and the five pages following it are annexed hereto as **Exhibit 3**).

---

[1] I am aware that the Court's Rules require that letters to the Court "may not exceed 3 pages in length." This letter is 5 pages in length. However, the letter contains almost 1½ pages of testimony quotes from the annexed exhibits which will save the Court time from searching through the exhibits. I respectfully request that the Court accept this letter which exceeds its Rules.



The Honorable John G. Koeltl
September 19, 2016
Page 2

| | |
|---|---|
| Q. | The question is: Did you write a letter on April 11th, 2001 to the judge [Judge Keenan] who sentenced Leon Kourounis, who you claimed not to know, asking for leniency from (sic) Mr. Kourounis? |
| MR. GULKO: | Objection. That's not what he testified to before. |
| Q. | Did you write that letter, Yes or No? |
| Verschleiser: | Please refer to the last answer. |
| MR. FRYDMAN: | Mr. Gulko, would you please instruct your witness to answer. |
| MR. GULKO: | Answer the question. |
| Verschleiser: | Yes. Please refer to the last answer. |
| Q. | He just instructed you to answer. |
| Verschleiser: | I did. |
| Q. | What was the answer? I don't know what the answer was. There was no answer. You're refusing to answer again. Now -- |
| Verschleiser: | You're more than welcome to ask the stenographer to repeat the answer. |
| Q. | Mr. Kourounis was a convicted ecstasy dealer; isn't that correct? |
| MR. GULKO: | Objection. |
| Q. | Is that correct? To your knowledge, was Kourounis a convicted ecstasy dealer? You refuse to answer that question? |
| MR. FRYDMAN: | Would you instruct the witness to answer. |
| MR. GULKO: | He cannot answer a question that he doesn't have the foundation to answer. |
| MR. FRYDMAN: | I'm asking does he know that Kourounis was a convicted ecstasy dealer. |
| MR GULKO: | You can answer that. |
| Verschleiser: | You can look at my last answer and refer to it. It's the same. |

As such, Verschleiser avoided answering the questions by giving evasive and non-responsive answers and obstructed all attempts to discover Mr. Kourounis' role in the connection with the RICO allegations as alleged in the Complaint.

During Veen's morning deposition session he was asked questions about Kourounis as he had been introduced to him by Verschleiser. This testimony can be found at **Exhibit 4** pages 25 - 30. After the Veen deposition lunch break, Verschleiser brought a man into the deposition room to sit by his side *allegedly* to assist him. When asked to identify the man's name, Verschleiser introduced him as "K. Leonidas." However, Veen knew him to be "Kourounis" and alerted me to the problem. I asked "Mr. K. Leonidas" for ID and he showed me the building security pass he had somehow obtained which allowed him entry to my law firm's building. The name on the tag was "K. Leonidas" which, according to what Veen had told me, was a false name. I therefore asked Verschleiser to identify his "assistant" for the record. The following dialogue took place:

| | |
|---|---|
| MR. JAKOBY: | Can you identify him for the record [,] or sir can you identify your name for the record? |
| MR. KOUROUNIS: | I gave you my ID already. [referring to the "K. Leonidas building pass]. |
| MR. JAKOBY: | What's your name? |
| MR. VERSCHLEISER: | For the record, the spelling of his name is L-E-O-N-I-D-A-S. Thank you. |
| MR. JAKOBY: | And, his first name? |
| MR. VERSCHLEISER: | K. |
| MR. JAKOBY: | What is your first name? |
| MR. KOUROUNIS: | That's it. |
| MR. JAKOBY: | What is your last name? |
| MR. KOUROUNIS: | Kourounis. |

See **Exhibit 4** page 144 attached hereto.



The Honorable John G. Koeltl
September 19, 2016
Page 3

     Thus, Verschleiser initially lied about Kourounis' name. There was no question that the reason why he brought Kourounis in was to intimidate Veen and to chill his deposition testimony. I therefore asked Kourounis to leave the deposition but Verschleiser directed him to stay.

     Accordingly, at or about 2:00 p.m., we called Your Honor's chambers to ask that Kourounis be Ordered removed from the deposition room. During that conference call, I explained Kourounis' background to Your Honor. Verschleiser was certainly aware of his background since he wrote a sentencing leniency letter to Judge Keenan in connection with Kourounis' sentencing for dealing ecstasy. Mr. Gulko, Verschleiser's lawyer, was also well aware of Kourounis' background since he had filed an answer to the Complaint allegations related to Kourounis and had seen **Exhibit 2** and indeed, had objected to questions related to **Exhibit 2** at Verschleiser's deposition.

     As Your Honor will see, by looking at **Exhibit 2** (which is Bates Stamped FRYDMAN000111567 through FRYDMAN 00011290), Mr. Kourounis was indicted on March 30, 2000 for distributing Ecstasy (see, FRYDMAN00011174). Kourounis' criminal acts are detailed in the Criminal Complaint (see, FRYDMAN00011213). And, details of Kourounis' 2 year imprisonment sentence can be found in the May 14, 2001 Sentencing Transcript (FRYDMAN00011247 - 11261). Finally, at page FRYDMAN00011205, is a copy of the Judgment which evidences the fact that Kourounis pled guilty to Count 1 of the Complaint or 21 USC 846 which is "conspiracy to distribute and possess with intent to distribute methylenedioxymethamphetamine" (i.e., Ecstasy). Accordingly, it is crystal clear that Kourounis is a convicted drug dealer.

     Significantly, at FRYDMAN00011279, is a copy of an April 11, 2001 letter from Verschleiser which was given to Judge Keenan at sentencing in which Verschleiser wrote a letter on behalf of Kourounis seeking leniency and asking Judge Keenan to "please see Leon for the person we know him to be and understand the mistake that he made." Verschleiser was shown all of these documents at his August 18th deposition and his counsel, Mr. Gulko, was given copies as well. At his deposition Verschleiser failed to answer the questions posed to him about Kourounis and his involvement with Kourounis and Mr. Gulko objected to those questions.

     Yet, the following dialogue took place during the Court conference call with respect to Kourounis' background:

| | |
|---|---|
| THE COURT: | Is the person who is allegedly assisting you, in fact, named in the Complaint? |
| MR. VERSCHLEISER: | No, he is not. |
| THE COURT: | So he is not the same person as-is listed in the Complaint. |
| MR. FRYDMAN: | He is not Kourounis? |
| MR. VERSCHLEISER: | Is he a Defendant, Your Honor? |
| MR. FRYDMAN: | No, he's named. He is not a Defendant. |
| MR. VERSCHLEISER: | Excuse me, are you the Judge? |
| THE COURT: | He's named, he is the same person as this K. Leonidas, who is named in the Complaint. |
| MR. VERSCHLEISER: | I don't know. The person that's named in the Complaint that discusses allegedly is not the same person that's sitting there. So the information in the Complaint and the person himself could speak to that, is -- is obviously just some more stuff made up and I don't know -- |



The Honorable John G. Koeltl
September 19, 2016
Page 4

| | |
|---|---|
| THE COURT: | No. |
| MR. VERSCHLEISER: | I don't know if it's him or somebody else. There are many people that Jacob Frydman wrote in this Complaint about going back to 15, 20 years that I never heard -- |
| THE COURT: | Okay. Okay. Is your assistant a convicted drug dealer? |
| MR. VERSCHLEISER: | Are you a convicted drug dealer. |
| MR. KOUROUNIS: | No. |
| THE COURT: | So you have no reason to believe that he is the person listed in the Complaint? |
| MR. VERSCHLEISER: | I, again -- |
| THE COURT: | Yes or no? |
| VERSCHLEISER: | Well -- there are -- no, I do not. |

See **Exhibit 4** pages 202 - 204.

Accordingly, when Your Honor asked Kourounis "Are you a convicted drug dealer," and he answered "No," Kourounis lied to the Court. Both Verschleiser and his counsel, Mr. Gulko, were aware that Kourounis was lying. Furthermore, when Your Honor asked Verschleiser whether the "Kourounis" in the room was the person referenced in the Complaint and whether he was aware of Kourounis' criminal background Verschleiser gave outright misleading and evasive responses to the Court.

More troubling is that although you directed Kourounis to leave the deposition, he stayed at the entrance outside of our building (upon information and belief) waiting for Veen to leave the deposition. Indeed, although Veen had not been in contact with Kourounis for a long time, a few days before his deposition, Kourounis emailed Veen (who lives in Ukraine) asking to meet him in New York but Veen, trying to avoid an encounter with Kourounis, ignored the email. To protect Veen from an encounter with Kourounis, as soon as Mr. Gulko completed his cross-examination, we had Veen quickly leave our building through an unknown non-public exit away from where Kourounis was waiting. Although the Court directed Kourounis to leave at around 2:40 p.m., after the 6:49 p.m. end of the deposition, Kourounis and Verschleiser stood outside my law firm's building, upon information and belief, waiting for Veen for over an hour after the deposition ended. At times, Mr. Gulko waited with them. Annexed hereto as **Exhibit 5** is a copy of a photo of Verschleiser, Kourounis and Gulko as they waited outside my office building at around 7:45 p.m.; an hour after the end of the deposition.

On a related issue, during the conference with the Court, Verschleiser accused Mr. Frydman of harassment and keeping him in his deposition for "hours until like 11 o'clock at night." See **Exhibit 4** at page 200. That too was a highly misleading statement. What Verschleiser did not tell Your Honor was that his seven-hour deposition (noticed in *both* this RICO Action and ordered by the court in the State Court Action) was supposed to start on August 18th at 9:30 a.m. pursuant to the July 12th Order of Justice Bransten. As demonstrated in the attached motion detailing Verschleiser's discovery abuses, he did not show up for his deposition at 9:30 a.m., the scheduled time for his Court Ordered deposition. *See* Frydman Affidavit at ¶¶ 6-9. Instead of arriving at 9:30 a.m. on the morning of August 18th, Verschleiser sent a vague e-mail saying that he had a "medical emergency." Only after threatening to seek to hold Verschleiser in contempt did Mr. Gulko inform us that Verschleiser would appear at around 3:30 p.m. for his deposition. Although Verschleiser showed up at 3:40 p.m., he then wasted another hour by threatening to leave if the deposition was videotaped (it had been notice as a videotaped deposition and no objection had been made prior to Verschleiser threatening to walk



The Honorable John G. Koeltl
September 19, 2016
Page 5

out). Mr. Frydman attempted to call Your Honor's chambers but you were not available so he was referred to Judge Caproni, the Part One Judge, who Ordered that since the deposition was noticed as a video deposition it would proceed as a video deposition but the videographer would hold the video until the further order of Your Honor. A copy of Judge Caproni's Order is annexed hereto as **Exhibit 6**. Thus, we wasted an hour until we got the Court to direct Verschleiser to go forward with his videotaped deposition. Accordingly, his deposition did not start until 4:41 p.m.

Thus, Verschleiser's statement to Your Honor that Mr. Frydman *"...put himself in in order to continue his harassment of myself and for him to personally depose me for inst (sic) amount of hours until like 11 o'clock at night,"* was highly misleading as Mr. Frydman appeared at 9:30 a.m. for the deposition and had to wait until 3:40 p.m. for Verschleiser to arrive and then the deposition couldn't start until 4:41 p.m. because Verschleiser threatened to leave unless the videographer left and we had to get Judge Caproni to order that the deposition would go forward.

This type of misleading and obstructionist conduct by Verschleiser has been pervasive throughout discovery in this matter and the State Court Action. As Your Honor will see in the enclosed motion and quotations from the transcript of Verschleiser's deposition, he and his counsel engaged in game playing and totally disrupted the deposition. As such, after seeking permission in the State Court Action we filed the attached motion due to numerous discovery abuses and we moved for a continuation of Verschleiser's deposition (the "Discovery Abuse Motion"). The motion seeks sanctions as well. The Discovery Abuse Motion is annexed hereto as **Exhibit 7**.

As explained in the Mirsky Affidavit, which is part of the Discovery Abuse Motion (annexed separately as **Exhibit 8**), Veen is not the first witness which Verschleiser has either threatened or attempted to intimidate. Indeed, there is a scheduled discovery conference before Magistrate Cott scheduled for Tuesday September 20th at 4:00 p.m. and we will be detailing numerous discovery abuses in addition to the ones set forth in the Discovery Abuse Motion. We will be seeking a continuation of Verschleiser's deposition.

As such, Verschleiser misled Your Honor not just about Leon Kourounis but also about what happened at his own deposition.

In light of the foregoing, we requests that (i) since Judge Caproni directed the video held until a further ruling of Your Honor the video should now be released as we need to show Justice Bransten and Magistrate Cott that in addition to using words to obstruct his deposition Verschleiser used other means (facial expressions, gestures, etc.) which can only be seen on the video; and (ii) that Verschleiser be ordered to not direct Leonidas Kourounis to contact any witness or potential witness.

Very truly yours,

Arthur G. Jakoby

Enclosures
cc:   All Counsel (via ECF)