

**Arthur G. Jakoby**
**Partner**
Phone: 212.592.1438
Fax: 212.545.3340
ajakoby@herrick.com

September 19, 2016

**VIA ECF**
The Honorable James E. Cott
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

>      Re:    *United Realty Advisors, et al. vs. Eli Verschleiser, et al.,* 14 Civ. 5903 (JGK)

Dear Judge Cott:

This firm represents United Realty Advisors, LP and Prime United Holdings, LLC and was substituted in as new counsel on September 8, 2016.  *Pro se* plaintiff, Jacob Frydman ("Frydman"), joins in this letter.  We write in advance of the discovery conference scheduled for September 20, 2016 at 4:00 p.m. to inform the court of additional discovery disputes that have arisen and which Plaintiffs ask the Court to address.  Additionally, in light of the fact that my law firm just recently substituted in as counsel, the magnitude of discovery in this matter, and the discovery abuses which we outline below, we write to request an extension of the end date for discovery set forth in the governing Scheduling Order (Dkt. No. 147).  In related proceedings (the "State Court Actions"), the State Court recently issued a new scheduling order extending the end date for discovery by five months, to May 31, 2017, in view of my law firm also substituting in for certain of Frydman's companies who are parties to the State Court Actions.  Plaintiffs seek a similar extension here.

Since the commencement of this action and the State Court Actions, Defendant Eli Verschleiser ("Verschleiser") has continually, deliberately disregarded his discovery obligations under the Federal Rules of Civil Procedure, the CPLR, and court orders in the State Court Actions.  This abusive and obstructive conduct has delayed discovery, further necessitating an extension of the Scheduling Order deadlines.  Accordingly, Plaintiffs respectfully ask the Court to address the following topics at the September 20, 2016 conference.

First, the Frydman Parties filed a motion on September 18, 2016 (the "Discovery Abuse Motion") seeking redress of various discovery abuse issues.  While this consolidated proceeding and the State Court Actions seek different relief on different grounds, there are a number of common factual allegations centering on Verschleiser's defamatory campaign against Frydman and his companies.  In the Discovery Abuse Motion, the Frydman Parties ask the State Court to address the following abuses, among others: (i) Verschleiser's attempt to evade his court-ordered deposition (which was also noticed for the same day in this action) by appearing over six-hours late (his deposition was ordered by the State Court to be taken on September 18, 2016, and scheduled to commence at 9:30 a.m.; however Verschleiser did not show up until around 3:30 p.m.); (ii) Verschleiser's further delay of the start of the deposition by refusing to be video-taped even though his deposition was noticed as a videotaped deposition -- to which he did not object until he showed up -- requiring Judge Caproni, the Part One Judge, to order Verschleiser to sit for the videotaped deposition; and (iii) finally, and most importantly, when the deposition finally started at 4:41 p.m. -- more than seven hours late -- Verschleiser flatly refused to answer many relevant questions about crucial material facts alleged in the Complaint, even when instructed to do so by counsel, gave numerous non-responsive answers, and engaged in



sophomoric name-calling and taunting the questioner.  All of this and more is detailed in the enclosed Discovery Abuse Motion. The Frydman Parties, in the Discovery Abuse Motion, ask the State Court to order that Verschleiser continue his deposition (the "Continued Deposition"), answer all relevant, non-privileged questions, and not engage in obstructionist tactics, in the presence of a court-appointed referee.  This Court should order Verschleiser's Continued Deposition in this action for the same reasons.

In addition to the obstruction of his deposition (and as detailed in the Discovery Abuse Motion), Verschleiser has refused to produce relevant documents, including documents that the State Court specifically ordered be produced.  He is thus in violation of the State Court's Orders. The Discovery Abuse Motion seeks to compel production of these documents or, if Verschleiser fails to comply, the imposition of appropriate sanctions.  Given this refusal to produce documents and Verschleiser's ambiguous testimony about preserving emails and other electronically stored information, the Frydman Parties ask the State Court to permit a forensic computer expert to inspect the desktop or laptop computers that Verschleiser has used since November 28, 2013 when disputes between him and Frydman reached a head.

Also, the Discovery Abuse Motion requests sanctions for these abuses as well as for threatening and intimidation of third party witness Ellis Mirsky, Esq., whose deposition was also noticed in this action.  Verschleiser has claimed that Mr. Mirsky cannot testify because he was Verschleiser's lawyer. This is an absurd claim designed solely to prevent Mr. Mirsky from testifying and Mr. Mirsky has in writing explained why it is an untruthful claim. Mr. Mirsky, was scheduled to testify but Verschleiser sent him threatening emails expressly stating that he better have "good insurance." Those emails arrived after Verschleiser's lawyer, Asher Gulko -- a member of the bar -- sent an email to Mr. Mirsky and wrote "There is no way to tell what Eli [Verschleiser] will do," and "I am not saying that Eli is going to do anything, but I can't control him."  Mr. Mirsky took these threat of either bodily harm (he needs good medical insurance) or legal action against him (he needs good malpractice insurance). In any event, Verschleiser was successful in obstructing our efforts to depose Mr. Mirsky as he refused to testify after being intimidated and threatened by Verschleiser.

All of this, plus more, is detailed in our Discovery Abuse Motion. A copy of those motion papers is annexed hereto as Exhibit 1.

Second, we sent a letter to Judge Koeltl this afternoon outlining an additional Verschleiser obstruction that occurred just last week.  A copy of the letter to Judge Koeltl without Exhibits is annexed hereto as Exhibit 2.  A full copy with Exhibits can be found at Dkt. No. 182.  Briefly stated, on Wednesday, September 14, 2016, the deposition of Alex Veen ("Veen") took place.  Plaintiffs allege that Veen, at the direction of Verschleiser, created a number of websites and weblogs defaming and disparaging Frydman and his companies by falsely accusing him of all sorts of fraud, theft, and unethical conduct. After being named as a defendant in this matter, Veen began to cooperate and, for a fee paid by Mr. Frydman, took down several of the websites which Verschleiser had paid him to put up.[1]  He further provided Plaintiffs with an Affidavit detailing everything that he did at the direction of

---

[1] As soon as several of the web sites posted by Veen were taken down by Veen, on information and belief, and in express violation of Judge Koeltl's May 27, 2015 Order, Verschleiser, re-posted them through other hosting companies in eastern Europe. Judge Koeltl Order states, in relevant part, that: "[t]he Restrained Defendants, and all those acting in



Verschleiser and produced all emails, text messages and numerous tape recorded phone call conversations between him and Verschleiser -- all of which detail Verschleiser's RICO conduct exactly as alleged in the Complaint. A copy of Mr. Veen's Affidavit is attached hereto as Exhibit 3. During the morning session of Veen's deposition, he was asked whether he knows a Leon Kourounis who is referenced in the RICO Complaint as a drug dealer and associate of Verschleiser. Veen testified that Verschleiser had introduced him to Leon Kourounis and that Verschleiser and Kourounis have always been close.

Although Veen's deposition was scheduled for 9:30 a.m., Verschleiser, who as of the day of the Veen deposition began appearing *pro se*, failed to appear until after 1:00 p.m. (and then only stayed for approximately one hour, during which he further disrupted Veen's deposition). When Verschleiser arrived more than three and a half hours after the deposition commenced, he brought a man with him (eventually saying that he was there *allegedly* to assist him). When asked to identify the man's name, Verschleiser introduced him as "K. Leonidas." However, Veen knew him to be Leon Kourounis -- the man referenced in the complaint as an associate of Verschleiser's and a convicted drug dealer -- and alerted me to the problem. I asked "Mr. K. Leonidas" for ID and he showed me the building security pass he had somehow obtained which allowed him entry to my law firm's building. The name on the tag was "K. Leonidas" which, according to what Veen had told me, was a false name. On the record, Verschleiser initially lied about Kourounis' name. There was no question that the reason why he brought Kourounis in was to intimidate Veen and to chill his deposition testimony. I therefore asked Kourounis to leave the deposition but Verschleiser directed him to stay. During a call with Judge Koeltl, Verschleiser and Kourounis each lied to and misled the Court about Kourounis' identity. Despite these lies, the Court ordered that Kourounis leave. Notwithstanding, Kourounis waited outside the building for five hours, even after the conclusion of the deposition, presumably waiting for Veen to exit. As soon as Mr. Gulko concluded his cross-examination, in order to protect Veen, we quickly got Veen out of the building through a non-public side exit away from where Kourounis was waiting as soon as the deposition concluded.[2]

---

concert with them, shall be, and hereby are permanently enjoined and restrained from, directly or indirectly doing, or from causing any other person to do, or from assisting any other person in doing, any of the following; a. Creating, publishing or posting any statements about Frydman, any of his family members …or any entity, … which employs Frydman or any of the Frydman Family Members, or in which Frydman or any of the Frydman Family Members has any interest whatsoever, or with which Frydman or any of the Frydman Family Members is directly or indirectly affiliated… which defame, disparage or contain libelous statements about Frydman, the Frydman Family Members or the Frydman Entities; or using, creating, publishing or posting the Frydman name and likeness or the name and likeness of any of the Frydman Family Members, or any name, mark or Internet domain name that incorporates Frydman's, the Frydman Family Members' or the Frydman Entities' names or marks". The Frydman Parties reserve the right to move for contempt against Verschleiser.

[2] At 6:45 p.m. Mr. Gulko, who had been cross-examining Mr. Veen, said on the record "I am going to conclude the deposition at this particular time." No one asked him to stop his cross-examination of Mr. Veen. He did so voluntarily. Notwithstanding the fact that he "voluntarily" said that he was concluding the deposition he then complained that he didn't have enough time; but no one told him to stop. One of the reasons it was so late was because although the witness arrived and was ready to begin testifying at 9:00 a.m. (the deposition was called for 9:30 a.m.) Mr. Gulko didn't arrive until 10:16 a.m. Indeed the deposition was delayed because of Mr. Gulko's tardiness. Then, after Mr. Gulko said that he was concluding the deposition, Verschleiser, who didn't sit through most of the questioning (indeed he arrived at 1:00 p.m. and later left for a while and returned after 6 p.m.) demanded to ask his own questions. The time was 6:46 p.m. and the witness had been in my office for 9 hours and 46 minutes by that point. In fact, an hour was wasted when Verschleiser brought in Kourounis and we needed to get a ruling from Judge Koeltl ordering him to leave the deposition.



Third, Defendants Multi Capital Group of Companies, LLC ("Multi Group"), which is Verschleiser's company, Raul Delforno, Ophir Pinhasi, and Alex Onica, who are represented by the same lawyer as Verschleiser, Asher Gulko, and defendant Albert Akerman, represented by Avrohom Gefen, have not produced documents despite document requests that were filed on ECF on July 22, 2016. Their responses were to be served by August 21, 2016; yet, as of today, neither responses nor any documents have been received. In addition to document requests, Plaintiffs noticed the depositions of all of the foregoing individual defendants to occur in September. These depositions were adjourned and cannot be rescheduled in the absence of a complete production of documents from these defendants and Multi Group. Delforno, Pinhasi, Onica, and Akerman, just like Veen, are alleged to have assisted Verschleiser in his fraud against Frydman. Thus, their documents (as well as Multi Group's) go to the heart of the Complaint allegations and it is difficult to conduct depositions unless and until these documents are produced. But if the past is a predictor of the future, even once documents are produced, the productions will be incomplete. Akerman has noticed Frydman's deposition to occur on October 31, 2016. While Plaintiffs have no objection to this deposition, they are hesitant to agree to comply with the notice when Akerman, like the other Verschleiser defendant parties, has disregarded his discovery obligations.[3]

Fourth, as the Court is aware, there is an issue regarding the production of electronically stored information that is currently held by non-party Intermedia.net, Inc. ("Intermedia") and within the control of defendant Multi Group. This issue was fully outlined by prior counsel, Lewis Fischbein, in a letter dated August 25, 2016 (Dkt. No. 171). Briefly stated, Intermedia hosts an email exchange server for Multi Group. In Request No. 9 of the discovery requests served on Multi Group, Plaintiffs requested production of electronically stored data on that email exchange server, as well as any logs, for the period from November 20, 2013 to March 31, 2014 that evidence all events and access, use and administrative actions concerning logins and access by or from any of twelve specific email addresses or originated from any of fifty-five identified IP addresses. Multi Group has not served responses or produced documents, let alone any documents responsive to Request No. 9. Plaintiffs separately sought this information directly from Intermedia via subpoena; however, Intermedia would not produce the data without Multi Group's consent. These documents are clearly within the control of Multi Group -- pursuant to Intermedia's Master Service Agreement -- and therefore must be obtained and produced.

Fifth, as the Court is also aware, Plaintiffs respectfully request that they be granted permission to conduct 6 to 10 additional depositions. This matter is a complex, consolidated RICO and computer fraud action with multiple issues at play. Verschleiser is the only witness who has been (incompletely)

---

As such, given the fact that Kourounis was waiting outside and Veen had been in my office for over 9 hours and 45 minutes, the testimony ended; not surprisingly with protests and threats from Verschleiser.

[3] We note that Mr. Gulko deposed Mr. Frydman in the State Court Actions on August 16, 2016. That deposition covered not just the State Court Actions' allegations but all of the Federal Court RICO allegations (which as explained earlier in this letter are relevant to both cases). Although Mr. Gefen's client, Ackerman, is only a party to the Federal Court RICO Action, Mr. Gefen asked to sit in on that deposition of Mr. Frydman as an "observer." Frydman did not object and thus Mr. Gefen sat in on Mr. Frydman's deposition. Clearly Mr. Frydman's State Court Actions testimony can be used in the Federal Court Action and therefore there is no reason for Mr. Gefen to repeat questions previously asked and answered unless he needs clarification. Indeed, to avoid having Mr. Verschleiser being asked the same questions in both matters the Frydman Parties conducted a combined state court / federal court deposition of Mr. Verschleiser.



The Honorable James E. Cott
September 19, 2016
Page 5

deposed.  Six of the additional deponents are identified in prior counsel's August 17, 2016 letter to the Court.

In light of the above and my firm's recent substitution, Plaintiffs respectfully request that the Court amend the present Scheduling Order to extend the end date for fact and expert discovery by five and one-half months, from November 18, 2016 (which is the existing end date) to May 31, 2017, to match the new schedule in the State Court Actions, which is attached hereto as Exhibit 4.  As noted above, this action and the State Court Actions contain a number of common factual allegations centering on Verschleiser's defamatory campaign against Frydman and his companies.  Accordingly, the discovery in this action overlaps significantly with discovery in the State Court Actions.  Plaintiffs further request that the Scheduling Order in this matter be amended to match the new schedule in the State Court Actions.  This is the Plaintiffs' first request for an extension of the original end date.  Although since we substituted in we have asked Mr. Gulko to consent to such extension, he has yet to agree.

Thank you for your attention to these matters

Respectfully submitted,

/s/ Arthur G. Jakoby

Arthur G. Jakoby

Enclosures