

Arthur G. Jakoby
Partner
Phone: 212.592.1438
Fax: 212.545.3340
ajakoby@herrick.com

October 2, 2016

**VIA ECF**
The Honorable James L. Cott
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    *United Realty Advisors, et al. vs. Eli Verschleiser, et al., 14 Civ. 5903 (JGK)*

Dear Judge Cott:

    We represent United Realty Advisors, LP and Prime United Holdings, LLC. Mr. Jacob Frydman ("Frydman") joins *pro se*. We write in reply to Mr. Gulko's letter dated September 29, 2016 (Dkt. #: 191) ("Defendants' Opposition Letter") which responds to Plaintiffs' September 19, 2016 letter (Dkt. #: 184) ("Plaintiffs' Discovery Abuse Letter Motion").

    Defendants' Opposition Letter generally fails to respond to the detailed and documented discovery abuse concerns raised by Plaintiffs and is notable only for its very general and amorphous attacks against Plaintiffs.

    At the outset of the letter, Mr. Gulko states that "*in light of the meet and confer that took place today between your undersigned and counsel for Plaintiffs, it appears that many of the issues outlines (sic) in Plaintiffs' Letter Motion have been addressed or are in the process of being resolved…*" Although it is true that a few hours before the deadline for the filing of Defendants' Opposition Letter responding to Plaintiffs' Discovery Abuse Motion Letter -- only after his clients were in default and after several prior failed "meet and confers" -- Defendants' counsel finally "pledged" to comply with "some" of their discovery obligations, unfortunately the outstanding issues are far from resolved. And, given the past history of this matter, only time will tell if Defendants will truly comply with the "pledges" made during the "meet and confer" What is clear is that absent an Order of this Court, and its continued involvement, discovery abuses will continue.

    For example, in Plaintiffs' September 19th letter (at the top of page 4), I explained that Defendants totally ignored our request for production of documents dated July 22, 2016 (Dkt. #: 158), which required production by August 21, 2016. We were compelled to file Plaintiffs' Discovery Abuse Letter Motion in order to seek redress. During our "meet and confer" phone call, Mr. Gulko advised me, for the first time, that he had "spoken" with Defendants Delforno, Pinhasi, and Onica, and that they have no documents to produce. I asked Mr. Gulko to document in writing exactly what and how they searched and whether they are aware of responsive documents which, for some reason, are no longer in their possession or control, but I have yet to receive a written response. We therefore ask that, at



The Honorable James L. Cott
October 2, 2016
Page 2

the October 6th conference, the Court order and set a deadline for this information to be given to us.  Discovery should not be a game of hide and seek.  I further asked Mr. Gulko why there has been no document production by Verschleiser and Multi Group in response to our July 21st document request.  Mr. Gulko told me that he would talk with Verschleiser about production for these defendants and hoped to produce responsive documents by Thursday, October 6th -- coincidentally the day of our conference; thus, even if documents are produced, we will not have the opportunity to review and analyze the production before we meet with Your Honor.

If the past history of Verschleiser's State Court document production is a predictor of what will happen in this action, there either will be no document production or the production will be woefully incomplete.  In Plaintiffs' Discovery Abuse Letter Motion, we attached our State Court Actions' Discovery Abuse Motion (Dkt. #: 184-1); it seeks, *inter alia*, an Order compelling Verschleiser to comply with his court-ordered obligation to produce certain documents in those Actions.  During our "meet and confer" Mr. Gulko made it clear that those documents -- which are also sought herein -- will likewise not be produced in this action.  Thus, this needs to be addressed at the October 6th conference.  Similarly, Defendant Akerman, who is represented by different counsel, has not responded to our July 21st document request, although his counsel, Mr. Geffen, has pledged to produce documents before the October 6th conference.

Defendants' continued failure to make any production has caused both party and non-party discovery to grind to a halt. One thing is clear: had we not filed Plaintiffs' Discovery Abuse Motion Letter, Defendants would not now be "promising" document production.

In Defendants' Opposition Letter, Mr. Gulko defends Verschleiser's conduct at his deposition but provides no specifics.  In our Discovery Abuse Letter Motion, we provided very specific details, with citations to the transcript and quotes of Verschleiser's testimony, of (i) how Verschleiser delayed the start of his deposition until 4:30 pm; (ii) refused to respond to numerous questions and even when he did often gave evasive responses; (iii) made frivolous objections throughout; and (iv) engaged in name-calling and taunts throughout.  Notably, Defendants' Opposition Letter does not even attempt to address any of these abuses.  Instead, all Mr. Gulko does in his letter is "generally" -- **without providing any details** -- claim that at his deposition Verschleiser was "…*harassed and bombarded with questions that were completely irrelevant and demonstrated clearly that Plaintiffs were simply on a fishing expedition.  While Mr. Verschleiser refused to answer questions that may have subject privilege, he nonetheless endured the process until close to midnight*."  The foregoing bombastic hyperbole lacks any specificity.  Why doesn't Mr. Gulko cite to testimonial examples like we did?  Why doesn't his letter respond to Plaintiffs' specific and



The Honorable James L. Cott
October 2, 2016
Page 3

documented allegations of Verschleiser's obstructionist conduct, evasive answers and frivolous objections?  The answer is self-evident.

This type of non-responsiveness, coupled with broad mudslinging without any citation to testimony or evidence, is the hallmark of the Defendants' response to this and all of the allegations set forth in the Second Consolidated Amended Complaint.  In our September 19th letter and attached State Court Actions' Discovery Abuse Motion, we provided precise details of how Verschleiser attempted to intimidate and tamper with witnesses in this action.  In response, Mr. Gulko simply states that Plaintiffs *"…continue to mislead the Court and find ways to divert the Court with baseless accusations.  Further, Plaintiffs seek to accuse Defendants with these grave concerns but ironically, the facts and context demonstrate Plaintiffs have engaged in this very conduct and as a result have deprived Defendants from any fair opportunity to adjudicate this matter*."  The foregoing are additional meaningless words; they totally lack any substance or specificity and are unaccompanied by references to any evidence, testimonial citations or hard facts.

Defendants do cite to the fact that Mr. Frydman paid witness Alex Veen ("Veen") to remove and take down from the Internet defamatory websites and blogs which Verschleiser had paid Veen to put up.  They characterize this as paying for testimony.  That is not true.  It is not Mr. Frydman who chose to involve Veen.  Indeed, as Veen testified (and as explained in detail in Veen's affidavit which is attached to Defendants' Discovery Abuse Motion Letter as Exhibit 3 (Dkt. #: 184-3)), Veen has known Verschleiser for over 15 years.  During his deposition testimony Veen admitted his involvement in defaming and disparaging Mr. Frydman and that such involvement began with an email from Verschleiser dated January 15, 2014 in which Verschleiser wrote to Veen as follows:

> **I called you regarding the split between myself and Jacob Frydman in united realty**….**I have been working through setting the battlefield (marines, air support, navy, special ops, etc etc)** by preparing many lawsuits and spending hundreds of hours doing so (Not to mention so far the legal bills are in excess of 50k) **Your help is in my plan**… **I will know by next thurs (I hope) what the final plan is and when the battle will begin.  That will include you** (if you wish).

(Emphasis added.) See Verschleiser Deposition Exhibit 4, attached hereto as Exhibit A and Veen Affidavit (Dkt. 184-3). p. 3, ¶ 20.[1]

---

[1] Notably, and significantly, ***this highly relevant email*** -- which, as explained in the Veen Affidavit, was the opening salvo in Verschleiser's plan to defame Mr. Frydman, including without limitation by creating content for defamatory websites and emailing it to Veen so he could put those websites up on the Internet -- ***was not produced*** (along with dozens of other Veen / Verschlieser communications) by Verschleiser in his State Court Actions' document production.  Why?



Thus Mr. Frydman did not know Veen until through forensic computer experts he was able to link the posting of defamatory Internet information to Veen and was then forced to hire and pay Veen to take down the postings which Verschleiser had paid Veen to put up. The need to pay Veen was created by Verschleiser's RICO conduct and thus hardly constitutes paying a witness to testify.

     Also on September 19, 2016, we sent a letter to Judge Koeltl (Dkt. #: 182) providing detailed evidence (and dialogue from the transcript of a call with the Court which took place during Veen's testimony) of Verschleiser's attempts to obstruct Veen's deposition by bringing in a convicted drug dealer, Leon Kourounis, to intimidate Veen. We demonstrated in that letter, via citation to irrefutable evidence, that when Judge Koeltl, on the record, questioned Verschleiser and Kourounis they misled him and lied to the Court. A copy of that letter was attached to Plaintiffs' Discovery Abuse Motion Letter (Dkt.: # 184-2), but Defendants' Opposition Letter fails to address this most serious obstruction, which shows the type of discovery abuses which are going on. We also urge the Court, in advance of the October 6th conference, to read Defendants' response to that letter (Dkt. #: 183), which like all of Defendants' responses is non-responsive, as well as Plaintiffs' reply (Dkt. #: 188).

     At the top of page 3 of Defendants' Opposition Letter, Defendants complain that Plaintiffs produced nearly 12,000 pages of documents including duplicates. Defendants do not disclose that the production about which they complain was made in the State Court Actions and *not* in this action. Insofar as Plaintiffs' production in *this* case is concerned, we have not yet produced documents since Defendants did not serve a document request upon Plaintiffs until September 20th (eight days before Defendants' Opposition Letter complaining about our document production which had not yet occurred), and thus our deadline to respond to the September 20th request is later this month. But from Mr. Gulko's letter, this Court would never have known the foregoing fact and would have erroneously believed that his complaint is about Plaintiffs' production in this case. Furthermore, if that complaint is ever made to the State Court we will explain to the State Court why it is totally false as all of Plaintiffs' production in the State Court is relevant and complete.[2]

     Finally, at page 3 of Defendants' Opposition Letter, Defendants oppose Plaintiffs' request that this Court extend the Federal Court Scheduling Order so that it is aligned with the recently extended scheduling order in the State Court Actions. Defendants' misleadingly claim that the reason why this Court should not extend the Scheduling Order is because: "*this Court has made clear in its ruling with respect to Defendants' motion to dismiss that these are two separate actions*." This statement misapplies this Court's findings and ruling.

---

[2] This is not the first time that Defendants' have insinuated in this action that Plaintiffs' State Court production is incomplete, yet they have not provided details of this amorphous and unsubstantiated claim and thus Plaintiffs cannot respond with specificity. This is yet another example of the type of unspecific mudslinging to which Defendants resort in order to mask their obstructionist conduct detailed by Plaintiffs.



The Honorable James L. Cott
October 2, 2016
Page 5

This Court, in its Decision (Dkt: 126, at p. 17), found that both the State Court Actions and this action are based upon common underlying facts. This Court held that "[w]here, as here, 'the nature of the claims in question differ, cases are not parallel ***despite the fact that <u>both actions arise out of a similar set of circumstances</u>***.'" (emphasis added). Indeed, this Court, although finding that the "claims" alleged were different, based that "finding" on Defendants' own argument that "both the federal and state cases are about Verschleiser's purposed hacking into United Realty's servers and Verschleiser's disparagement of Frydman" (Dkt. #: 126, p. 16). Thus, any suggestion by Mr. Gulko that discovery in both actions does not overlap or that the underlying facts are entirely different is belied by Defendants' prior statements to this Court as documented in this Court's Decision. This is yet another example of Defendants taking positions which are inconsistent with the facts.

Moreover, not extending discovery will reward Defendants' obstructionist discovery conduct. Defendants have done everything to obstruct and delay discovery in this matter. Indeed, ***not a single Defendant has produced documents*** pursuant to our July 21st initial document request, and yet they seek to end discovery on November 18, 2016, approximately 45 days from now. Furthermore, Mr. Gulko has emailed me that October is going to be a difficult month for him to do any discovery because of the Jewish holidays. Until all fact discovery is completed -- which is unlikely to happen before the end of this coming winter -- we cannot retain experts or present them with the evidence and testimony elicited during fact discovery. Accordingly, it is highly unlikely, given the complex discovery in this matter, that discovery can be completed before late spring of 2017 -- the same conclusion reached by the State Court Action law clerk on August 30, 2016. Similar objections were made in the State Court Actions, and yet the State Court, realizing the complexity of discovery, adjourned its scheduling order -- which contained deadlines similar to the current deadlines in this action -- to the end of May of 2017. The same needs to be done here.

Defendants cannot sit on document requests for months, obstruct depositions (including by among other things bringing in a convicted drug dealer to Mr. Veen's deposition), and then seek to prematurely cut off Plaintiffs' ability to conduct valid discovery in order to marshal the evidence to prove their case. If this Court does not extend the Scheduling Order as requested Defendants will, in effect, be rewarded for their obstructionist conduct.

Respectfully submitted,

/s/ Arthur G. Jakoby
Arthur G. Jakoby

Cc: All Parties via ECF