UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACOB FRYDMAN, ET AL.,

                Plaintiffs,      14-cv-5903 (JGK)
                                      14-cv-8084

    - against -

                                      MEMORANDUM OPINION AND
ALBERT AKERMAN, ET AL.,               ORDER

                Defendants.

JOHN G. KOELTL, District Judge:

    This case involves two consolidated actions, United Realty v. Verschleiser, No. 14-cv-5903 (S.D.N.Y.), and Frydman v. Verschleiser, No. 14-cv-8084 (S.D.N.Y.). As the Court explained in an Opinion and Order dated March 22, 2016, "[t]hese actions are the latest chapter in a long-running and acrimonious dispute between Jacob Frydman and Eli Verschleiser . . . [where] [e]ach party has used judicial and extra-judicial scorched earth practices to torment the other party." Frydman v. Verschleiser, 172 F. Supp. 3d 653, 658 (S.D.N.Y. 2016). Familiarity with the facts, underlying claims, and procedural history of this case is presumed.

    Before the Court are three motions for summary judgment. The first motion is brought by the plaintiffs, Frydman and two entities affiliated with Frydman, United Realty Advisors, LP ("United Realty"), and Prime United Holdings, LLC ("Prime United Holdings") against all of the defendants, including Albert

1

Akerman. The second motion is brought by Verschleiser, the Multi Capital Group of Companies, Raul Delforno, Ophir Pinhasi, and Alex Onica --- that is, all of the defendants except for Akerman. These two motions are considered separately.[1] The third motion for summary judgment, considered here, is brought by Akerman. The plaintiffs' Consolidated Second Amended Complaint ("CSAC") alleges 20 federal and state law Counts, nine of which name Akerman as a defendant: violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO") (Count One); conspiracy to violate § 1962(c) of RICO, 18 U.S.C. § 1962(d) (Count Two); libel per se (Count Eight); trade libel (Count Nine); misappropriation of trade secrets (Count Eleven); tortious interference with existing contractual or business relations (Count Twelve); breach of contract (Count Sixteen); indemnification (Count Seventeen); and breach of the duty of loyalty (Count Eighteen). Akerman's motion for summary judgment seeks dismissal of all Counts against Akerman based on a contractual release and the collateral estoppel effect of a prior arbitration. For the reasons

---

[1] In a separate Order, the Court has denied both motions for summary judgment. The Court did not deal specifically with Akerman in its disposition, but it is plain that the plaintiffs would not be entitled to summary judgment on their claims against Akerman for the same reasons that they are not entitled to summary judgment against the remaining defendants.

2

explained below, Akerman's motion for summary judgment is **granted.**

I.

As relevant to Akerman's motion for summary judgment, the record and undisputed representations of the parties show the following facts as to which there is no genuine dispute.

Part of the plaintiffs' allegations in this case are that Akerman provided confidential and trade secret information to Verschleiser, another defendant, after Verschleiser and Frydman's business partnership ended in December 2013. Until mid-December 2014, Akerman was the Chief Compliance Officer ("CCO") of Cabot Lodge Securities LLC ("CLS"), a broker-dealer registered with the United States Securities and Exchange Commission ("SEC") and a member of the Financial Industry Regulatory Authority ("FINRA"). Akerman was also CCO for CL Wealth Management LLC ("CLW"), an investment advisor registered with the SEC and an affiliate of CLS. At the time, Prime United Holdings, one of the plaintiffs in this lawsuit, owned CLS.[2] Frydman, also a plaintiff in this lawsuit, is the Chief Executive Officer ("CEO") and Chairman of Prime United Holdings

---

[2] As of December 2, 2013, Frydman and Verschleiser "directly and indirectly through a variety of affiliates, jointly owned, operated and/or controlled" CLW. Frydman Decl. (Dkt. No. 305 in 14-cv-5903) ¶ 3.

and the Chairman of CLS and CLW. CSAC ¶ 48. On or around December 15, 2014, Frydman fired Akerman from CLS and CLW.

After Akerman's termination from CLS and CLW, Akerman and Frydman asserted various claims against each other in New York state court. Akerman also sent a letter to the SEC, among other parties, alleging wrongdoing related to the management of CLS. On or about January 14, 2015, CLS and CLW filed a Form U-5 with FINRA containing allegations of misbehavior against Akerman. Gefen Decl. Ex. A. The Form U-5 is a uniform termination notice for securities industry registration.

On February 20, 2015, Akerman executed a settlement agreement (the "Agreement") with CLS, Frydman, and United Realty, whereby each party released the other(s) from all claims relating to events prior to and including February 20, 2015 (the "Release"). Gefen Decl. Ex. B. Specifically, the Release provided, in relevant part, that, subject to Akerman's faithful performance of his obligations in paragraphs 1, 2, and 3, and subject to certain exceptions not here relevant:

> United [Realty]; CLS, United Realty Trust Incorporated,[3] Frydman and each of their respective agents, representatives and Affiliates (the "United Releasing Persons"), hereby release any and all claims, suits, controversies, actions, causes of action, cross-claims, counter-claims, demands, debts, compensatory damages, liquidated damages, punitive or exemplary damages, other damages, claims for costs and attorneys' fees, or

---

[3] United Realty Trust Incorporated was not a signatory to the Agreement.

4

> liabilities of any nature whatsoever in law and in equity, both past and present, whether known or unknown, suspected, or claimed against Akerman and each and every one of his Affiliates, and each of their respective successors or assigns, which the United Releasing Persons ever had, now have, or hereafter may have, by reason of any matter, cause, or thing whatsoever, from the beginning of the world through the time of execution of this Agreement. This release will survive the transactions contemplated herein. In the event that Akerman breaches the provisions of paragraphs 1, 2, or 3 hereof, the release provide[ed] in this paragraph 4 shall be null and void ab initio.

Gefen Decl. Ex. B at 2. Paragraphs 1 and 3 of the Agreement obligated Akerman to send a retraction letter to the SEC and discontinue the state court lawsuit against Frydman by February 20, 2015. Paragraph 2 of the Agreement obligated Akerman to refrain from soliciting any employees of the United Releasing Persons, divulging confidential information of the United Releasing Persons, communicating with any agency about the United Releasing Persons, or disparaging the United Releasing Persons. However, the Agreement provided that the United Releasing Persons would not oppose Akerman's initiation of arbitration with FINRA to expunge the Form U-5 letter, as long as Akerman did not seek "affirmative relief." Id. ¶¶ 2, 6.

On or about February 25, 2015, Akerman initiated arbitration with FINRA, seeking to expunge the Form U-5. Id. Ex. D. On Mach 18, 2015, CLS and CLW filed an Answer, Affirmative Defenses, and Counterclaims with FINRA --- which was signed by Frydman --- seeking damages against Akerman in excess of $8

5

million. Gefen Decl. Ex. E. Akerman moved the FINRA arbitrators to strike the Answer and to dismiss the Counterclaims because the Counterclaims were barred by the Release in the Agreement. Gefen Decl. Ex. F. CLS and CLW responded by arguing that the Release was void because Akerman had breached the Agreement by disparaging CLS and CLW and seeking "affirmative relief" with respect to the Form U-5. Gefen Decl. Ex. G at 1-2. On November 17, 2015, the FINRA arbitration panel issued an Order striking the Answer by CLS and CLW and dismissing the Counterclaims. Gefen Decl. Ex. I. The arbitrators found that Akerman had not sought "affirmative relief" by seeking to expunge the Form U-5. Id. The arbitrators also determined that CLS, and CLW as an affiliate of CLS, had "released any and all claims in dispute by a signed settlement agreement and a written release." Id.

On February 16, 2016, Akerman moved this Court for summary judgment dismissing the plaintiffs' claims against Akerman. Akerman's Mot. for Summ. J. (ECF No. 117 in 14-cv-8084). Akerman argued that there was no genuine dispute that he had not breached the Agreement and the Release therefore barred the plaintiffs' claims against him in this case. Id. at 6-11. The plaintiffs responded that there were numerous disputed issues of material fact with respect to Akerman's performance (or lack thereof) under the Agreement that precluded summary judgment. Pls.' Opp'n. to Akerman's Mot. for Summ. J. (Dkt. No. 123 in 14-

cv-8084) at 8-16. On June 30, 2016, the Court denied Akerman's motion for summary judgment on the ground that there remained disputed facts as to whether Akerman had breached the Agreement and thus whether the plaintiffs' claims were barred by the Release. See Dkt. No. 136 in 14-cv-8084.

Thereafter, on July 11, 2016, Akerman amended his Answer to include a new affirmative defense, collateral estoppel. See Dkt. No. 155 in 14-cv-5903. On April 28, 2017, Akerman again moved this Court for summary judgment dismissing all of the plaintiffs' claims. This time, Akerman argues that the FINRA arbitration Order precludes the plaintiffs from arguing that Akerman breached the Agreement or from contesting the enforceability of the Release. If the plaintiffs were so precluded, there would be no factual dispute that Akerman complied with the Agreement and can rely on the Release.

## II.

The standard for granting summary judgment is well established. "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Darnell v. Pineiro, 849 F.3d 17, 22 (2d Cir. 2017). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to

7

discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matters that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the

nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Abrams v. RSUI Indemnity Co., No. 16-cv-4886 (JGK), 2017 WL 3433108, at *3 (S.D.N.Y. Aug. 10, 2017).

## III.

Akerman moves for summary judgment. Akerman contends that by the February 20, 2015 Agreement the plaintiffs released all of the claims asserted against Akerman in this case, which pertain to events preceding February 20, 2015. Akerman argues that the FINRA arbitration panel ruled that the Agreement is binding, and therefore the doctrine of collateral estoppel precludes the plaintiffs from now arguing otherwise.

The doctrine of collateral estoppel may preclude a party, or its privy, from relitigating an issue that the party previously litigated and lost. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979); Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313, 320-21 (1971). District courts have broad discretion to determine when collateral estoppel should be applied. Parklane Hosiery, 439 U.S. at 331. The Second Circuit Court of Appeals has explained that a prior arbitration may have preclusive effect where:

9

(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (internal quotation marks and citations omitted). Additionally, "a court must satisfy itself that application of the doctrine is fair." Id.

The plaintiffs contend that the FINRA arbitration does not have a preclusive effect in this litigation and that the Court's previous determination that the Court is not bound by the FINRA arbitration is "law of the case." The plaintiffs also suggest that the FINRA arbitration should not be given preclusive effect because the arbitrators did not explicitly find that Akerman had not breached the Agreement. Further, the plaintiffs argue that, even if the FINRA arbitration could have a preclusive effect, it does not have that effect in this case because the respondents in the arbitration are not identical to, nor in privity with, the plaintiffs in this litigation.

**A.**

The plaintiffs contend that the Court's prior determination that Akerman was not entitled to summary judgment because a fact dispute existed regarding whether Akerman had violated the

Agreement, is law of the case. This argument is misguided. "The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks omitted). However,

> unlike the doctrines of *res judicata* and collateral estoppel, which a court cannot ignore where they apply, the law of the case, as Justice Holmes remarked, "merely expresses the practice of the courts generally to refuse to reopen what has been decided" . . . [and] is, at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses this practice.

Devilla v. Schriver, 245 F.3d 192, 197 (2d Cir. 2001) (internal quotation marks, citations, and brackets omitted).

Further, the issue of collateral estoppel has not previously been raised with respect to the FINRA arbitration. Rather, Akerman previously argued that there was no genuine fact dispute that Akerman had not breached the Agreement and that he was therefore entitled to summary judgment dismissing all of the plaintiffs' claims. In the plaintiffs' opposition to Akerman's earlier motion for summary judgment, the plaintiffs asserted that numerous fact disputes existed over whether Akerman breached the Agreement, precluding summary judgment. The Court denied Akerman's motion for summary judgment on that ground.

11

Akerman had not raised a defense of collateral estoppel, although the Court may have inquired about the issue at argument. That defense was not resolved on the prior motion. Akerman did not amend his Answer to include collateral estoppel as an affirmative defense until after the Court had ruled on his first motion for summary judgment. Akerman's current motion for summary judgment seeks to preclude the plaintiffs from making the argument on which the plaintiffs prevailed in their earlier opposition to Akerman's motion for summary judgment; Akerman does not seek to relitigate the same issue of fact.

Law of the case is a discretionary doctrine, and this Court could reconsider a prior ruling. In any event, because Akerman now raises a new issue, the doctrine of law of the case does not foreclose Akerman's argument of collateral estoppel.

### B.

The plaintiffs also contend that, even if collateral estoppel applies in this case, the FINRA arbitration should not be given preclusive effect because the arbitrators did not expressly find that Akerman had not breached the Agreement. However, there is no requirement that the issue over which preclusion is sought have been the subject of an express finding of fact. Rather, as the Second Circuit Court of Appeals explained, the question is whether "the resolution of the issue

12

was necessary to support a valid and final judgment on the merits." Bear, Stearns & Co., 409 F.3d at 91.

Here, it is clear that the resolution of the contested issue --- whether Akerman breached the Agreement, thereby voiding the Release --- was necessary to support the arbitrators' ruling dismissing the Counterclaims by CLS and CLW and enforcing the Release. The Counterclaims by CLS and CLW echoed the claims in this case alleging a history of abuses by Akerman from mid-2014 into 2015 against CLS and CLW, including conspiring with Verschleiser to steal secrets, and to commit defamation, libel, tortious interference with existing and prospective business relations, and other torts and violations of federal laws. Akerman responded by relying on the Release contained in the Agreement. Akerman argued: "The counterclaims against Akerman should be dismissed because the claims against him are barred by the release and therefore fail to state a cause of action against him." Gefen Decl. Ex. F at 8. In opposing Akerman's motion to dismiss the Counterclaims, CLS and CLW specifically argued, in detail, that "Akerman breached the Agreement rendering the release null and void *ab initio*." Id. Ex. G at 13-20. To find the Agreement's release controlling, the arbitrators necessarily had to reject the argument by CLS and CLW that Akerman had breached the Agreement. The arbitrators also specifically rejected CLS and CLW's contention that Akerman

13

had sought "affirmative relief" in violation of the Agreement by seeking to expunge the Form U-5. Id. Ex. I ("The panel further determined that seeking expungement was not affirmative relief").

The plaintiffs cite In re S.W. Bach & Co., 425 B.R. 78 (Bankr. S.D.N.Y. 2010) to support their argument that courts sometimes decline to give collateral estoppel effect to arbitration rulings that lack findings of fact. That case is distinguishable. In S.W. Bach & Co., the bankruptcy court stayed a pending arbitration precisely because "it is possible that collateral estoppel would apply such that this Court would be deprived of its necessary jurisdiction over the 11 U.S.C. § 548 fraudulent conveyance claim." Id. at 102. The S.W. Bach & Co. court pointed to another bankruptcy case, In re Klein, Maus & Shire, Inc., 301 B.R. 408 (Bankr. S.D.N.Y. 2003), to explain that some courts decline to grant preclusive effect to arbitration rulings that have not made or adopted findings of fact. In Klein, Maus & Shire, Inc., however, the court determined that it could not give preclusive effect to an arbitration ruling because the complaint before the arbitrator contained multiple causes of action seeking identical relief, and the court could therefore not determine the basis (or bases) of the arbitration award. In re Klein, Maus & Shire, Inc., 301 B.R. at 416-17. In this case, by contrast, the resolution of the

14

disputed issue was necessarily reached. The arbitrators' ruling that the Agreement's release required dismissal of the Counterclaims by CLS and CLW necessarily required the arbitrators to find, over the vigorous objection of CLS and CLW, that Akerman had not breached the Agreement.

C.

Generally, the doctrine of collateral estoppel only has preclusive effect on the parties against whom the issue was decided or their privies. See Blonder-Tongue Labs., Inc., 402 U.S. at 320-21. The three plaintiffs in this case who have sued Akerman are Frydman, United Realty, and Prime United Holdings. The entities in the arbitration against Akerman were CLS and CLW. Akerman contends that the requirement of privity is met because Prime United Holdings owned CLS and is a plaintiff in this case. SCAC ¶ 48. Moreover, Akerman argues that Frydman, the CEO and Chairman of Prime United Holdings, was the true driving force behind the arbitration. Id. Frydman is also the assignee of the claims of United Realty and Prime United Holdings. Gefen Decl. Ex. L at 163:25-164:7. The plaintiffs argue that the privity requirement is not met between the parties to the arbitration and the plaintiffs in this case because "certain affiliates of Frydman" sold their interests in United Realty midway through the arbitration and because different attorneys

15

represented the parties in the arbitration and the plaintiffs in this case.

The plaintiffs' arguments have no merit. Generously construed, the plaintiffs argue that precluding United Realty from relitigating the Agreement's release would be unfair because United Realty was not a party to the arbitration, and the plaintiffs' allege that, as of September 15, 2015 --- three weeks before CLS and CLW submitted the Counterclaims in the arbitration --- Frydman no longer owned United Realty. However, "complete privity" is not required for a party to have been adequately represented in a previous proceeding. See M.O.C.H.A. Soc'y, Inc. v. City of Buffalo, 689 F.3d 263, 285 (2d Cir. 2012) ("Despite the absence of complete privity between the named plaintiffs in the two actions, sufficient identity exists between the plaintiffs for the district court to apply collateral estoppel and to bar litigation" of the previously decided issue.) (internal quotation marks omitted). The interests of all the plaintiffs in the current action --- Frydman, United Realty, and Prime United Holdings --- were all adequately represented in the arbitration and all had the same interest in invalidating the Agreement and the Release.

Moreover, Frydman owns the litigation claims of United Realty and Prime United Holdings. Those entities will therefore lose nothing by not litigating Akerman's release because Frydman

16

is the only person who stands to benefit from invalidating the Release. And not only did Frydman control the respondents to the arbitration by virtue of being the CEO and Chairman of Prime United Holdings, which owned CLS, but Frydman personally litigated much of the arbitration, including signing the Counterclaims at issue. Gefen Decl. E at 59. There is no doubt that the plaintiffs in this case are in privity with, and were adequately represented by, the respondents in the arbitration.

Therefore, the doctrine of collateral estoppel precludes the plaintiffs from contesting the enforceability of the Agreement or the Release.

**IV.**

"New York law favors enforcement of valid releases." Spanski Enterprises, Inc. v. Telewizja Polska, S.A., No. 10-cv-4933 (ALC) (GWG), 2013 WL 81263 at *4 (S.D.N.Y. Jan. 8, 2013) (collecting cases). "An unambiguous release 'should be enforced according to its terms.'" Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 144 (2d Cir. 2000) (quoting Booth v. 3669 Delaware, 703 N.E.2d 757, 758 (N.Y. 1998)). The February 20, 2015 Agreement between Akerman and Frydman contained a broad release of all claims the plaintiffs "ever had, now have, or hereafter may have, by reason of any matter, cause, or thing whatsoever, from the beginning of the world through the time of execution of this Agreement." Gefen Decl. Ex. B at 2. All of the claims

against Akerman in this case relate to events prior to February 20, 2015, the date of the Agreement and the Release. Because the Release is unambiguous and because the plaintiffs are precluded by the doctrine of collateral estoppel from arguing that Akerman breached the Agreement, Akerman is entitled to summary judgment dismissing all of the plaintiffs' claims against him. Indeed, the arbitration panel correctly dismissed the Counterclaims in the arbitration, which asserted similar claims to those now made by the plaintiffs in this case against Akerman.

Akerman's motion for summary judgment dismissing all of the plaintiffs' claims against him is therefore **granted**.[4]

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the motion for summary judgment by defendant Akerman is **granted**. All

---

[4] It is unnecessary to reach Akerman's alternative argument that the RICO claims (Counts One and Two) should be dismissed because the plaintiffs' claims for damages are speculative and cannot be proved.

claims against defendant Akerman are dismissed. The Clerk of Court is directed to close Dkt. No. 212 in 14-cv-8084.

SO ORDERED.

Dated:     New York, New York
            December 2, 2017

                                                  John G. Koeltl
                                      United States District Judge