**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
UNITED REALTY ADVISORS, LP and JACOB
FRYDMAN,

                           Plaintiffs,                   14 Civ. 5903 (JGK) (JLC)

              -against-

ELI VERSCHLEISER, RAUL DELFORNO, OPHIR        **PLAINTIFFS' PROPOSED**
PARNASI, and ALEX ONICA,                            **<u>REQUESTS TO CHARGE</u>**

                           Defendants.
------------------------------------------------------------------------X
JACOB FRYDMAN, UNITED REALTY ADVISORS,
LP, and PRIME UNITED HOLDINGS, LLC,

                           Plaintiffs,

              -against-                   14 Civ. 8084 (JGK) (JLC)

ELI VERSCHLEISER, ALBERT AKERMAN, MULTI
CAPITAL GROUP OF COMPANIES, LLC, RAUL
DELFORNO, OPHIR PINHASI, ALEX ONICA, ALEX
VEEN, SOFIA SVISCH, ALEXANDER MERCHANSKY
and DOES 1 through 15 inclusive,

                           Defendants.
------------------------------------------------------------------------X

       Pursuant to Rule 51 of the Federal Rules of Civil Procedure, the Court's Order of

August 5, 2022 (Dkt. 550 in 5903) and Section IV.E. of the Court's Individual Practices in Civil

Cases, Plaintiffs respectfully submit this proposed set of jury charges, and respectfully reserve

the right to add, subtract, or modify the same prior to the jury' s commencement of its

deliberations.  Plaintiffs submit only substantive legal and specifically requested charges; if the

Court desires the parties to submit proposed preliminary and standard charges, Plaintiffs will do

so in a supplemental submission.

Dated: White Plains, New York
September 16, 2022

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: /s/ Adam M. Shienvold

Steven R. Kramer, Esquire
Eckert Seamans Cherin & Mellott, LLC
10 Bank Street, Suite 700
White Plains, NY  10606
Tel:  914-949-3760
Fax:  914-949-5424
skramer@eckertseamans.com

Adam M. Shienvold, Esquire (*pro hac vice*)
213 Market Street, 8th Floor
Harrisburg, PA  17101
Tel:  717-237-6029
Fax:  717-237-6019
ashienvold@eckertseamans.com

# TABLE OF CONTENTS

**Page**

I.     PLAINTIFFS' REQUEST TO CHARGE NO. 1 - PRE-TRIAL INSTRUCTION
       REGARDING CLAIMS AND DEFENSES. ....................................................1

II.    PLAINTIFFS' REQUEST TO CHARGE NO. 2 – STIPULATIONS OF FACT..............5

III.   PLAINTIFFS' REQUEST TO CHARGE NO. 3 – SUBSTANTIVE LAW
       RELATING TO PLAINTIFFS' CLAIMS..........................................................10

       A.    RICO Claims...............................................................................10

             1.    Section 1962(c) ..............................................................10

             2.    Section 1962(d)...............................................................22

             3.    Causation.........................................................................27

             4.    Damages...........................................................................28

       B.    Computer Fraud and Abuse Act Claims ..........................................29

             1.    Section 1030(a)(2)(C) .....................................................30

             2.    Section 1030(a)(4) ..........................................................33

             3.    Section 1030(a)(5)(C).....................................................35

             4.    Section 1030(a)(6) ..........................................................35

             5.    Damages...........................................................................36

       C.    Conspiracy to Violate the CFAA ...................................................37

       D.    Electronic Communications Privacy Act Claims ................................39

             1.    Section 2511(1)(a) ..........................................................39

             2.    Section 2511(1)(c) ..........................................................41

             3.    Damages...........................................................................43

             4.    Punitive Damages ............................................................44

       E.    Stored Communications Act Claims................................................46

             1.    Section 2701(a) ...............................................................46

             2.    Damages...........................................................................50

             3.    Punitive Damages ............................................................51

       F.    Libel Claims................................................................................51

             1.    Libel Per Se.....................................................................51

             2.    Damages...........................................................................57

             3.    Trade Libel ......................................................................58

G.     Misappropriation of Trade Secrets....................................................62

     1.     Elements of a Claim of Misappropriation of Trade Secrets .....................62

         a.     First Element: Possession of a Trade Secret ..................................63

         b.     Second Element: Use of a Trade Secret in Breach of an Agreement or a Duty .......................................................65

     2.     Damages......................................................................68

H.     Tortious Interference With Existing Contractual Relations................................68

     1.     Damages......................................................................70

I.     Tortious Interference With Prospective Contractual Relations ...........................70

     1.     Damages......................................................................72

J.     Intentional Infliction of Emotional Distress .........................................73

     1.     Damages......................................................................74

K.     Breach of Contract ...............................................................75

     1.     Damages......................................................................79

     2.     General, Consequential and Nominal Damages .....................................80

L.     Breach of Duty of Loyalty .........................................................82

     1.     Damages......................................................................83

M.     Conversion .......................................................................83

     1.     Damages......................................................................85

I.     **PLAINTIFFS' REQUEST TO CHARGE NO. 1 - PRE-TRIAL INSTRUCTION REGARDING CLAIMS AND DEFENSES.**

The positions of the parties can be summarized as follows:

From 2011 until late 2013, Frydman and Verschleiser were partners in several real estate and related entities, including United Realty, the REIT, and Prime United and Cabot Lodge. After a series of disagreements, their partnership came to an end in early December 2013, when Frydman claims that he terminated Verschleiser's employment with United Realty and served a termination notice on Verschleiser on December 2, 2013.  Plaintiffs claim that, after Frydman's and Verschleiser's partnership came to an end, Verschleiser, with the help and assistance of co-defendants Del Forno, Pinhasi, Onica, and other, undertook a coordinated series of actions that were intended to harm Frydman and his businesses in various ways.

First, Plaintiffs claim that defendants Verschleiser, Multi Group, Del Forno, Pinhasi and Onica violated a federal statute, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., commonly known as "RICO."  I will instruct you on the elements of RICO at the close of evidence.  Plaintiffs make the following allegations and those related thereto in support of their RICO claims.

Frydman is a principal in numerous businesses that invest in, develop or manage real estate.  Until September 15, 2015, Frydman was the CEO and Chairman of United Realty Trust Incorporated, a public non-traded real estate investment trust, or "REIT," and was the CEO and Chairman of United Realty, a private real estate investment and advisory firm which acted as an external advisor to the REIT.  Frydman is also the CEO and Chairman of the board of Prime United, a financial services holding company which owned Cabot Lodge Securities, LLC, a broker-dealer which acted as the dealer manager for the offering and selling of investments in the REIT.

1

When I charge you at the close of evidence as to the elements of the RICO claims made in this case, I will charge you as to what the Plaintiffs must prove in this case as part of their RICO claims.  In general, Plaintiffs claim that from the moment Frydman and Verschleiser split up as real estate partners, Verschleiser headed an enterprise that was comprised of defendants Verschleiser, Multi Group, Del Forno, Pinhasi and Onica, and others that, together committed various acts of wire or mail fraud in a common effort to harm Frydman and his companies, including United Realty, Prime United and the REIT, particularly by making false claims against and about Frydman and United Realty on websites, blogs and other Internet postings.  Plaintiffs claim that the enterprise's goal has been to cause investors and others not to invest or otherwise do business with Frydman and his companies, that all the members of the enterprise have worked together to commit various acts of wire or mail fraud for the foregoing common purpose, and that each member of the enterprise has had some part in directing its affairs.

Next, Plaintiffs also claim that defendants violated federal laws relating to computer hacking.  Plaintiffs claim that Verschleiser, Del Forno, Pinhasi and Onica violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq., known as the CFAA.  Plaintiffs claim that defendants Verschleiser and Del Forno violated  the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq., known as the ECPA.   Finally, Plaintiffs claim that defendants Verschleiser, Del Forno, Pinhasi and Onica also violated the Stored Communications Act, 18 U.S.C. §§ 2701 et seq., known as the SCA.  I will instruct you on the applicable elements of the CFAA, the ECPA and the SCA at the close of evidence.  In general, those statutes prohibit computer hacking.   Plaintiffs allege that the defendants improperly gained access to their computer and email systems, intercepted and copied email and other documents, and used the information from those activities to harm Plaintiffs.  Plaintiffs also claim that these defendants

committed the tort of conversion, which means to take someone else's property away from them without any right to do so.  I will instruct you on the specific elements of the claim at the close of the evidence, but the nature of Plaintiffs' claim is that Defendants converted certain computer and email files and documents, both by copying and by deleting the files, and they claim damages resulting from the loss of the files.

Plaintiffs claim that defendants Verschleiser, Del Forno, Pinhasi and Onica misappropriated trade secrets, specifically, confidential business information relating to certain upcoming business transactions.  Although it is related to the hacking claims I mentioned a moment ago, misappropriation of trade secrets is separate claim and will be considered separately by you.  I will charge you the elements of misappropriation of trade secrets at the close of evidence.  Plaintiffs allege that Defendant took secret business information from Plaintiffs and used it to harm their business operations.

Next, Plaintiffs claim that defendant Verschleiser committed libel, which is a form of defamation.  I will charge you the elements of the various defamation counts at the close of evidence.  Plaintiffs claim that the alleged defamations caused injury to Frydman's personal and business reputation and to the other Plaintiffs' business reputations and humiliation and mental anguish in Frydman's public and private life.

Plaintiffs claim that defendants intentionally interfered with both existing and prospective or expected contractual relationships.  I will instruct you on the specific elements of these torts after the close of the evidence, but Plaintiffs allege that they had certain existing or likely contractual or business relationships with third parties, and that the Defendants improperly interfered with those relationships by causing the other party to breach the contract or refuse to

enter into the contract.  Plaintiffs will claim that they lost money as a result of these lost contracts and opportunities.

Plaintiffs United Realty and Frydman claim that defendant Verschleiser breached contracts with them.  I will charge you the elements of breach of contract at the close of evidence.  Plaintiffs claim that Verschleiser entered into a agreements with them after they terminated their business relationship, and that Verschleiser did not honor the terms of those Agreements.  Plaintiffs claim damages for the breach of those agreements.

Plaintiffs separately claim that Defendant Del Forno breached his duty of loyalty as an employee of United Realty.  I will instruct you on the specific elements of this claim at the close of the evidence. In general, the law imposes a duty on an employee not to act against the interests of the employer, and Plaintiffs claim that Del Forno breached that duty.

Finally, Frydman claims that Verschleiser intentionally inflicted emotional distress on Frydman.  As with all of the other claims I've described to you, I will instruct you on the specific elements of the claim at the close of the evidence, but Frydman claims that Verschleiser's actions toward him were intended to cause emotional distress, that Verschleiser's conduct was shocking or outrageous to ordinary people, and that Frydman was injured as a result of Verschleiser's conduct.

* * * *

Defendants Verschleiser, Multi Group, Del Forno, Pinhasi, and Onica deny each of Plaintiffs' claims.

*Authority*: 3 Kevin F. O'Malley et al., Fed. Jury Prac. & Instr. (6th ed.) § 101:03 (modified)

II.      **PLAINTIFFS' REQUEST TO CHARGE NO. 2 – STIPULATIONS OF FACT.**

A stipulation of facts is an agreement among the parties that a certain fact is true.  You

must regard such agreed facts as true.  The parties have stipulated to the following facts as true:

1.      Frydman is a resident of the State of New York.

2.      Verschleiser is a citizen and resident of the State of New York.

3.      In 2011, Verschleiser and Frydman joined together to sponsor a public non-traded

Real Estate Investment Trust, the REIT.

4.      In connection therewith, Frydman and Verschleiser formed numerous entities,

and, as of December 2, 2013, Verschleiser and Frydman, directly and indirectly through a variety

of affiliates, jointly owned, operated and/or controlled the following public and private entities,

which I will collectively refer to as the Entities:

> United Realty Advisor Holdings, LLC, which I will refer to as URA Holdings
> United Realty
> United Realty Trust Incorporated
> United Realty Partners, LLC
> URA Property Management, LLC
> United Realty Capital Markets, LLC
> URP Investments, LLC
> URTI GP, LLC
> URTIGP Investments, LLC
> URA Property Management, LLC
> URTI LP, LLC
> Riverside United Title Agency, LLC
> Prime United
> CLS
> CL Wealth Management, LLC
> CL General Agency, LLC
> Cabot Lodge Lending, LLC
> American United Securities, LLC
> AUS Holdings, LLC
> United 866 Management, LLC
> United Realty 866 UN Plaza, LLC
> United Realty Capital Operating Partnership, L.P.

.   5.     Prior to December of 2013, Frydman was CEO and Chairman and Verschleiser was President and a member of the board of both the REIT and its advisor United Realty. Frydman and Verschleiser both held management or board positions with each of the other Entities.

6.     Prior to December 3, 2013, the Operating Agreement of URA Holdings, which was the primary sponsor of the REIT, made as of August 1, 2011, which I will refer to as the URA Holdings Operating Agreement, constituted the overarching agreement between Verschleiser and Frydman.

7.     Section 3.1.3(a) of the URA Holdings Operating Agreement provides for removal of a manager for cause.

8.     Verschleiser's employment with United Realty was governed by an employment agreement accepted and agreed to by him on January 1, 2012, which I will refer to as the Employment Agreement.

9.     The Employment Agreement contained, among other provisions, a non-solicitation provision, i.e., section (b)(i-iii); a non-disparagement provision, i.e., section (b)(iv); and a confidentiality provision, i.e., section (b)(v), all with a one-year duration following termination.

10.     Verschleiser has admitted to using the following email addresses:

eli.v@multigroups.com
eli.v@urpa.com
eli.v@magenu.org
eli.v@multi-capital.com
hr@multigroups.com
press@multigroups.com
eliv@att.net
2good2b4@att.net
elivmulti@gmail.com

eli.v@ourplaceny.org
eli.v@eliv.com

11.     As a public company, with reporting obligations to the United States Securities and Exchange Commission (the "SEC"), the removal of Verschleiser and/or Frydman as an officer of the REIT triggered a four-day period for the REIT to file a Form 8-K with the SEC announcing these events.

12.     Just after midnight on December 4, 2013, Frydman and Verschleiser and several of their respective affiliates entered into the Separation Agreement, which was made as of December 3, 2013.

13.     The Separation Agreement contained, among other provisions, a non-solicitation provision (with an 18-month duration), i.e., paragraph 10(a)(i); a non-disparagement provision (with an 18-month duration), i.e., paragraph 10(a)(ii), (b); a provision that any breach of the non-solicitation or non-disparagement provisions would be considered a material breach, i.e., paragraph 11; and an e-mail exchange server restoration provision, i.e., paragraph 25.

14.     On or about December 10, 2013, Intermedia, which hosted the United Realty email exchange server, locked Verschleiser out of the United Realty email account, and returned control to Frydman.

15.     Emails between Frydman and Verschleiser reflect admissions by Verschleiser that he failed to restore the United Realty email exchange server, web hosting server and computer network, among other servers and networks, to their status on or before November 15, 2013 and provide Frydman with all owner and administrative passwords by the close of business on December 5, 2013, as required by Paragraph 25 of the Separation Agreement.

16.     By December 10, 2013, Verschleiser had not relinquished control of the United Realty email exchange server to Frydman.

17.     In or about February 2014, Frydman, on behalf of United Realty, was negotiating a new corporate headquarters sublease for space in the building at 180 Maiden Lane from the sub-landlord, Opera Solutions, involving a favorable $1.4 million sublease at below market rent.

18.     On April 17, 2014, The *Real Deal*, a real estate news website primarily concerned with the New York City market, published an article entitled "Feud between United Realty CEO and ex-president turning ugly."

19.     On September 28, 2011, Akerman executed an employment agreement with United Realty, which I will refer to as the Akerman Employment Agreement.

20.     The Akerman Employment Agreement contained, among other provisions, a confidentiality provision (with a one-year duration following termination), i.e., section (b)(v).

21.     Akerman executed a subscription agreement with United Realty as of January 8, 2013, which I will refer to as the Akerman Subscription Agreement.

22.     The Akerman Subscription Agreement contained, among other provisions, a confidentiality provision, i.e., paragraph 15.

23.     Akerman executed a limited partnership agreement with United Realty, which I will refer to as the Akerman Limited Partnership Agreement.

24.     The Akerman Limited Partnership Agreement contained, among other provisions, a confidentiality provision, i.e., section 10.1(b).

25.     The employee manual of CLS, dated January 2013, contained, among other provisions, confidentiality provisions, i.e., p. 5, item (iii)(E); p. 8; pp. 9-10.

26.     In a submission dated January 3, 2014, Akerman, on behalf of CLS and in his capacity as its Chief Compliance Officer, submitted a Form B-D to the Financial Industry Regulatory Authority, which is known as FINRA, which I will refer to as the January Form B-D.

27.     The January Form B-D provided as follows:

**WARNING**:  Failure to keep this form current and to file accurate supplementary information on a timely basis, or the failure to keep accurate books and records or otherwise to comply with the provisions of law applying to the conduct of business as a broker-dealer would violate the Federal securities law and the laws of the jurisdictions and may result in disciplinary, administrative, injunctive or criminal action. **INTENTIONAL MISSTATEMENTS OR OMISSIONS OF FACTS MAY CONSTITUTE CRIMINAL VIOLATIONS.**

28.     Akerman executed the January Form B-D under the following statement:

The undersigned, being first duly sworn, deposes and says that he/she has executed this form on behalf of, and with the authority of, said applicant.  The undersigned and applicant represent that the information and statements contained herein, including exhibits attached hereto, and other information filed herewith, all of which are made a part hereof, are current, true and complete.  The undersigned and applicant further represent that to the extent any information previously submitted is not amended such information is currently accurate and complete.

29.     In the January Form B-D, Akerman amended the Schedule B of indirect owners to reflect that Verschleiser no longer had any ownership interest in CLS.

30.     On October 8, 2014, Prime United, CLS, an affiliate of CLS, and the CEO and President of CLS, Gould, entered into a highly confidential agreement for a transaction with a third party, Royal Alliance.

*Authority*: 4 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 74.02, at 74-4 (modified)

### III.   PLAINTIFFS' REQUEST TO CHARGE NO. 3 – SUBSTANTIVE LAW RELATING TO PLAINTIFFS' CLAIMS

#### A.   RICO Claims

Plaintiffs claim that defendants Verschleiser, Multi Group, Del Forno, Pinhasi, and Onica, later joined by others, have violated section 1962(c) and (d) of the federal statute commonly known as RICO.  The plaintiff must establish by a preponderance of the evidence every element of each of his or its RICO claims.  You should consider each and every element of a RICO cause of action only in the precise way that I will define them in these instructions. You must avoid confusing any of the elements of a RICO claim with your prior conceptions of the meaning of the terms that are used to describe the elements of a RICO claim.

Although RICO uses the terms "racketeer," "racketeering," and "corrupt organizations," Congress did not mean that the plaintiff must prove that each or any of defendants Verschleiser, Multi Group, Del Forno, Pinhasi, and Onica is a "racketeer" or a member of what is commonly referred to as "organized crime" in order to recover damages.  Those concepts do not apply in this case.  Likewise, you should not assume that any of those defendants is a "racketeer" because they been sued under RICO.

In addition, mere violations of the law are not enough to establish a violation of RICO. The plaintiff must prove each element of a RICO violation as those elements will be explained to you.

*Authority*: 3B Kevin F. O'Malley et al., Fed. Jury Prac. & Instr. (6th ed.) § 161:01 (modified); 3B Kevin F. O'Malley et al., Fed. Jury Prac. & Instr. (5th ed.) § 161:20 (portions also applicable to section 1962(c)) (modified); § 161:20 is much more extensive in the 5th edition than in the 6th edition, where it covers section 1962(a) only.

#### 1.   Section 1962(c)

Plaintiffs claim in Count I that defendants Verschleiser, Multi Group, Del Forno, Pinhasi and Onica, later joined by others, have violated section 1962(c) of RICO.  Section 1962(c)

10

prohibits the conduct of an enterprise through a pattern of racketeering activity.  Specifically,

under section 1962(c),

> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To establish that a defendant has violated section 1962(c), the plaintiff must prove (1)

that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4)

of "racketeering activity" (5) directly or indirectly participates in (6) an "enterprise" (7) the

activities of which affect interstate or foreign commerce.[1]  In that regard, the plaintiff must prove

each of the following elements by a preponderance of the evidence:

1.      That an "enterprise" existed;

2.      That the enterprise engaged in, or had some effect upon, interstate or foreign

commerce;

3.      That the defendant was a person employed by or associated with the enterprise;

4.      That the defendant knowingly and willfully conducted or participated, directly or

indirectly, in the conduct of the affairs of the enterprise; and

5.      That the defendant did so knowingly and willfully through the commission of two

or more predicate acts constituting a pattern of racketeering activity.

A "person" under the law includes any person or entity that is capable of holding a legal

or beneficial interest in property.  A corporation or limited liability company, for example, is a

legal entity that, like a person, is capable of holding a legal or beneficial interest in property.

---

[1] *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 667 (S.D.N.Y. 2016)

The term "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. A defendant may be a "person" and one of a number of members of the "enterprise."[2] An association-in-fact enterprise means a group of people who have associated together for a common purpose of engaging in a course of conduct over time. This group of people may include one or more legal entities. This group of people, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and it must have personnel who function as a continuing unit. This group of people does not have to be a legally recognized entity, such as a partnership or corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. This group need not have a name.[3] An enterprise may be, in effect, no more than the sum of the predicate racketeering acts;[4] proof of those acts may be relied on to establish the existence of the enterprise.[5] An established hierarchy is not essential to the existence of an enterprise.[6]

Plaintiffs claim that an association-in-fact enterprise existed comprised of defendants Verschleiser, Multi Group, Del Forno, Pinhasi, and Onica, later joined by others. Plaintiffs claim such enterprise committed various acts of wire or mail fraud in a common effort to harm Frydman and his companies, including United Realty, Prime United and the REIT, by depriving

---

[2] *Cullen v. Margiotta,* 811 F.2d 698, 730 (2d Cir.), *cert. denied,* 483 U.S. 1021 (1987)

[3] *United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir. 1983), *abrogated on other grounds by Natl. Org. for Women, Inc. v. Scheidler,* 510 U.S. 249 (1994)

[4] *Bagaric,* 706 F.2d at 55

[5] *United States v. Coonan,* 938 F.2d 1553, 1559-60 (2d Cir.1991)

[6] *U.S. v. Burden,* 600 F.3d 204, 215 (2d Cir. 2010)

them of customers and other business relationships, and to deceive the public – particularly by making false and fraudulent claims against Frydman and United Realty on fake websites, blogs and other Internet postings – both as part of that mission and independently, including by enterprise members victimizing and fleecing others over more than a 10-year period.  Plaintiffs claim that the enterprise's goal has been to cause investors and others not to invest or otherwise do business with Frydman and his companies.

If you find that this was a group of people characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who function as a continuing unit, then you may find that an enterprise existed.

"Interstate commerce" includes the movement of goods, services, money and individuals between states or between states and foreign countries.

An enterprise "affects interstate or foreign commerce" if the enterprise either engages in or pursues activities affecting or having a potential effect on commerce between the states or between the states and foreign countries.  Only a minimal effect or minimal potential effect is required.[7]

"Employed by or associated with" means some minimal association with the alleged enterprise.  The defendant must know something about the enterprise's activities as they relate to the racketeering activity, but it is not necessary that the defendant be aware of all racketeering activities of each of the participants in the enterprise.

It is not required that the defendant have been employed by, or associated with, the enterprise for the entire time that the enterprise existed.  It *is* required, however, that the plaintiff

---

[7] *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir.), *cert. denied*, 534 U.S. 891 (2001)

prove, by a preponderance of the evidence, that at *some* time during the period involved, the defendant in question was employed by, or associated with, the enterprise.

A person cannot be associated with, or employed by, an enterprise, if he, she or it does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, the plaintiff must prove, by a preponderance of the evidence, that the defendant was connected to the enterprise in some meaningful way and that the defendant knew of the existence of the enterprise and of the general nature of its activities.

"Conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise" means that the defendant must have played some part in the operation or management of the enterprise. RICO liability is not limited to those with primary responsibility for the enterprise's affairs; one is liable under RICO if he or it has discretionary authority in carrying out the instructions of the enterprise's principal or principals, or has played some part in directing the enterprise's affairs.[8] The plaintiff is not required to prove that the defendant was a member of upper management. An enterprise is operated not only by those in upper management, but also by those lower down in the enterprise who act under the direction of upper management.

In this case, Plaintiffs claim that defendant Verschleiser was the central figure who controlled the enterprise, assisted by defendants Multi Group, Del Forno, Pinhasi, and Onica, later joined by others.

In addition to proving that the defendant played some part in the operation or management of the enterprise, the plaintiff must also prove that there is some meaningful connection between the defendant's unlawful acts and the affairs of the enterprise. To satisfy this part of the element, the plaintiff must establish either (1) that the defendant's position in the

---

[8] *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003)

enterprise facilitated the commission of those unlawful acts and that the racketeering acts had some impact or effect on the enterprise, (2) that the acts were in some way related to the affairs of the enterprise, or (3) that the defendant was able to commit the acts by virtue of his or its position, or involvement in, the affairs of the enterprise.

The word "knowingly," as that term has been used in these RICO instructions, means that the action was done voluntarily and intentionally and not because of mistake or accident.

The word "willfully," as that term has been used in these RICO instructions, means that the action was committed voluntarily and purposely, with the specific intent to do something the law forbids. The action must be done with a bad purpose: either to disobey or disregard the law.

A "racketeering activity" or "racketeering act" means, for purposes of this case, an act in violation of the federal wire fraud statute or the federal mail fraud statute, or the federal anti-hacking statutes. You will be instructed on the law pertaining to these statute(s) to guide you in determining whether the plaintiff has proved by a preponderance of the evidence that a defendant committed one or more violations of these statutes. A "racketeering activity" or a "racketeering act" may also be referred to as a "predicate act."

A "pattern of racketeering activity" requires that the plaintiff prove that a defendant committed at least two acts of racketeering activity within ten years of each other. The proof of two or more predicate acts does not in and of itself establish a "pattern" under RICO. The two acts need not be of the same kind. For example, the acts may be one act of wire fraud and one act of mail fraud. However, you must find by a preponderance of the evidence that the two acts occurred within the time specified and that each was related to the other so as to constitute a "pattern." Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing

15

characteristics and are not isolated events.  A series of wholly separate, isolated or disconnected

acts of racketeering activity does not constitute a pattern.

A pattern also requires continuity; besides being related, the predicate acts that are the

basis of racketeering activity must amount to, or present, a threat of continued criminal activity.[9]

The continuity necessary to prove a pattern can be either "closed-ended continuity," or "open-

ended continuity."[10]  Plaintiffs claim that they have established both closed- and open-ended

continuity.

Closed-ended continuity is demonstrated by predicate acts that amount to continued

criminal activity by the defendant.  To satisfy closed-ended continuity, the plaintiff must prove a

series of related predicates extending over a substantial period of time.  Predicate acts extending

over a few weeks or months do not satisfy this requirement.  To establish closed-ended

continuity, the plaintiff must provide some basis to conclude that the defendant's activities were

neither isolated or sporadic.  A period approaching not less than two years suffices to constitute a

substantial period of time for closed-ended continuity.  For example, periods of 19 or 20 months

are sufficient.[11]  Although closed-ended continuity is primarily a temporal concept, other factors

such as the number and variety of predicate acts, the number of both participants and victims,

and the presence of separate schemes are also relevant in determining whether closed-ended

---

[9] *H.J. Inc. v. Northwestern Bell Tel Co.,* 492 U.S. 229, 237 (1989)

[10] *H.J. Inc.*, 492 U.S. at 241-42

[11] *Metromedia Co. v. Fugazy,* 983 F.2d 350, 369 (2d Cir. 1992), *cert. denied*, 508 U.S. 952 (1993); *see also U.S. v. Veliz*, 623 Fed. Appx. 538, 543 (2d Cir. 2015) (summary order), *cert. denied*, 136 S. Ct. 848 (2016) ("That we have not held a period of less than two years to be sufficient does not mean that such a period is insufficient as a matter of law…for closed-ended continuity.")

continuity exists.  The duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendant commits.[12]

To establish open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed.  Plaintiffs claim that the alleged pattern of racketeering activity has continued on a consistent basis since December 2, 2013, has seen no cessation, and in fact has been escalating with greater frequency over time.

In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant.  A threat of continuing criminal activity, and thus open-ended continuity, may be established by showing that the predicate acts are part of the enterprise's regular way of doing business, in other words where the predicate acts can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.[13]

Plaintiffs have alleged that each of the defendants has committed two or more predicate acts based on violations of the wire fraud or mail fraud statutes, specifically wire or mail fraud via initial computer hacking; via subsequent hacking, via Internet scams, via false advertisement flyers and posters; via additional Internet scams; and via Verschleiser's alleged recruitment of Akerman to steal Plaintiffs' proprietary information, causing the loss of such information, as well additional, related acts of wire or mail fraud via sending mass anonymous disparaging email

---

[12] This paragraph is otherwise drawn from *DeFalco*, 244 F.3d at 321

[13] This paragraph is drawn from *DeFalco*, 244 F.3d at 323, and *H.J. Inc.*, 492 U.S. at 242-43

blasts.  It is your function to decide whether the plaintiff has proved by a preponderance of the evidence as to each defendant whether that defendant violated either or both of those statutes on two or more occasions, if at all.

The plaintiff satisfies his or its burden if the plaintiff proves by a preponderance of the evidence that at least two of the alleged predicate acts sufficiently related to constitute a pattern were committed by the defendant within the prescribed time.

However, you may not find that the plaintiff has established this element unless you all agree that at least two particular predicate acts were committed by the defendant.  It is not enough if some of you think that only predicate acts A and B were committed by the defendant, and the rest of you think that only acts C and D were committed by the defendant.  There must be at least two specific racketeering acts that you unanimously find by a preponderance of the evidence were committed by the defendant in order to satisfy this element.

The wire fraud statute, Section 1343 of Title 18 of the United States Code, provides in pertinent part, that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both….

The mail fraud statute, Section 1341 of Title 18 of the United States Code, provides in pertinent part, that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises … for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, *[shall be guilty of an offense against the laws of the United States].*

To establish that predicate acts of wire fraud or mail fraud have been committed, the plaintiff must prove the following by a preponderance of the evidence as to each defendant so charged:

     1.     some person or persons willfully and knowingly devised a scheme or artifice to defraud, or a scheme or artifice for obtaining money or property by means of false pretenses, representations or promises; and

     2.     use of the wires or mails to further the scheme or artifice.

The words "scheme" and "artifice" in the wire and mail fraud statutes include any plan or course of action intended to deceive others, or to obtain, by false pretenses, representations, or promises, money or property from persons so deceived.  However, the plaintiff is not required to prove that the defendant intended to actually obtain money or property so long as the plaintiff proves that there was a scheme or artifice to deprive them of money or property.[14]  Use of the wires include, but are not limited to, use of telephones, mobile phones or cellphones[15] or any use of the Internet, such as sending or receiving emails, text messages or instant messages, transmitting or downloading images, or communicating with websites.[16]

---

[14] *Frydman*, 172 F. Supp. 3d 653, 668

[15] Seventh Circuit Pattern Criminal Jury Instructions (2012 ed.), *Wire Communication*, p. 408 (modified); *United States v. Radomski*, 473 F.3d 728, 729 (7th Cir 2007); *accord Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 827 (7th Cir. 2016)

[16] Seventh Circuit Pattern Criminal Jury Instructions (2012 ed.), *Wire Communication*, p. 408 (modified); *United States v. Ferriero,* 2015 WL 7737341, at *20-*21 (D.N.J. Dec. 1, 2015), *aff'd*, 866 F.3d 107 (3d Cir. 2017), citing *United States v. MacEwan*, 445 F.3d 237, 243-46 (3d Cir.), *cert. denied*, 594 U.S. 882 (2006); *Alkhatib v. New York Motor Group LLC*, 2015 WL 3507340, at *13 (E.D.N.Y. June 3, 2015), *report and recommendation adopted in relevant part*, 2016 WL 5660372 (E.D.N.Y. Sept. 30, 2016); *DNJ Logistic Group, Inc. v. DHL Express (USA), Inc.*, 2010 WL 625364, at *6 n.4 (E.D.N.Y. Feb. 19, 2010); *see U.S. v. Skvarla*, 673 Fed. Appx. 111, 113 (2d Cir. 2016) (summary order), *cert denied*, 137 S. Ct. 1119 (2017); *United States v.*

To establish fraudulent intent on the part of any person for purposes of the wire and mail fraud statutes, it must be established that such person knowingly and intentionally attempted to deceive another.  One who knowingly and intentionally deceives another is chargeable with fraudulent intent, notwithstanding the manner and form in which the deception was attempted. To act with an "intent to defraud" means to act knowingly and with specific intent to deceive, ordinarily for the purpose of causing some financial loss to another, or to bring about some financial gain to one's self.  An intent to defraud may be inferred from a defendant's statements or conduct.  A "scheme to defraud" under the wire and mail fraud statutes means the use of dishonest methods or schemes and usually signifies the deprivation of something of value by trick, deceit, chicane or overreaching.

A statement or representation is "false" or "fraudulent" within the meaning of the wire and mail fraud statutes if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with intent to defraud.  A statement or representation may also be "false" or "fraudulent" if it constitutes a half truth, or effectively conceals a material fact, with intent to defraud.  A material fact is a fact that would be important to a reasonable person in deciding whether to engage in a particular transaction.  Good faith constitutes a complete defense to wire or mail fraud.  Good faith means the actor had a genuine belief that the information which was sent or given was true.

It is not necessary that the plaintiff prove:

1.     All of the details concerning the precise nature and purpose of the scheme, or

---

*Harris,* 548 Fed App'x 679, 682 (2d Cir. 2013) (summary order); *SEC v. Straub*, 2016 WL 5793398, at *11 (S.D.N.Y. Sept. 30, 2016) (collecting decisions of various Circuits)

2.      That the particular wire or mail communication or material wired or mailed was itself false or fraudulent, or

3.      That the alleged scheme actually succeeded in defrauding anyone, or

4.      That the use of the wires or mails was intended as the specific or exclusive means of accomplishing the alleged fraud.

The plaintiff must prove by a preponderance of the evidence that the defendant knowingly and willfully devised or intended to devise a scheme to defraud that was substantially the same as the one alleged by the plaintiff and that the use of the wires or mails was closely related to the scheme in that the defendant either wired or mailed something or caused it to be wired or mailed in an attempt to execute or carry out the scheme.  One causes the wires or mails to be used if he does an act with knowledge that the use of the wires or mails will follow in the ordinary course of business, or if he can reasonably foresee such use.

You have heard throughout these instructions references to "knowingly," "willfully," "intentionally," and "recklessly" or "reckless" in relation to various elements of the offenses or predicate acts charged.  These terms refer to the state of mind of each defendant.  You must decide whether various acts were committed by a particular defendant with a certain state of mind.

You may infer a defendant's state of mind from both the defendant's words and the defendant's actions.  The commission of an act may more clearly show defendant's state of mind than defendant's words or explanation uttered long after the act's occurrence.

You may determine a defendant's state of mind based upon the facts and circumstances surrounding the act and any reasonable inferences drawn from those facts and circumstances.

I have previously instructed you as to when an act is done knowingly and when it is done willfully. An act is also done knowingly if the defendant consciously avoided knowledge or deliberately refused to act or investigate where the defendant had an affirmative duty to do so. To be found responsible under this theory, the defendant must have been aware that there was a substantial risk that a certain circumstance existed or that a certain result would occur but the defendant nevertheless disregarded the risk. A substantial risk means a risk that is of such a nature and degree that to disregard it constitutes a gross deviation from the standard of care that a reasonable person would exercise in such a situation. An act is done intentionally if the defendant has a conscious objective or desire either to engage in the conduct or to cause the result. An act is done recklessly if the defendant is aware of a substantial risk that a surrounding circumstance exists or that a result will occur, but disregards the risk.

Each separate use of the wires or mails in furtherance of a scheme to defraud constitutes a separate racketeering activity. Wire fraud or mail fraud as a racketeering activity may be established without proof that one or more of the defendants personally did every act constituting wire or mail fraud. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through direction of another person as an agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort.

### 2.    Section 1962(d)

Plaintiffs claim in Count II that defendants Verschleiser, Multi Group, Del Forno, Pinhasi and Onica, later joined by others, have violated section 1962(d) of RICO. Section 1962(d) provides that it shall be unlawful for any person to conspire to violate any of the provisions of, as relevant here, section 1962(c) of RICO.

In order to prove that a defendant violated section 1962(d), the plaintiff must prove by a preponderance of the evidence each of the following elements:

22

First, that there was an agreement among two or more persons to participate in an enterprise that would affect interstate or foreign commerce through a pattern of racketeering activity;

Second, that defendant knowingly and willfully became a member of that agreement; and

Third, that the defendant or another member of the conspiracy agreed to commit two racketeering acts, as I have defined the term racketeering act for you.

The first element that the plaintiff must prove is that there was an agreement among two or more persons to participate in an enterprise that would affect interstate or foreign commerce through a pattern of racketeering activity.  I have previously instructed you as to the meaning of a "person," an "enterprise," "interstate commerce," "affecting interstate or foreign commerce," "racketeering activity," and "a pattern of racketeering activity."

A "conspiracy" is an agreement among two or more persons to achieve an unlawful object.  To show a conspiratorial agreement, the plaintiff is not required to prove that two or more persons entered into a solemn pact, but only that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object, whether they were successful or not.

In this case, the unlawful act is the formation of an enterprise whose activities would affect interstate or foreign commerce through a pattern of racketeering activity.

However, with respect to a conspiracy, the plaintiff is not required to prove that the enterprise actually came into existence as long as he or it proves that if the objective of the conspiracy had been achieved, the enterprise would have been established.

As with the enterprise element, it is not required that the plaintiff prove that the enterprise actually affected interstate or foreign commerce as long as he or it proves that if the objective of

23

the conspiracy had been achieved, the enterprise would have affected interstate or foreign commerce.

In regard to the first element, the evidence in the case need not show that the alleged members of the conspiracy entered into any express or formal agreement, or that they directly stated between themselves the details of the scheme and its object or purpose or the precise means by which the object or purpose was to be accomplished.  Similarly, the evidence in the case need not establish that all of the means or methods alleged were in fact agreed upon to carry out the alleged conspiracy, or that all of the means or methods which were agreed upon were actually used or put into operation.  The plaintiff is not required to prove that all of the persons charged with being members of the conspiracy were such or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

The second element the plaintiff must prove is that the defendant whom you are considering knowingly and willfully became a member of the conspiracy.

If you are satisfied that the conspiracy alleged existed, you must next ask yourselves who the members of that conspiracy were.  In deciding whether the defendant whom you are considering was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy.  Did he or it participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he or it must have had a stake in the venture or its outcome.  You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the

defendant had such an interest, that is a factor you may properly consider in determining whether the defendant was a member of the conspiracy.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he or it knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his or its own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved.  In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he or it have been apprised of all of their activities.  Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his or its part.  If the plaintiff proves by a preponderance of the evidence that the particular defendant has knowingly and willfully joined the alleged conspiracy it does not matter that the defendant may not have participated in the earlier stages of the alleged conspiracy or scheme.

I want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member.  More is required under the law.  What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.  By such means he or it becomes a knowing and willing participant in the unlawful agreement – that is to say, a conspirator.

The third element that the plaintiff must prove is that the defendant or another member of the conspiracy agreed to commit two racketeering acts.

The focus of this element is on the defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the defendant's or another conspiracy member's agreement to commit the individual criminal acts.  The plaintiff must prove that the defendant participated in some manner in the overall objective of the conspiracy, and that the conspiracy involved, or would have involved, the commission of two racketeering acts.  The defendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme.[17]  The plaintiff is not required to prove either that the defendant agreed to commit two racketeering acts or that he or it actually committed two such acts, although you may conclude that he or it agreed to participate in the conduct of the enterprise from proof that he or it agreed to commit or actually committed such acts.

For the purposes of this Count, Plaintiffs claim that two or more racketeering acts of wire fraud or mail fraud were, or were intended to be, committed as part of the conspiracy, again specifically wire or mail fraud via initial computer hacking; via subsequent hacking, via Internet scams, via false advertisement flyers and posters; via additional Internet scams; and via Verschleiser's alleged recruitment of Akerman to steal Plaintiffs' proprietary information,

---

[17] *U.S. v. Yannotti*, 541 F.3d 112, 122 (2d Cir. 2008), *cert. denied*, 556 U.S. 1130 (2009)

causing the loss of such information.  Again, the plaintiff must prove that two of these acts were,

or were intended to be, committed as part of the conspiracy, although he or it need not prove that

the defendant committed or agreed to commit any of these acts as long as the plaintiff proves that

the defendant participated in some manner in the overall objective of the conspiracy.

Similarly, it is not necessary that the plaintiff prove the defendant committed an overt act

in furtherance of the object of the conspiracy.[18]  An overt act is any transaction or event that may

be entirely innocent when considered alone, but that is committed by a conspirator in an effort to

accomplish some object of the conspiracy.

### 3.      Causation

If you find that all of the elements of the alleged violation of section 1962(c) or section

1962(d) or both those sections,[19] as I have just explained those elements to you, have been

established by a preponderance of the evidence, you must also determine the existence of an

additional element, whether the plaintiff has proved by a preponderance of the evidence that the

violation was the "proximate cause" of an injury to the plaintiff's business or property before

you may find for the plaintiff.  Either damages proximately caused by the predicate acts

themselves or damages proximately caused by the pattern of acts as a whole, or both, will satisfy

this requirement.  In either case, however, you must find that there was some direct relationship

between the injury the plaintiff has asserted and the alleged violation.

The plaintiff is not required to prove that he or it personally relied on misrepresentations

by the defendant as long as the plaintiff proves by a preponderance of the evidence that reliance

---

[18] *Yannotti*, 541 F.3d at 129

[19] *Ruocco v Hemmerdinger Corp.*, 2017 WL 4387184 (2d Cir. Oct. 3, 2017) (summary order) (even without considering jury charge waiver by defendants, defendants can be found liable under RICO conspiracy irrespective of the outcome of substantive RICO claim)

on those misrepresentations by one or more third parties or the public proximately caused the injury the plaintiff has alleged.

An injury or damage is proximately caused when the acts played a substantial part in bringing about or actually causing injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the acts.

A person or entity is injured in his, her or its business when he, she or it suffers loss of money or profits or a reduction in the value or worth of his or its business.

### 4.      Damages

You reach the issue of damages only if you find that a plaintiff has established the elements of a RICO violation under section 1962(c) or section 1962(d) or both those sections, under the standards I have described.

The fact that I instruct you on the issue of damages does not mean that the plaintiff is entitled to prevail – that is for you to decide.  I instruct you on this subject only in the event that you decide that plaintiff has sustained the burden of proof as to the elements of a RICO violation under the standards I have described.

If you find that the plaintiff has established those elements by a preponderance of the evidence, you should then consider the evidence presented concerning damages to the plaintiff's business or property that are alleged to be proximately caused by the defendant's violation of the statute.

You must evaluate each claim of damages, and the proof submitted in support of each claim, separately and you should award damages only for those claims that you find have been established by a preponderance of the evidence.

In considering the issue of damages, if any, with respect to the RICO claims, you must assess the amount you find justified by a preponderance of the evidence as full, just and

reasonable compensation for all of the damages to the Plaintiffs in their business or property, no more or no less.  Damages may not be based on speculation because it is only actual damages, what the law calls compensatory damages, that you are to determine.

The plaintiff may recover only for injury to his or its business or property.  Injury to property may include lost profits and expenses incurred in connection with a defendant's RICO violation and decrease in the value or worth of the business or property itself.

You should consider the amount of damages, if any, as to each defendant with respect to each RICO claim separately and independently from the amount of damages, if any, with respect to the other, non-RICO claims of Plaintiffs.  For example, and by way of example only, if you determine that damages should be awarded to the plaintiff under his or its RICO claims, you should award full, just and reasonable compensation for damages under the RICO claims, without regard to the damages, if any, you might award under any other claim brought by the plaintiff.

*Authority*: 3B Kevin F. O'Malley et al., Fed. Jury Prac. & Instr. (6th ed.) §§ 161:12; 161:13; 161:14; 161:15; 161:25; 161:40; 161:41; 161:42; 161:43; 161:47; 161:51; 161:52; 161:53; 161:54; 161:55; 161:57; 161:58; 161:59; 161:61; 161:70; 161:90 (one or more modified); 3B Kevin F. O'Malley et al., Fed. Jury Prac. & Instr. (5th ed.) § 161:20 (portions also applicable to section 1962(c)); 4-84 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 84.04, at 84-24; 84-25; 84-26; 84-28; 84-29; 84-30; 84-31 (one or more modified); 4-84 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 84.05, at 84-34; 84-35; 84-36; 84-37; 84-38; 84-39 (one or more modified), together with the Seventh Circuit Pattern Criminal Jury Instructions and cases cited in the above footnotes to the RICO charges

### B.    Computer Fraud and Abuse Act Claims

Plaintiffs claim that defendants Verschleiser, Del Forno, Pinhasi, and Onica have violated various sections of the federal statute known as the Computer Fraud and Abuse Act, CFAA, specifically sections 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C), and 1030(a)(6).  The CFAA was originally enacted in an effort to criminalize and to deter computer hacking, and also provides for

civil liability.  In other words, hacking violates the CFAA.[20]  Plaintiffs claim that the allegations of computer hacking comprising the first and second claimed RICO predicate acts of wire or mail fraud that I previously discussed, if proven, also violate the CFAA.

*Authority*: *See* Plaintiff's Proposed Jury Instructions in *Reid-Lamb v. Time Warner Entertainment Co.*, U.S.D.C., W.D.N.C., 3:10-CV-77-FDW (July 1, 2011), Plaintiff's Request for Instruction No. 16 (with authorities), 2011 Jury Instr. LEXIS 178 at *21-*24 (modified) (hereafter "*Reid-Lamb* Request for Instruction No. 16")

### 1.        Section 1030(a)(2)(C)

To establish his or its claims under section 1030(a)(2)(C) of the CFAA, the plaintiff must prove by a preponderance of the evidence that one or more of defendants Verschleiser, Del Forno, Pinhasi, and Onica "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from any protected computer," resulting in a "loss" during any one-year period aggregating at least $5,000 in value.[21] "Damage" may result as well.[22]

Under the CFAA, the term "intentionally" means done with the aim of carrying out the act.

Under the CFAA, the term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable handheld calculator, or other similar device.

---

[20] *Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, 2009 WL 2524864, at *6 (E.D.N.Y. Aug. 14, 2009)

[21] *Estes Forwarding Worldwide LLC v. Cuellar*, 2017 WL 931617, at *4 (E.D. Va. Mar. 9, 2017)

[22] 18 U.S.C. § 1030(g)

Under the CFAA, an employee accesses a computer without authorization when he or she accesses a computer without permission or makes such access after his or her permission has been rescinded.  Authorization of an employee to access a computer ends when the employee is terminated or resigns.[23] The question of "authorization," however, does not turn on an employee's intended use of the information or whether the employee intends to use the information in a manner that is adverse to an employer's interests or policies.

Similarly, under the CFAA, an employee exceeds authorized access whenever that employee accesses a computer "with authorization" and uses "such access to obtain or alter information in the computer that [he] is not entitled so to obtain or alter."  An employee does so when he has permission to access certain information on a computer, but accesses other information as to which he lacks permission.[24]  Liability, therefore, does not depend on an employee's purpose or intended future use of that information; rather, it is dependent upon the actions of the employer in authorizing access to the information in question.

The phrase "obtain[ed] information" includes merely reading the information. There is no requirement that the information be copied or transported.

Under the CFAA, the term "protected computer" means a computer which is used in or affecting interstate or foreign commerce or communication that affects interstate commerce and/or communication of the United States.  Email exchange servers qualify as "protected computers" because the servers can be used in interstate communication.[25]  So do computers

---

[23] *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 233 (S.D.N.Y. 2013); *accord Apple Mtge. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 287 (S.D.N.Y. 2016)

[24] *JBC Holdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 523 (S.D.N.Y. 2013)

[25] *United States v. Powers*, 2010 WL 1418172, at *4 (D. Neb. Mar. 4, 2010), *report and recommendation adopted*, 2010 WL 1418168 (D. Neb. Apr. 6, 2010)

connected to the Internet, which is the case when email accounts are accessed.[26]  So do computers used in conjunction with a business' efforts to conduct sales across state lines.[27]

Under the CFAA, the term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of an interruption of service."  Among other things, the cost of investigating and identifying a CFAA offense, assessing any damage it may have caused, and determining whether any remedial measures were needed constitutes "loss" under the CFAA.[28]  With respect to losses claimed under the CFAA, the plaintiff must show that the losses he or it claims were a natural and foreseeable result and that the costs incurred for such loss were reasonably necessary under the circumstances.

Under the CFAA, the term "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information."  The very act of hacking compromises the integrity and availability of data.[29]

Plaintiffs claim that defendants Verschleiser, Del Forno, Pinhasi and Onica intentionally and knowingly accessed Plaintiffs' computers connected to the Internet without authorization or

---

[26] *United States v. Yucel*, 97 F. Supp. 3d 413, 417-19 (S.D.N.Y. 2015) (collecting cases)

[27] *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1032 (N.D. Ill. 2008); *accord Intl. Chauffeured Serv., Inc. v. Fast Operating Corp.*, 2012 WL 1279825, at *3 (S.D.N.Y. Apr. 16, 2012)

[28] *Univ. Sports Pub. Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 388 (S.D.N.Y. 2010)

[29] *Orbit One Commc'ns, Inc.* v. *Numerex Corp.,* 692 F. Supp. 2d 373, 386 (S.D.N.Y. 2010)

in excess of authorization and obtained information from those computers, resulting in or causing losses during any one-year period aggregating at least $5,000 in value and damage.

Plaintiffs claim that as a result of defendants Verschleiser, Del Forno, Pinhasi and Onica's conduct, they suffered loss by (a) incurring costs to investigate and otherwise respond to defendants' offenses, conduct a damage assessment and restore conditions prior to the offenses, including hiring several external computer investigation or IT consulting firms and spending many hours of valuable time away from day-to-day responsibilities assisting in investigating the offenses; and (b) incurring lost revenue, cost or other consequential damages because of the interruption of service due to blocking Plaintiffs' email and server access.  Plaintiffs further claim that as a result of those defendants' conduct, they suffered damage from the deletion of files, data and other information, including the value of such information and the development costs of recreating it.

*Authority*: *Reid-Lamb* Request for Instruction No. 16 (modified); Jury Instructions in *Denarii Sys. v. Arab*, U.S.D.C., S.D.FL., 1:12-cv-24239 (Aug. 7, 2014), Jury Instruction No. 13, 2014 Jury Instr. LEXIS 229, at *9-*10 (modified); Parties' Jointly Proposed Jury Instructions in *Fiber Sys. Int'l v. Roehrs,* U.S.D.C, E.D. Tex., 4:04-CV-355-MHS (March 4, 2005), Joint Requested Instruction No. 6, 2005 Jury Instr. LEXIS 152, at *14-*18 (modified) (hereafter "*Fiber Sys.* Joint Requested Instruction No. 6"), together with the cases and statutory authority cited in the above footnotes to section 1030(a)(2)(C)

## 2.    Section 1030(a)(4)

To establish his or its claims under section 1030(a)(4) of the CFAA, as relevant here, the plaintiff must prove by a preponderance of the evidence that the defendant "knowingly and with intent to defraud, accesses[d] a protected computer without authorization, or exceed[ed] authorized access, and by means of such conduct further[ed] the intended fraud and obtain[ed]

anything of value," causing a loss during any one-year period aggregating at least $5,000 in value.[30] "Damage" may result as well.[31]

Under the CFAA, the term "knowingly" means that the act was done voluntarily and intentionally, and not because of mistake or accident.  You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him.  While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of the fact.

Under the CFAA, the phrase "intent to defraud" simply means intent to commit wrongdoing.[32]

The terms "protected computer," "without authorization," exceeds authorized access," "loss," and "damage" each has the same meaning that I previously instructed you with respect to section 1030(a)(2)(C) of the CFAA.

Here, Plaintiffs claim that they suffered the same alleged loss and damage that I mentioned with respect to section 1030(a)(2)(C).

*Authority*: *Fiber Sys.* Joint Requested Instruction No. 6 (modified), together with the cases and statutory authority cited in the above footnotes to section 1030(a)(4).

---

[30] *Estes Forwarding*, *supra*

[31] 18 U.S.C. § 1030(g)

[32] *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 892 (N.D. Cal. 2010)

### 3.    Section 1030(a)(5)(C)

To establish his or its claims under section 1030(a)(5)(C) of the CFAA, the plaintiff must prove by a preponderance of the evidence that one or more of defendants Verschleiser, Del Forno, Pinhasi, and Onica "intentionally accesse[d] a protected computer without authorization, and as a result of such conduct, cause[d] damage and loss" during any one-year period aggregating at least $5,000 in value.[33]

The terms "intentionally," "protected computer," "without authorization," "damage," and "loss" each has the same meaning that I previously instructed you with respect to section 1030(a)(2)(C) of the CFAA.

Also here, Plaintiffs claim that they suffered the same alleged loss and damage that I mentioned with respect to section 1030(a)(2)(C).

*Authority*: 18. U.S.C. § 1030(a)(5)(C), together with the case cited in the above footnote to section 1030(a)(5)(C)

### 4.    Section 1030(a)(6)

To establish his or its claims under section 1030(a)(6) of the CFAA, as relevant here, the plaintiff must prove by a preponderance of the evidence that one or more of defendants Verschleiser, Del Forno, Pinhasi, and Onica "knowingly and with intent to defraud traffic[ed] in any password or similar information through which a computer may be accessed without authorization, if…such trafficking affects interstate or foreign commerce," resulting in a "loss" during any one-year period aggregating at least $5,000 in value.[34]  Damage" may result as well.[35]

---

[33] *Estes Forwarding*, *supra*

[34] *Estes Forwarding*, *supra*

[35] 18 U.S.C. § 1030(g)

Under the CFAA, the "term "traffic" means "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of."[36]

The terms "knowingly," "intent to defraud," "without authorization," "loss," and "damage" each has the same meaning that I previously instructed you with respect to section 1030(a)(2)(C) of the CFAA.

Plaintiffs claim that De Forno impermissibly disclosed Frydman's password credentials to Verschleiser, who in turn impermissibly disclosed them to Pinhasi and Onica, who in turn impermissibly disclosed them to one or more others.

Here as well, Plaintiffs claim that they suffered the same alleged loss and damage that I mentioned with respect to section 1030(a)(2)(C).

*Authority*: 18 U.S.C. § 1030(a)(6), together with the case and statutory authority cited in the above footnotes to section 1030(a)(6)

## 5.    Damages

If you find that the plaintiff has proved that one or more of defendants Verschleiser, Del Forno, Pinhasi, and Onica are liable for a violation of one or more of sections 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C), and 1030(a)(6) of the CFAA, then you must determine what were the plaintiff's damages.

The fact that I instruct you on the law of damages as it relates to a CFAA claim must not be taken as a suggestion that you should find for the plaintiff.  It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant.

You should determine what were the Plaintiffs' damages in accordance with (1) the definition of the term "loss" and my other instructions regarding "losses" under the CFAA that I

---

[36] 18 U.S.C. § 1029

provided in my instructions with respect to section 1030(a)(2)(C) of the CFAA, and (2) the definition of the term "damage" that I provided in those instructions.

### C.    Conspiracy to Violate the CFAA

Plaintiffs claim in Count IV that defendants Verschleiser, Del Forno, Pinhasi and Onica violated section 1030(b) of the CFAA by conspiring to commit or attempting to commit an offense under either section 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C), or 1030(a)(6) of the CFAA, the elements of which I previously instructed you.

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose.  It is a kind of "partnership in crime" in which each member becomes the agent of every other member.

To establish his or its claims under section 1030(b) of the CFAA the plaintiff must prove by a preponderance of the evidence that the defendant conspired to commit or attempted to commit an offense under either section 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C), or 1030(a)(6) of the CFAA.

A person attempts to commit such an offense if he (1) knowingly takes a substantial step toward committing the offense, (2) with the intent to commit the offense.  The substantial step must be an act that strongly corroborates that the defendant intended to carry out the offense.[37]

To prove a conspiracy as opposed to proving such an attempt, the plaintiff must prove, by a preponderance of the evidence, each of the following:

1.     That a defendant and another person, such as one or more of the other defendants, made an agreement to commit an offense under either section 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C), or 1030(a)(6) of the CFAA); and

---

[37] Seventh Circuit Pattern Criminal Jury Instructions (2012 Ed.), § 409 *Attempt*

2.      That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to advance the unlawful purpose.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators.  If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to prove conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The plaintiff need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme. Similarly, the plaintiff need not prove that all of the details of the scheme were actually agreed upon or carried out.  Nor must the plaintiff prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that an offense is being committed, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

 *Authority*:  Seventh Circuit Pattern Criminal Jury Instructions (2012 Ed.), *18 U.S.C. § 1030(b) ATTEMPT AND CONSPIRACY – ELEMENTS*, p. 378, *Committee Comment*: "...§ 1030(b) of Title 18 proscribes attempts and conspiracies to violate any subsection of § 1030(a). Where the indictment charges an attempt or conspiracy adjust the instruction accordingly, *using relevant elements from the attempt pattern instruction or pattern instruction for conspiracies where an* **overt** *act is not required*, see the Pattern Instructions 4.09 and 5.08(B), as appropriate" (emphasis added); Seventh Circuit Pattern Criminal Jury Instructions (2012 Ed.), 5.08(B) *CONSPIRACY – NO OVERT ACT REQUIRED*, p. 69 (modified); Fifth Circuit Pattern Criminal

Jury Instructions (2012 Ed.), § 2.20 *CONSPIRACY TO COMMIT OFFENSE 18 U.S.C. § 371* (modified to eliminate reference to overt acts), together with the Seventh Circuit Pattern Criminal Jury Instructions cited in the above footnote to the Conspiracy to Violate the CFAA charge

Here too, Plaintiffs claim that they suffered the same alleged loss and damage that I mentioned with respect to the other CFAA Claims.

### D.    Electronic Communications Privacy Act Claims

Plaintiffs claim that defendants Verschleiser and Del Forno have violated section 2511(1)(a) of the federal statute known as the ECPA, which concerns intercepting communications, and that Verschleiser has violated section 2511(1)(c) of the ECPA, which concerns disclosing the contents of intercepted communications.  Plaintiffs claim that the allegations of computer hacking comprising the first and second claimed RICO predicate acts of wire or mail fraud that I previously discussed, as far as those allegations involve auto-forwarding of emails, if proven, also violate the ECPA.  The ECPA is also known as the Wiretap Act, and I will refer to the Wiretap Act instead from time to time.  Section 2520(a) of the ECPA provides in pertinent part that "any person whose…electronic communication is intercepted [or] disclosed…in violation of [the Wiretap Act]" may sue for damages.

### 1.    Section 2511(1)(a)

For their claims under section 2511(1)(a) of the Wiretap Act, Plaintiffs allege that Verschleiser and Del Forno intentionally intercepted plaintiffs' electronic communications. Under section 2511(1)(a), the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

First, that the defendant intercepted a communication;

Second, that the intercepted communication was, as relevant here, an electronic communication, as I will explain that term to you; and

Third, that the defendant acted intentionally.

The first element that the plaintiff must prove by a preponderance of the evidence is that the defendant intercepted a communication.

To intercept a communication means to acquire access to the contents of that communication through the use of any electronic, mechanical, or other device. The interception must be contemporaneous with the communication to violate the Wiretap Act; the automatic forwarding of plaintiffs' emails to one or more of the defendants, if proven, would satisfy this standard.[38]

The second element that the plaintiff must prove by a preponderance of the evidence is that the intercepted communication was an "electronic communication."

An "electronic communication" means any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric or photo-optical system that affects interstate or foreign commerce. To affect interstate commerce, the communications system must have had some effect on the movement, transportation, or flow of goods, merchandise, information, money and individuals between or among the states. Email messages satisfy these requirements and are "electronic communications."[39]

The third element that the plaintiff must prove by a preponderance of the evidence is that the defendant acted intentionally.

---

[38] *U.S. v. Szymuszkiewicz*, 622 F.3d 701, 705-06 (7th Cir. 2010) (upholding defendant's conviction under "intercept" provision of ECPA for setting up automatic rule whereby defendant's supervisor's emails were automatically forwarded to defendant's email account); *accord Zaratzian v. Abadir*, 2014 WL 4467919, at *6-*7 (S.D.N.Y. Sept. 2, 2014), *aff'd*, 694 Fed. Appx. 822 (2d Cir 2017)

[39] *Szymuszkiewicz*, 622 F.3d at 705; *Shefts v. Petrakis*, 2012 WL 4049484, at *9 (C.D. Ill. Sept. 13, 2012)

To act intentionally means to act deliberately and purposefully.  That is, the defendant's acts must have been the product of defendant's conscious objective to intercept the communication in question rather than the product of a mistake or accident.

That does not, however, require any intent to violate the law, or even any knowledge that the interception would be illegal, nor is an affirmative act required; it is enough to be aware that such interception is occurring and to fail to stop it.[40]

With respect to section 2511(1)(a) of the Wiretap Act, Plaintiffs claim that Verschleiser, and in at least one instance Del Forno, set up distribution groups and established email forwarding rules causing emails intended for Frydman and other United Realty employees to be forwarded to them instead.

*Authority*: 5-92 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 92.01, at 92-1; 92-2; 92-3; 92-6; 92-7 (one or more modified), together with the cases cited in the above footnotes to section 2511(1)(a)

### 2.      Section 2511(1)(c)

For their claims under section 2511(1)(c) of Wiretap Act, Plaintiffs allege that Verschleiser intentionally disclosed the contents of Plaintiffs' intercepted electronic communications.

Under section 2511(1)(c), as relevant here, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

First, that the defendant disclosed to another person the contents of an electronic communication;

---

[40] *Narducci v. Village of Bellwood*, 444 F. Supp .2d 924, 935 (N.D. Ill. 2006), *aff'd*, 572 F.3d 313 (7th Cir. 2009)

Second, that the defendant knew or had reason to know that the contents of that communication had been obtained in violation of the law; and

Third, that the defendant acted intentionally.

The first element that the plaintiff must prove by a preponderance of the evidence is that the defendant disclosed to another person the contents of an electronic communication.

The contents of a communication include any information concerning the substance or meaning of that communication.

The term "electronic communication" has the same meaning that I previously instructed you with respect to section 2511(1)(a) of the Wiretap Act.

The second element that the plaintiff must prove by a preponderance of the evidence is that the defendant knew or had reason to know that the contents of that communication had been obtained in violation of the law.

In order to satisfy this element, the plaintiff must establish that the defendant knew or had reason to know that the information disclosed came from an intercepted communication in violation of section 2511(1)(a) of the Wiretap Act, and that the defendant knew or had reason to know sufficient facts about the circumstances of that interception to determine that the interception was prohibited by law.

To be liable under section 2511(1)(c), a defendant must know or have reason to know sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of the Wiretap Act.[41]

---

[41] *Zaratzianr*, 2014 WL 4467919, at *10 (collecting cases)

The third element that the plaintiff must prove by a preponderance of the evidence is that the defendant acted intentionally.

The term "intentionally" has the same meaning that I previously instructed you with respect to section 2511(1)(a) of the Wiretap Act.

With respect to section 2511(1)(c) of the Wiretap Act, Plaintiffs claim that Verschleiser disclosed the contents of one or more intercepted communications between United Realty or Frydman and Opera Solutions with his otherwise anonymous email to Opera Solutions referencing the $1.4 million sublease transaction between the parties about to close.

*Authority*: 5-92 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 92.03, at 92-20; 92-21; 92-22; 92-23 (one or more modified), together with the case cited in the above footnote to section 2511(1)(c)

### 3.    Damages

If you find that the plaintiff has proved that one or both of defendants Verschleiser and Del Forno are liable for a violation of section 2511(1)(a) of the Wiretap Act, or that defendant Verschleiser is liable for a violation of section 2511(1)(c) of the Act, then you must determine what were the plaintiff's actual damages.

The fact that I instruct you on the law of damages as it relates to a Wiretap Act claim must not be taken as a suggestion that you should find for the plaintiff.  It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant.

In determining what were the plaintiff's actual damages, you should add together first, any damages that the plaintiff suffered as a direct result of the defendant's wrongful actions, and second, any profits made by the defendant as a direct result of those wrongful actions.

The burden is on the plaintiff to prove the amount of actual damages by a preponderance of the evidence.  Plaintiffs claim that they suffered at a minimum the loss of the $1.4 million sublease transaction between United Realty and Opera Solutions.

You may assess as damages whichever is the greater of—

(A) the sum of the actual damages suffered by the plaintiff, including any profits made by the defendant as a direct result of his wrongful actions; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.[42]

Statutory damages under the Wiretap Act are calculated based upon the number of days the violation has occurred.  To calculate statutory damages, you are to employ a two-step process.  First, you must determine whether the plaintiff has proved that Verschleiser and/or Del Forno's violation or violations of the Wiretap Act occurred on more than or less than one hundred days.  If you find that the plaintiff has proved that the violation of section 2511(1)(a) or section 2511(1)(c) occurred on less than one hundred days, then the statutory damages would be $10,000 for that category of violation.  If you determine that the violation of section 2511(1)(a) or section 2511(1)(c) occurred on one hundred or more days, then the statutory damages would be $100 for each day that a violation took place for that category of violation.

*Authority*: 5-92 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 92.01, at 92-9 (modified), together with the statutory authority cited in the above footnote to this damages section

### 4.     Punitive Damages

If you find that the plaintiff has proved that one or both of defendants Verschleiser and Del Forno are liable for a violation of section 2511(1)(a) of the Wiretap Act, or that defendant

---

[42] 18 U.S.C § 2520(c)(2)

Verschleiser is liable for a violation of section 2511(1)(c) of the Act, then you have the discretion to award punitive damages in addition to compensatory damages.

The damages with you so far are compensatory, because they are intended to compensate for injury suffered by the plaintiff.  In addition, the plaintiff asks that you award punitive damages.  Punitive damages may be awarded to punish a defendant who has acted wantonly, recklessly or maliciously.  You may award punitive damages only if the plaintiff proves by a preponderance of the evidence that the defendant's conduct was wanton, reckless, or malicious. An act is wanton or reckless if it is done in such a manner and under such circumstances as to reflect utter disregard for the potential consequences of the act on the safety or rights of others. An act is malicious if it is wrongful and done intentionally without just cause or excuse and as a result of ill will or evil motive.

The awarding of punitive damages is within your discretion – you are not required to award them.  Punitive damages are appropriate only for especially shocking and offensive misconduct. You may impose punitive damages against one or more of the defendants, but not necessarily all of them, or against one or more of them in different amounts.

*[If the jury decides to award punitive damages, the court should proceed to charge the jury on the factors it should consider in determining the amount of punitive damages, which appear below.]*

In arriving at your decision as to the amount of punitive damages you should consider the following factors:

1.      The nature and reprehensibility of what the defendant did.  That would include the character of the wrongdoing; whether the defendant attempted to conceal or cover up his wrongdoing; whether the defendant demonstrated an indifference to, or a reckless disregard of,

the rights of others; whether the acts were done with an improper motive; whether the acts constituted outrageous or oppressive intentional misconduct; how long the conduct went on; and the defendant's awareness of what harm the conduct caused or was likely to cause. In considering the amount of punitive damages to award, you should weigh this factor heavily.

2.      The actual and potential harm created by the defendant's conduct. The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by the plaintiff, and to the compensatory damages you awarded the plaintiff.

3.      The defendant's financial condition and the impact your punitive damages award will have on the defendant.

*Authority*: 5-92 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 92.01, at 92-10 (modified); N.Y. Pattern Jury Instr.--Civil 3:34A (modified)

  **E.**  **Stored Communications Act Claims**

    **1.**  **Section 2701(a)**

Plaintiffs claim in Count VII that defendants Verschleiser, Del Forno, Pinhasi, and Onica violated section 2701(a) of the federal statute known as the Stored Communications Act, SCA, which concerns unlawfully accessing stored communications, by illegally accessing the United Realty email exchange server hosted by Intermedia, and thereby obtained, altered or prevented access to plaintiffs' emails. Hacking violates the SCA.[43] Plaintiffs claim that the allegations of computer hacking comprising the first and second claimed RICO predicate acts of wire or mail fraud that I previously discussed, if proven, violate the SCA as well.

---

[43]  *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008)

Section 2701(a) of the SCA provides in pertinent part that a person may be liable for damages if he or she:

(1) accesses without authorization a facility through which an electronic communication service is provided; or

(2) exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system.

Under section 2701(a), the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

First, that without authorization, the defendant accessed a system through which electronic communication service is provided to others or accessed a system through which electronic communication service is provided to others with authorization, but exceeded that authority in accessing the information in question;

Second, that the defendant obtained or altered or prevented access to a wire or electronic communication while it was in electronic storage in such system; and

Third, that the defendant acted knowingly or intentionally.

The first element the plaintiff must prove by a preponderance of the evidence is that without authorization, the defendant accessed a system through which electronic communication service is provided or accessed a system through which electronic communication service is provided with authorization, but exceeded that authority in accessing the information in question, in other words, that the defendant had access to the electronic communication service, and used that access to obtain or alter or destroy an electronic communication that the defendant was not entitled to obtain or alter or destroy.

An "electronic communication service" means any service that provides to users the ability to send or receive wire or electronic communications.  An Internet service provider, known as an ISP, or other network service provider is an "electronic communication service."[44] So is a provider of email services,[45] through an email server.[46]  A system or facility through which electronic communications service is provided includes an email server.[47]

A "wire communication" is a communication containing the human voice made in whole or in part through the use of facilities for the transfer of communications by the aid of wires, cables, or similar connections at any point between and including the point of origin and the point of reception.

The term "electronic communication" has the same meaning that I previously instructed you with respect to section 2511(1)(a) of the Wiretap Act.  Again, email messages are "electronic communications."[48]

The second element that the plaintiff must prove by a preponderance of the evidence is that the defendant obtained or altered or prevented access to a wire or electronic communication while it was in electronic storage in the electronic communication service system.

---

[44] *Theofel v Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir.), *cert. denied*, 543 U.S. 813 (2004)

[45] *Garcia v City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012), *cert. denied*, 133 S.Ct. 2859 (2013)

[46] *Cornerstone Consultants, Inc. v Prod. Input Sols., L.L.C.*, 789 F. Supp. 2d 1029, 1049 (N.D. Iowa 2011)

[47] *Cornerstone*, 789 F. Supp. 2d at 1050

[48] *Szymuszkiewicz*, 622 F.3d at 705; *Shefts*, 2012 WL 4049484, at *9

The term "electronic storage" means any storage of a wire or electronic communication by an electronic communication service for purposes of backup protection of that communication.  It also includes any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission of that communication. That includes e-mail, text messages, or voice mail sitting in a user's mailbox after it has been transmitted to the intended user but before it has been accessed by that user.

The third element that the plaintiff must prove by a preponderance of the evidence is that the defendant acted knowingly or intentionally.

To act knowingly means to act voluntarily, and not because of ignorance, mistake, accident, or carelessness.

To act intentionally means to act deliberately and purposefully.  That is, the defendant's acts must have been the product of the defendant's conscious objective to obtain or to alter or to prevent access, as the case may be, to the communication in question rather than the product of a mistake or accident.

Plaintiffs claim that defendants Verschleiser, Del Forno, Pinhasi and Onica accessed without authorization or in excess of authorization United Realty's email exchange server hosted by an email service provider, Intermedia, and thereby obtained, altered or prevented authorized access to Frydman's emails and those of other United Realty or Prime United employees.  In that regard, plaintiffs make the same claims regarding lack of authorization or acting in excess of authorization, blocking email and server access, and accessing and deleting information from employee email accounts, as they do with respect to their CFAA claims.

*Authority*: 5-92 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 92.04, at 92-26; 92-27; 92-28; 92-2; 92-30 (one or more modified), together with the cases cited in the footnotes to section 2701(a)

## 2.    Damages

If you find that the plaintiff has proved that the one or more of defendants Verschleiser, Del Forno, Pinhasi and Onica are liable for a violation of section 2701(a) of the SCA, then you must determine the plaintiff's actual damages.

The fact that I instruct you on the law of damages as it relates to a section 2701(a) claim must not be taken as a suggestion that you should find for the plaintiff.  It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant.

In determining the amount of the plaintiff's actual damages, you should add together first, any damages that the plaintiff suffered as a direct result of the defendant's wrongful actions, and second, any profits made by the defendant as a direct result of those wrongful actions.

The burden is on the plaintiff to prove the amount of actual damages by a preponderance of the evidence.  If the plaintiff has not shown actual damages, you may award statutory damages.[49]  The SCA provides that an award of statutory damages must not be less than one thousand dollars for each violation of the SCA.[50]  The plaintiff must show by a preponderance of the evidence the number of violations of section 2701(a) that occurred, that is, one violation for each unauthorized access or access exceeding authorization.[51] If you find that

---

[49] *E.g.*, *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp. 2d 417, 428-29 (S.D.N.Y. 2010)

[50] 18 U.S.C. § 2707(c)

[51] *Pure Power Boot Camp,* 759 F. Supp. 2d at 429

one or more of defendants Verschleiser, Del Forno, Pinhasi, and Onica violated section 2701(a),

you must determine the number of times each such defendant violated that section.

*Authority*: 5-92 L. Sand et al., Modern Federal Jury Instructions (Civil) ¶ 92.04, at 92-31
(modified), together with the statutory authority and case cited in the above footnotes to this
damages section

### 3. Punitive Damages

If you find that the defendant is liable for unlawfully accessing stored communications,

then in addition to compensatory damages, you have the discretion to award punitive damages in

the manner in which I instructed you with respect to plaintiffs' ECPA claims.

*Authority*: 5 L. Sand et al., Modern Federal Jury Instructions (Civil), ¶ 92.04, at 92-32 (modified)

### F. Libel Claims

### 1. Libel Per Se

Plaintiffs claim that Verschleiser committed libel per se, which is a type of defamation.

A libel is a writing or broadcast which tends to expose the plaintiff to public hatred, contempt,

ridicule or disgrace.  A writing or broadcast constitutes libel per se if it charges the plaintiff with

committing a serious crime; or if it tends to injure the plaintiff in his, her or its trade, business or

profession; or if it imputes serious sexual misconduct to the plaintiff; or if  it states that the

plaintiff has a loathsome disease.[52] An accusation of theft or stealing constitutes a charge of

committing a serious or indictable crime.[53]  A writing or broadcast imputing fraud, dishonesty,

untrustworthiness, misconduct, unfitness or incompetence in connection with a person's

profession or a company's business with reference to his, her or its methods of carrying on

---

[52] *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 860 (1992)

[53] *O'Diah v. Yogo Oasis*, 954 F. Supp. 2d 261, 275 (S.D.N.Y. 2013)

business constitutes libel per se.[54]  Also, statements in lawsuits or communications with

regulators (such as the SEC) made maliciously and solely for the purpose of defaming the

plaintiff are actionable as defamatory,[55] and constitute libel per se if they fall into one or more of

the categories of libel per se I just described.  The plaintiff need not prove special damages, that

is, specific financial loss, if a writing or broadcast constitutes libel per se.[56]

Plaintiffs claim that Verschleiser committed libel in various respects, including by

inducing Mr. Akerman to commence a baseless, sham state court action against Frydman,

*Akerman v. Frydman*, for the purpose of disseminating the lawsuit to the press and community;

by inducing Mr. Akerman to file a baseless whistleblower complaint against Frydman and the

REIT in a letter to the SEC Office of the Whistleblower, on which he copied 17 third parties,

including the IRS, FINRA, the REIT's accounting firm Ernst & Young, the REIT's law firm

Proskauer Rose, REIT industry due diligence firms Fact Right and Buttonwood Investment

Services, Brock Capital, and the Department of the Treasury.  Plaintiffs claim that just a week

later, however, Akerman discontinued his lawsuit.  Plaintiffs claim that Verschleiser had

Akerman send his whistleblower letter in order to disseminate the letter's allegedly defamatory

statements against Frydman and his companies to the public and the press.

Plaintiffs also claim that Verschleiser (i) sent, created, put up, made or disseminated

emails, websites, reports, blogs, social media and other posts on the Internet, flyers and posters

---

[54] *See Pearlman v. NYP Holdings, Inc.*, 2015 WL 2232335, at *2 (Sup. Ct. N.Y. Co. May 11, 2015) (citing inter alia *Kotowski v. Hadley*, 38 A.D.3d 499, 500, 833 N.Y.S.2d 103, 105 (2d Dept. 2007); 43A N.Y. Jur. 2d *Defamation and Privacy* §§ 51-52

[55] *Frydman*, 172 F. Supp. 3d at 672 (citing inter alia *Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473 (1969))

[56] *Liberman*, 80 N.Y.2d at 435, 590 N.Y.S.2d at 860-61

that were defamatory; (ii) sent emails sent under Verschleiser's own name on various occasions after December 2013 that were defamatory; and (iii) sent mass anonymous email blasts to REIT investors, selling group members and prospective selling group members, and others in May and June 2015 that were defamatory that I previously discussed.

To recover damages for libel, here libel per se, the plaintiff has the burden of proving six elements. If the plaintiff has proved all six of these elements, you will decide in the plaintiff's favor and proceed to determine the amount of damages. However, if the plaintiff has failed to prove any one of these six elements, the plaintiff may not recover.

First, the plaintiff must prove that the statement was defamatory, meaning that the statement had a tendency to expose the plaintiff to public hatred, contempt, ridicule or disgrace.

Second, the plaintiff must prove that the statement referred to the plaintiff, meaning that the statement would be reasonably understood to be about the plaintiff.

Third, the plaintiff must prove that the defendant published or broadcast the statement, meaning that the defendant communicated the statement to someone other than the plaintiff.

Fourth, the plaintiff must prove that the statement was false, meaning substantially untrue.

Fifth, the plaintiff must prove that the defendant published the statement in a grossly irresponsible manner without consideration for the standards of information gathering and dissemination followed by responsible parties.

Sixth, the plaintiff must prove that the statement proximately caused, as I previously defined that term to you, actual harm to the plaintiff, meaning that the plaintiff suffered damages such as personal humiliation, mental anguish and suffering or damage to the plaintiff's reputation or standing in the community.

The plaintiff has the burden of proving these six elements of his or its libel claim by a preponderance of the evidence.

The first question for you to decide is whether the defendant's statement was defamatory. A statement is defamatory if it tends to expose the plaintiff to public hatred, contempt, ridicule or disgrace—that is, if it would tend to lead the average person in the community to form an evil or bad opinion of the plaintiff. A statement is also defamatory if it tends to discredit the plaintiff in the conduct of his, her or its business, trade, occupation, profession or office; or if it charges the plaintiff with committing a serious crime; or if it imputes serious sexual misconduct to the plaintiff; or if it states that the plaintiff has a loathsome disease. As far as the plaintiff complains about statements in lawsuits or communications with regulators (such as the SEC), as I previously instructed you, such statements must be made maliciously and solely for the purpose of defaming the plaintiff to be defamatory.

Not every unpleasant or uncomplimentary statement is defamatory. A statement that is merely unpleasant, offensive or embarrassing, or that hurts the plaintiff's feelings, is not necessarily defamatory. Because language often has different meanings, the law imposes upon the plaintiff the burden of proving that the statement about which the plaintiff complains would in fact be understood by the average person as defamatory.

If you find that the statement did not tend to expose the plaintiff to public hatred, contempt, ridicule or disgrace; or did not tend to discredit the plaintiff in the conduct of his or its business, trade, occupation, profession or office; or did not charge the plaintiff with committing a serious crime; or did not impute serious sexual misconduct to the plaintiff; or did not state that the plaintiff has a loathsome disease, then you need proceed no further and report to the Court. If you find from the evidence that the plaintiff has proved that the statement tended to expose the

plaintiff to public hatred, contempt, ridicule or disgrace; or tended to discredit the plaintiff in the conduct of his or its business, trade, occupation, profession or office; or charged the plaintiff with committing a serious crime; or imputed serious sexual misconduct to the plaintiff; or stated that the plaintiff has a loathsome disease, then you must find the statement defamatory and proceed to consider the remaining elements.

The second element that the plaintiff must prove is that the statement referred to him or it; that is, the plaintiff must prove that the statement was communicated to one or more third persons who reasonably would have understood the statement to refer to the plaintiff.

The third element that the plaintiff must prove is that the defendant published the statement, that is, that the defendant's statement was read or heard by some person or persons other than the plaintiff.

If you find that the defendant's statement was not read or heard by someone other than the plaintiff, then you need proceed no further and report to the Court. If you find that the defendant's statement was read or heard by someone other than the plaintiff, then you must proceed to consider the other elements of the plaintiff's case.

The fourth element that the plaintiff must prove is that the statement was false. A statement is false if it is not substantially true. Minor inaccuracies in the statement may be disregarded in determining whether the statement is false.

You will determine from the evidence presented what the truth was and then compare that with the statement which you find was made by the defendant, taking that statement according to the ordinary meaning of its words. If you find that the statement was true, then you need proceed further and report to the Court. If you find that the statement was false, then you must proceed to consider the other elements of the plaintiff's case.

The fifth element that the plaintiff must prove is that the defendant published the statements in a grossly irresponsible manner without consideration for the standards of information gathering and dissemination followed by responsible parties.  To establish that the defendant acted in a grossly irresponsible manner, the plaintiff must prove that the defendant disregarded a risk that the statement was false and that the defendant's disregard was a substantial departure from accepted standards and practices of information gathering and verification followed by responsible parties.

If you find that the plaintiff has failed to prove that the defendant was grossly irresponsible, then you need proceed no further and report to the Court.  If you find that the plaintiff has proved that the defendant was grossly irresponsible, then you must proceed to consider the other elements of the plaintiff's case.

The sixth element that the plaintiff must prove is actual harm.  This means that you may not presume that the plaintiff has been damaged, although as I previously instructed, the plaintiff need not prove special damages, that is, out of pocket or pecuniary loss.  Rather, to prove actual harm the plaintiff must prove (1) damage to his or its reputation or standing in the community, or damages such as personal humiliation, mental anguish and suffering; in order to do this, the plaintiff need not offer evidence which assigns an actual dollar amount to the injury, or (2) special damages.[57] If you find that the plaintiff has failed to prove actual harm, then you need proceed no further and you should report to the Court.  If you find that the plaintiff did suffer such actual harm, then you will proceed to consider damages.

---

[57] *Nolan v. State*, 158 A.D.3d 186, 192-94, 69 N.Y.S.3d 277, 281-82 (1st Dept. 2018) (actual injury includes, but is not limited to, out-of-pocket loss)

2.      **Damages**

The fact that I instruct you on the law of damages as it relates to a libel per se claim must not be taken as an indication that you should decide for the plaintiff.  You will decide on the evidence presented and the rules of law that I have given you whether the plaintiff is entitled to recover from the defendant.

If you find that the plaintiff did suffer actual harm, as I have defined that term for you, you will award the plaintiff a sum of money that in the exercise of your good judgment and common sense, you find is fair and just compensation for that injury which you find was directly and actually caused by the defendant's statement.

If you find that the plaintiff did suffer actual harm, you may also award the plaintiff such amount as, in the exercise of your good judgment and common sense, you find is fair and just compensation for the injury to the plaintiff's reputation and the humiliation and mental anguish in his or its public and private life which you find was directly and actually caused by the defendant's statement.

If you find that the plaintiff's reputation will be injured in the future as a result of the defendant's statement, or that the plaintiff will suffer humiliation or mental anguish in the future as a result of the defendant's statement, you will award such additional amount as will compensate the plaintiff for such injuries.[58]

In fixing those amounts you should consider the plaintiff's standing in the community, the nature of the defendant's charge against the plaintiff, the extent to which the charge was circulated, the tendency of the charge to injure such a person as the plaintiff, and all of the other facts and circumstances surrounding the parties. Such damages cannot be proved with

---

[58] N.Y. Pattern Jury Instr.--Civil 3:29.2

mathematical certainty.  Fair compensation may vary, ranging from one dollar as nominal

damages if you decide that there was no injury,[59] to a substantial sum if you decide that the

injury was substantial.

In addition to compensatory damages, you have the discretion to award punitive damages

in the manner in which I instructed you with respect to plaintiffs' ECPA claims.

*Authority*: N.Y. Pattern Jury Instr.--Civil 3:34A (modified), together with the jury instruction and
cases cited in the above footnotes to the libel per se charges

### 3.      Trade Libel

Plaintiffs claim that Verschleiser committed trade libel.  Specifically, they claim that the

same statements that form the basis for their libel claims also constitute trade libel.  Trade libel is

similar to libel per se, and I will now explain to you the differences between the two claims.

Trade libel consists of the knowing publication of false matter derogatory to the

plaintiff's business of a kind calculated to prevent others from dealing with the business or

otherwise interfering with its relations with others, to its detriment.  The communication must

play a material and substantial part in inducing others not to deal with the plaintiff, with the

result that special damages, in the form of lost dealings, are incurred,[60] with one exception I will

instruct you in a moment.

Like defamation, trade libel is based on an injurious falsehood published to a third party.

However, whereas defamation in the commercial context entails a statement that impugns the

---

[59] *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179 (2d Cir. 2000)

[60] This paragraph is drawn from *Waste Distillation Technology, Inc. v. Blasland & Bouck
Engineers, P.C.*, 136 A.D.2d 633, 634, 523 N.Y.S.2d 875, 877 (2d Dept. 1988)

basic integrity or creditworthiness of a business, trade libel is based on statements confined to denigrating the quality of a business' services or products.[61]

To recover damages for trade libel, the plaintiff has the burden of proving five elements. If the plaintiff has proved all five of these elements by a preponderance of the evidence, you will decide in the plaintiff's favor and proceed to determine the amount of damages.  However, if the plaintiff has failed to prove any one of these five elements, with one exception that I will explain, the plaintiff may not recover.

The plaintiff must prove that the defendant (1) made a statement denigrating the quality of the services or products of the plaintiff's business, (2) that was false (3) to a third party, (4) with malice, and (5) that it suffered special damages.[62]  However, to the extent the plaintiff proves an injury to the business's reputation and not the product, it is the libel *per se* form of defamation and the fifth element, that the plaintiff suffered special damages, that is, specific pecuniary loss, need not be proven.[63] To reiterate, reputational injury to a person's business, or to a company, consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties.[64]

I have already recited to you what the plaintiff contends that the defendant said of the plaintiff's business.  To the extent, if any, that the defendant denies that he made a particular

---

[61] *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670-71, 439 N.Y.S.2d 858, 862 (1981)

[62] 44 N.Y. Jur. 2d, *Defamation and Privacy* § 281

[63] *Aequitron Med. v. Dyro*, 999 F. Supp. 294, 297 (E.D.N.Y.1998)

[64] *Van-Go Transp. Co., Inc. v. New York City Bd. of Educ.,* 971 F. Supp. 90, 98 (E.D.N.Y. 1997)

statement, you must first determine whether the defendant made such statement.  If you find that no such statement was made, you will find for the defendant as to that particular statement.

If you find that the defendant made the particular statement claimed and that it denigrated the quality of the services or products of the plaintiff's business, you must then determine whether the statement was false.  If you find that it was not, you will find for the defendant.  If you find that it was false, you will then consider whether the statement was maliciously made.

The burden of proving malice is upon the plaintiff.   A false statement is maliciously made if the person making it knows that his or her statement is false.  A false statement is maliciously made even though the person making it did not know that it was false if (1) it is made with intent to interfere with another person's interests or  a deliberate desire to do another person harm, or (2) it is made recklessly, without regard to the consequences, and under circumstances which the defendant as a reasonably prudent person should have anticipated that injury to another would follow.  From the making of a false statement the law presumes malice, and, therefore, if you find that the statement was false, you must find malice unless on all the evidence you find the presumption overcome.  In determining whether the statement was maliciously made you may consider the language in which the statement was cast, whether at the time he made the statement the defendant knew that it was untrue or believed that it was true, and all of the other facts and circumstances surrounding the making of the statement. If you find that the statement was not made maliciously, you will find for the defendant.

If you find that the statement was maliciously made, you will next consider whether the statement was a substantial factor in causing the plaintiff pecuniary loss, that is, special damages.

 If you find that the plaintiff did not suffer a particular pecuniary loss, or that though plaintiff did, a particular statement was not a substantial factor in causing that loss, you will find

for the defendant on that particular statement, other than in the instance of the exception that I

previously explained.  If you find that the statement was a substantial factor in causing plaintiff a

particular pecuniary loss where that exception does not apply, you will find for the plaintiff in

the amount of such pecuniary loss as you find resulted directly and naturally from the making of

the statement.

Again, the exception is that to the extent the plaintiff proves an injury to the business's

reputation and not the product, it is the libel *per se* form of defamation and the fifth element, that

the plaintiff suffered special damages, that is, specific pecuniary loss, need not be proven.  To the

extent that the plaintiff does prove an injury to the business's reputation and not the product, the

plaintiff may recover (1) damages for the injury to the plaintiff's reputation and the humiliation

and mental anguish in his or its public and private life in such amount as, in the exercise of your

good judgment and common sense, you find is fair and just compensation for such injury to

reputation, or for such humiliation and mental anguish, which you find was directly and actually

caused by the defendant's statement, as I previously instructed you with respect to libel per se,

and (2) any special damages that are proven.  If you find that the plaintiff's reputation will be

injured in the future as a result of the defendant's statement, or that plaintiff will suffer

humiliation or mental anguish in the future as a result of the defendant's statement, you will

award such additional amount as will compensate the plaintiff for such injuries, as I also

previously instructed you with respect to libel per se.

As I previously instructed you as well with respect to libel per se, in fixing those amounts

you should consider the plaintiff's standing in the community, the nature of the defendant's

charge against the plaintiff, the extent to which the charge was circulated, the tendency of the

charge to injure such a person as the plaintiff, and all of the other facts and circumstances

surrounding the parties.  Such damages cannot be proved with mathematical certainty.  Fair

compensation may vary, ranging from one dollar as nominal damages if you decide that there

was no injury,[65] to a substantial sum if you decide that the injury was substantial.

In addition to compensatory damages, you have the discretion to award punitive damages

in the manner in which I instructed you with respect to plaintiffs' ECPA claims.

The fact that I have instructed you on the law of damages as it relates to a trade libel

claim must not be taken as an indication that you should decide for the plaintiff.  You will decide

on the evidence presented and the rules of law that I have given you whether the plaintiff is

entitled to recover from the defendant.

*Authority*: N.Y. Pattern Jury Instr.--Civil 3:55 (modified), together with the cases cited in the
above footnotes to the trade libel charge

### G.     Misappropriation of Trade Secrets

Plaintiffs claim that defendant Verschleiser and in certain instances Del Forno, Pinhasi

and Onica misappropriated various of plaintiffs' alleged trade secrets.  Plaintiffs' claims for such

misappropriation are premised on two separate allegations.

First, as I previously discussed, Plaintiffs claim that these four defendants did so when

Verschleiser, with the assistance of Del Forno, Pinhasi and Onica, allegedly hacked into the

United Realty email exchange server and stole highly confidential information relating to

pending business deals, and otherwise interfered with the business operations.

### 1.     Elements of a Claim of Misappropriation of Trade Secrets

In order to prevail on this claim, the plaintiff must prove by a preponderance of the

evidence, first, that he or it possessed a trade secret, and second, that the defendant used that

---

[65] *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179 (2d Cir. 2000)

trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.

*Authority*: *Faiveley Transp. Malmo AB v Wabtec Corp.,* 559 F.3d 110, 117 (2d Cir. 2009) (internal citation and quotation marks omitted)

### a.      First Element: Possession of a Trade Secret

With respect to the first element, a trade secret may be any form of information that is valuable to a business and maintained in secrecy.  The owner of a trade secret does not have to patent the information in order to receive trade secret protection.

Information is "valuable to a business" if it gives the business an opportunity to obtain an advantage over competitors who do not know or use it.  The trade secret comprises not simply information as to single or passing events in the conduct of one's business; rather, it is also a process, device or compilation of information for continuous use in the operation of the business, such as for the production of items or sale of goods or services.

Information is "maintained in secret" if, of course, the subject matter of the trade secret is kept a secret and is not public knowledge in the trade or business.  Absolute secrecy, however, is not required, although a substantial element of secrecy must exist.  Substantial secrecy exists as long as there would be difficulty in acquiring the trade secret information except by the use of improper means, including without limitation through the breach of an agreement or duty.

The fact that others may know of the information does not negate secrecy if the owner takes reasonable measures under the circumstances to maintain secrecy.  For example, an employer may communicate confidential information to its employees involved in its use without losing trade secret protection.  Even disclosure of a trade secret to a third party does not result in the loss of trade secret protection if the owner of the trade secret took some reasonable steps to maintain its secrecy.  If, for example, the third party to whom the information was disclosed was

under an obligation or acting under an implicit agreement to protect the confidentiality of the information, the information may still be considered secret.

In this case, Plaintiffs claim that the following documents and the information contained in them constitute trade secrets:

(i) emails and one or more draft agreements between United Realty and Opera Solutions for the sublease of corporate office facilities at 180 Maiden Lane;

(ii) a draft of a transaction agreement with Royal Alliance for the sale of CLS' retail customer accounts, among other things, and to which Prime United was a party;

(iii) a shareholder list of REIT investors who were clients of CLS, including their names, addresses, social security numbers and other private information;

(iv) a list of broker-dealers and registered representatives who were part of the United Realty selling group involved in the REIT's public offering of common stock, including their contact information; and

(v) non-public financial reports regarding the performance or projected performance of CLS or its sales representatives

You should consider the following factors in deciding whether information constitutes a trade secret:

(1) the extent to which the information is known outside of the business;

(2) the extent to which it is known by employees and others involved in the business;

(3) the extent of measures taken by the business to guard the secrecy of the information;

(4) the value of the information to the business and its competitors;

(5) the amount of effort or money expended by the business in developing the information;

(6) the ease or difficulty with which the information could be properly acquired or duplicated by others.[66]

---

[66] *Faiveley Transp.*, *supra* (internal citation omitted).

*Authority*:  *See* Proposed Jury Instructions in *E.J. Brooks Co. v. Cambridge Security Seals*, U.S.D.C, S.D.N.Y., 12 Civ. 2937 (LAP) (Apr. 8, 2015), Doc. No. 299 (hereafter "*E.J. Brooks* - Plaintiff's (Defendants') Proposed Instruction No. __"), Plaintiff's Proposed Instruction No. 27, at pp. 35-38 (modified), and authorities cited therein, together with the case cited in the above footnote to this section

> **b.    Second Element: Use of a Trade Secret in Breach of an Agreement or a Duty**

If you do not find that a particular document, information in it or compilation of information in it I just described was a trade secret, you will find for the defendant or defendants you are considering on that particular document, information or compilation of information.  If you find that a particular document, information or compilation of information was a trade secret, you must then determine whether the defendant or defendants you are considering used the trade secret in breach of an agreement, a confidential relationship or a duty, or as a result of discovery by improper means.

Plaintiffs contend that Verschleiser's alleged use or disclosure of the information in the United Realty-Opera Solutions emails and sublease agreement drafts breached the confidentiality provision of his employment agreement with United Realty and/or was as a result of discovery by improper means.  Plaintiffs contend that Del Forno's assisting Verschleiser breached a confidential relationship or duty of confidence as a United Realty employee, and/or used improper means.  Plaintiffs contend that Pinhasi and Onica's assisting Verschleiser breached a duty of confidence as former employees or consultants of United Realty and/or used improper means.

Plaintiffs further contend that Verschleiser's alleged use or disclosure of the documents and information contained in them that he, working together with Akerman, allegedly stole also breached the confidentiality provision of his employment agreement with United Realty and/or was as a result of discovery by improper means.  In addition, plaintiffs contend that Verschleiser

knew or should have known of the duty owed by Akerman to keep such documents and information confidential, but nonetheless used the documents and information that was allegedly wrongfully provided to him by Akerman.

An individual may acquire knowledge of a trade secret by means which appear proper, yet still be under a duty not to use or disclose it.  In New York, a confidential relationship exists between an employer and an employee, such that an employee may not compete with his or her employer by using or relying on trade secret information that was acquired in the course of the employment.  The employer need not expressly inform the employee that the information is a trade secret; if the employee generally understood the information to be confidential in nature, then liability may attach to his or her use or disclosure of that information.  This duty survives the termination of employment and does not depend upon the existence of any contract.  Where an employee has also expressly or impliedly agreed not to disclose an employer's trade secret or confidential information, that agreement similarly prohibits the employee from disclosing the secret information.

If a person with an obligation to keep a trade secret confidential discloses the trade secret to a third party, the third party receiving the secret information is liable for misappropriation if the third party knows or has reason to know that the person from whom it received the information was under a duty to keep the information confidential.  In other words, the third party is liable for misappropriation if it is on notice that it received the information as a result of a breach of duty.  Actual notice is not required; constructive notice of the breach is sufficient to impose liability.  A defendant is on constructive notice of a breach if he could have inferred a breach from the information available or if, under the circumstances, it would have been reasonable to make an inquiry and diligence would have disclosed the breach.

If you find that the defendant or defendants you are considering were in a confidential relationship with the plaintiff or otherwise owed him or it a duty of confidence, or were under a contractual obligation not to disclose the plaintiff's trade secrets, or derived their knowledge of the plaintiff's trade secrets from one they knew or should have known was in such a relationship or under such a duty, then the defendant or defendants were and are obligated not to use or disclose any of the plaintiff's trade secrets.

Only the wrongful use of secret information may give rise to liability. It is not enough that a defendant simply has access to the trade secret information. Further, there is no requirement that the defendant or defendants you are considering use the plaintiff's trade secrets in exactly the same form in which the defendant or defendants received it. You may find the defendant or defendants liable for misappropriation even if they used the plaintiff's confidential information with modifications effected by their own efforts. Differences in detail do not preclude liability if the information used by the defendant or defendants was substantially derived from the plaintiff's trade secret.

*Authority*: *E.J. Brooks* - Plaintiff's Proposed Instruction No. 27, at pp. 39-41 (modified), and authorities cited therein

In sum, if you find by a preponderance of the evidence that the plaintiff possessed a trade secret and that the defendant or defendants you are considering used the plaintiff's trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means, you must enter a verdict in favor of the plaintiff as to the particular trade secret or secrets and decide the issue of damages.

*Authority*: *E.J. Brooks* – Plaintiff's Proposed Instruction No. 27, at p. 43 (modified)

### 2.      Damages

The fact that I instruct you on the law of damages as it relates to a misappropriation of trade secrets claim must not be taken as an indication that you should decide for the plaintiff. You will decide on the evidence presented and the rules of law that I have given you whether the plaintiff is entitled to recover from the defendant.

The plaintiff has the burden of establishing the amount of actual damages, if any, that he or it is entitled to. However, the plaintiff need not establish the amount he or it is owed with mathematical precision; a reasonable estimate is permitted. Once you determine that the plaintiff has suffered damages, uncertainty as to the amount provided should not prevent you from assessing damages so long as you can determine the amount with reasonable certainty from the evidence presented. If you do not award actual damages to the plaintiff in the instance of a particular trade secret misappropriation, you must nonetheless award that plaintiff nominal damages.[67]

In addition to actual damages, or if none, nominal damages, you have the discretion to award punitive damages in the manner in which I instructed you with respect to plaintiffs' ECPA claims.

*Authority*: *E.J. Brooks* - Plaintiff's Proposed Instruction No. 31, at p. 64 (modified), and authorities cited therein

### H.      Tortious Interference With Existing Contractual Relations

Plaintiffs claim that Verschleiser, directly or through others, tortiously interfered with plaintiffs' existing contractual relations. Specifically, Plaintiffs claim they had existing or pending transactions that Verschleiser interfered with and caused to be terminated.

---

[67] *Juniper Entertainment, Inc. v Calderhead*, 2013 WL 120636, at *5 (E.D.N.Y. Jan. 9, 2013)

For the plaintiff to recover, the plaintiff must prove, by a preponderance of the evidence, that he or it had agreements and that Verschleiser knew about one or more of those agreements. To prove that Verschleiser knew about an agreement, it is not necessary that Verschleiser had knowledge of the agreement's specific terms.  The plaintiff must also prove that Verschleiser intentionally induced the other party[68] to suspend or breach the agreements.  An act is intentional if it is done deliberately and for the purpose of inducing a party to an agreement to terminate, suspend or breach it.  The plaintiff must also prove that the other parties, in fact, terminated, suspended or breached the agreements and that they would not have would not have done so if it had not been for Verschleiser's conduct; however, the defendant's conduct need not be the sole "proximate cause" of the termination, suspension or breach.[69]  In this context, a party's conduct qualifies as a proximate cause where it is a substantial cause of the events which produced the injury.[70] An agreement is terminated, suspended or breached when one of the parties fails to do what he, she or it promised to do under the agreement.  An act induces termination, suspension or breach if it causes a party who otherwise would have complied with the agreement not to do so.  Additionally, the plaintiff must prove that he or it sustained damages as a result of the suspension or breach of those agreements.

If you decide (1) that the plaintiff had existing agreements (2) that Verschleiser knew about the agreements, (3) that Verschleiser intentionally induced the other party to suspend or

---

[68] *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 189, 428 N.Y.S.2d 628, 631 (1980) (treating termination)

[69] *Kronish Lieb Weiner & Hellman LLP v. Tahari, Ltd.*, 35 A.D.3d 317, 318, 829 N.Y.S.2d 7, 9 (1st Dept. 2006)

[70] *Mazella v. Beals*, 27 N.Y.3d 694, 706, 37 N.Y.S.3d 46, 53 (2016)

breach those agreements, (4) that the other party in fact, terminated, suspended or breached the agreements, (5) that they would not have done so if it had not been for Verschleiser's conduct, and (6) that the plaintiff sustained damages as a result of the termination, suspension or breach, you will find Verschleiser liable to the plaintiff and will proceed to consider the amount of the plaintiff's damages. *Authority*: N.Y. Pattern Jury Instr.--Civil 3:56 (modified), together with the cases cited in the above footnotes to this section

### 1.    Damages

The fact that I instruct you on the law of damages as it relates to a tortious interference with existing contractual relations claim must not be taken as an indication that you should decide for the plaintiff. You will decide on the evidence presented and the rules of law that I have given you whether the plaintiff is entitled to recover from the defendant.

If you find that the defendant is liable to the plaintiff for tortious interference with his or its agreements, you will consider the amount of the plaintiff's damages. The plaintiff is entitled to damages in the amount of the full pecuniary loss of the benefits of the agreement; for any consequential losses; and for emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

In addition to compensatory damages, you have the discretion to award punitive damages in the manner in which I instructed you with respect to plaintiffs' ECPA claims.

*Authority*: *Guard-Life Corp.*, 50 N.Y.2d at 197 & n.6, 428 N.Y.S.2d at 637 & n.6; Restatement (Second) of Torts § 774A (1977)

### I.    Tortious Interference With Prospective Contractual Relations

Plaintiffs claim, as relevant here, that Verschleiser, directly or through others, including Del Forno, Pinhasi, and/or Onica tortiously interfered with plaintiffs' prospective contractual relations.

Specifically, Plaintiffs claim (1) that one or more of them had the opportunity to enter into contractual relationships, (2) that Verschleiser knew about those prospective contractual relationships and that Del Forno, Pinhasi and/or Onica also knew about the prospective contractual relationship, (3) that Verschleiser intentionally interfered with the prospective contractual relationships (a) by using dishonest, unfair or improper means in that Verschleiser (i) created fake websites, disseminated fake reports, blogs, and social media and other posts on the Internet, distributed flyers at a premier broker-dealer conference, and set up posters at the conference, which disparaged Frydman, United Realty and/or Frydman's other businesses and were directed at the public, including without limitation REIT investors, potential REIT investors, selling group members, and prospective selling group members; and/or (ii) sent mass anonymous defamatory email blasts to REIT investors, selling group members and prospective selling group members, among others, in May and June 2015, which also disparaged Frydman, United Realty and/or Frydman's other businesses, and/or (b) for the sole purpose of harming plaintiffs, (4) that had it not been for Verschleiser, Del Forno, Pinhasi and/or Onica's interference, plaintiffs would have entered into those contractual relationships, and (5) that as a result of the loss of the contractual relationships, plaintiffs sustained damages.

For the plaintiff to recover, the plaintiff must prove, by a preponderance of the evidence, (1) that he or it had the opportunity to enter into contractual relationships, (2) that Verschleiser knew about those prospective contractual relationships, (3) that Verschleiser intentionally interfered with the prospective contractual relationships, (4) that had it not been for Verschleiser, Del Forno, Pinhasi and/or Onica's interference, the plaintiff would have entered into contractual

relationships, (5) that Verschleiser used dishonest, unfair or improper means[71] and/or  acted for the sole purpose of harming the plaintiff, and (6) that as a result of the loss of the contractual relationships, the plaintiff sustained damages.

In considering whether Verschleiser knew about the prospective contractual relationships, you will decide whether Verschleiser, Del Forno, Pinhasi and/or Onica were actually aware of the respective prospective contractual relationship, although knowledge of the specific terms of the respective prospective contractual relationship is not required.  You will decide whether Verschleiser acted with the purpose of interfering with the respective prospective contractual relationship.

If you decide that the plaintiff sustained damages as a result of the interference, you will find for the plaintiff and proceed to consider the amount of the plaintiff's damages.

*Authority*: N.Y. Pattern Jury Instr.--Civil 3:57, together with the case cited in the above footnote to this section

## 1.    Damages

The fact that I instruct you on the law of damages as it relates to a tortious interference with prospective contractual relations claim must not be taken as an indication that you should decide for the plaintiff.  You will decide on the evidence presented and the rules of law that I have given you whether the plaintiff is entitled to recover from the defendant.

If you find that the defendant is liable to the plaintiff for tortious interference with his or its prospective contractual relationships , you will consider the amount of the plaintiff's damages.  As with tortious interference with existing contractual relations, the plaintiff is entitled to damages in the amount of the full pecuniary loss of the benefits of the agreement; for any

---

[71] *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 3 N.Y.3d 182, 785 N.Y.S.2d 359 (2004)

consequential losses; and for emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

In addition to compensatory damages, you have the discretion to award punitive damages in the manner in which I instructed you with respect to plaintiffs' ECPA claims.

*Authority*: *Guard-Life Corp*., *supra*; Restatement (Second) of Torts, *supra*

### J.      Intentional Infliction of Emotional Distress

In Count XIV, Frydman claims that defendant Verschleiser intentionally inflicted emotional distress upon him.  Specifically, Frydman claims that Verschleiser's alleged actions, directly or through others, intentionally inflicted emotional distress upon him.  In that regard, Frydman claims that the mass creation and dissemination of such information constitute conduct (i) that is so extreme and outrageous that it transcends the bounds of decency so as to be regarded as atrocious and intolerable in a civilized society; (ii) that was undertaken by Verschleiser, directly or through others, with the intent to cause severe emotional distress to Frydman, or recklessly; and (iii) that caused such distress and resulted in substantial damages.

One who intentionally and for the purpose of causing severe emotional distress, or recklessly and with utter disregard for the consequences that might follow, conducts himself toward another person in a manner so shocking and outrageous that it exceeds all reasonable bounds of decency is liable to such person for any resulting severe emotional distress.

Intent involves the state of mind with which an act is done.  If a person acts voluntarily with a desire to bring about a result, he is said to have intended that result.  Further, although he has no desire to bring about the result, if he does the act knowing, with substantial certainty, that the result will follow, he is also said to have intended that result.  An act is reckless when it is done in such a manner and under such circumstances as to show utter disregard of the consequences that may follow.  A deliberate and malicious campaign of harassment or

73

intimidation that inflicts severe mental pain or anguish may constitute intentional infliction of emotional distress.[72]

Emotional distress is severe when it is of such intensity and duration that no reasonable person should be expected to endure it.  Medical evidence is not required to corroborate severe emotional distress where the conduct involved is of the type that guarantees an especial likelihood of genuine and serious mental distress on the part of plaintiff or where one must draw only a common sense causal connection between plaintiff's injury and one precipitating cause.[73]

If you find, by a preponderance of the evidence, first, that defendant's conduct toward plaintiff was so outrageous and shocking that it exceeded all reasonable bounds of decency as measured by what the average member of the community would tolerate and, second, that defendant's conduct caused severe emotional distress to plaintiff and, third, that defendant acted with the desire to cause such distress to plaintiff or under circumstances known to defendant which made it substantially certain that that result would follow or recklessly, your finding on this issue will be for plaintiff.

*Authority*: N.Y. Pattern Jury Instr.--Civil 3:6 (modified), together with the cases cited in the footnotes to this section

### 1.    Damages

The fact that I instruct you on the law of damages as it relates to an intentional infliction of emotional distress claim must not be taken as an indication that you should decide for the

---

[72] *Nader v. General Motors Corp.,* 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 654 (1970)

[73] *Sylvester v. City of New York*, 385 F. Supp. 2d 431, 444 (S.D.N.Y. 2005) (collecting cases); *Doe v. Doe*, 2017 WL 3025885, at *7 (S.D.N.Y. July 14, 2017) (same)

plaintiff.  You will decide on the evidence presented and the rules of law that I have given you whether the plaintiff is entitled to recover from the defendant.

If you find that Verschleiser is liable to Frydman for intentionally inflicting emotional distress, you will consider the amount of Frydman's damages.  The plaintiff may recover damages for injury to his reputation and the humiliation and mental anguish in his public and private life, as I previously instructed you with respect to libel per se, and any special damages that are proven, as I previously instructed you with respect to trade libel.  If you find that the plaintiff's reputation will be injured in the future as a result of the defendant's conduct, or that plaintiff will suffer humiliation or mental anguish in the future as a result of such conduct, you will award such additional amount as will compensate the plaintiff for such injuries, as I also previously instructed you with respect to libel per se.

If you do not award actual damages to the plaintiff for intentional infliction of emotional distress you must nonetheless award the plaintiff nominal damages.[74]

In addition to compensatory damages, you have the discretion to award punitive damages in the manner in which I instructed you with respect to plaintiffs' ECPA claims.

*Authority*: N.Y. Pattern Jury Instr.--Civil 3:6, Damages Comment

### K.    Breach of Contract

Plaintiffs United Realty and Frydman claim that defendant Verschleiser breached contracts with them.

Frydman claims that he had a contract with Verschleiser, i.e., the Separation Agreement, requiring Verschleiser to comply with various provisions, including the following non-

---

[74] *Doe v Roe*, 157 Misc. 2d 690, 694-95, 598 N.Y.S.2d 678, 681-82 (Just. Ct. Haverstraw 1993)

disparagement, email exchange server restoration and non-solicitation provisions.

Frydman has the burden of proving, by a preponderance of the evidence, that:

(1)  he had a contract with Verschleiser, the Separation Agreement, requiring Verschleiser to comply with its non-disparagement, email exchange server restoration and non-solicitation provisions;

(2)  he performed all the terms and conditions of the Separation Agreement on his part to  be performed prior to Verschleiser's alleged breach of any of those provisions;

(3)  Verschleiser breached one or more of those provisions in the manner or manners I have described;

(4)  the alleged breach of either of the non-disparagement and email exchange server restoration provisions of the Separation Agreement was material, such that his own performance of the Agreement was excused thereafter; and

(5)  he sustained damages because of Verschleiser's breach or breaches.

Again, the non-disparagement provision of the Separation Agreement defines the term disparage as including the making of false, defamatory or derogatory comments that could reasonably be expected to damage the reputation of Frydman, United Realty or any of Frydman's other businesses.   A derogatory comment is a comment that expresses a low opinion about someone or something or that detracts from the character or standing of someone or something – in other words a belittling, contemptuous, degrading, demeaning, deprecatory, derisory,

disdainful, pejorative, slighting or uncomplimentary remark.[75] As the term appears in that non-disparagement provision, a derogatory comment need not be false or defamatory.[76]

A party's performance under a contract is excused where the other party has substantially failed to perform under the contract, or, synonymously, where that committed a material breach.[77]  Whether a failure to perform constitutes a material breach turns on several factors, such as the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefited under the contract.[78]

It is stipulated that Frydman had a contract with Verschleiser, the Separation Agreement, requiring Verschleiser to comply with its non-disparagement, email exchange server restoration and non-solicitation provisions, and if you decide that Frydman performed all the terms and conditions of the Separation Agreement on his part to be performed prior to Verschleiser's alleged breaches of any of those provisions, and that Verschleiser breached one or more of those

---

[75] The Merriam-Webster dictionary definition of and synonyms for "derogatory." https://www.merriam-webster.com/dictionary/derogatory

[76] *Cf. Propis v Fireman's Fund Ins. Co.,* 112 A.D.2d 734, 737-38, 492 N.Y.S.2d 228, 231-32 (4th Dept.), *aff'd,* 66 N.Y.2d 828, 498 N.Y.S.2d 363 (1985), which reasoned as follows:

> We note that *the material published or uttered need not,* to be the basis of a covered claim under 2(B)…*constitute a libel or slander or be legally defamatory or even allegedly false.* (Section 2[B] of the definition of "Personal Injury" lists the covered publications or utterances *in the disjunctive,* i.e., "of a libel and slander *or* of other disparaging *or* defaming material"….*It is enough if the insured has published or uttered "[other] disparaging material"—material which is derogatory or belittling*….

(initial emphasis in original; subsequent emphasis added.)

[77] *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 136 (2d Cir. 2016)

[78] *Id.* (citing *Hadden v. Consol. Edison Co. of N.Y.*, 34 N.Y.2d 88, 96, 356 N.Y.S.2d 249, 255 (1974))

provisions in the manner or manners I have described, and that the breach of the non-disparagement provision or the email exchange server restoration provision was material, you will find for Frydman on his breach of contract claim and you will go on to consider his damages.  If you decide that Frydman did not perform the terms and conditions of the Separation Agreement on his part to be performed prior to Verschleiser's alleged breach of any of the non-disparagement, email exchange server restoration and non-solicitation provisions of the Separation Agreement, or that Verschleiser did not breach any of those provisions, or that his breach of the non-disparagement provision or the email exchange server restoration provision was not material, you will find for Verschleiser on Frydman's breach of contract claim and report to the Court.

United Realty has the burden of proving, by a preponderance of the evidence, that:

(1)  it had a contract with Verschleiser, his employment agreement, requiring Verschleiser to comply with its non-disparagement, non-solicitation and confidentiality provisions;

(2)  it performed all the terms and conditions of the employment agreement on its part to be performed prior to Verschleiser's alleged breach of any of those provisions;

(3)  Verschleiser breached one or more of those provisions in the manner or manners I have described; and

(4)  it sustained damages because of Verschleiser's breach or breaches.

It is stipulated that United Realty had a contract with Verschleiser, his employment agreement, requiring Verschleiser to comply with its non-disparagement, non-solicitation and confidentiality provisions, and if you decide that United Realty performed all the terms and

conditions of the employment agreement on its part to be performed prior to Verschleiser's alleged breach of any of those provisions, and that Verschleiser breached one or more of those provisions in the manner or manners I have described, you will find for United Realty on its breach of contract claim and you will go on to consider its damages.  If you decide that United Realty did not perform the terms and conditions of the employment agreement on its part to be performed prior to Verschleiser's alleged breach of any of the non-disparagement, non-solicitation and confidentiality provisions of that agreement, or that Verschleiser did not breach any of those provisions, you will find for Verschleiser on United Realty's breach of contract claim and report to the Court.

*Authority*: N.Y. Pattern Jury Instr.--Civil 4:1 (modified), together with the cases and authority cited in the footnotes to this section

### 1.      Damages

The fact that I instruct you on the law of damages as it relates to a breach of contract claim must not be taken as a suggestion that you should find for the plaintiff on his or its breach of contract claims.  It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant.  The basic principle of contract damages is to leave the injured party in as good a position as he, she or it would have been if the contract had been performed; damages for breach of contract are ascertained as of the date or dates of the breach or breaches.[79]

*Authority*: N.Y. Pattern Jury Instr.--Civil 4:20 (modified), together with the case cited in the footnote to this damages section

---

[79] *Brushton-Moira Cent. School Dist. v. Fred H. Thomas Associates, P.C.,* 91 N.Y.2d 256, 261, 669 N.Y.S.2d 520, 522 (1998)

## 2.        General, Consequential and Nominal Damages

In an action for breach of contract, a plaintiff may seek two distinct categories of damages: (1) "general" damages; and (2) "consequential" damages.[80] A plaintiff is seeking general damages when he tries to recover the value of the very performance promised.[81] Frydman seeks general damages on his claim against Verschleiser for breach of the email exchange server restoration provision of the Separation Agreement, namely, the damages sustained by the alleged failure by the close of business on December 5, 2013 to restore United Realty and its affiliates' computer servers to their pre-November 16, 2013 status and to provide Frydman with all owner and administrative passwords.  Also, Frydman and United Realty seek general damages on their respective claims against Verschleiser for breach of the non-solicitation provision of the Separation Agreement and the non-solicitation provision of his employment agreement, namely, the damages sustained by the loss of the services of Del Forno, Pinhasi and/or Nick Constantinescu during the time that Verschleiser allegedly employed them.

The burden of uncertainty as to the amount of general damages is upon the wrongdoer; the plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred as a result of the breach.[82]

"Consequential" damages, on the other hand, seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach.[83] Frydman and United Realty seek consequential damages on their

---

[80] *See* 3 Dan B. Dobbs, *Dobbs Law of Remedies* § 12.2(3) (1993)

[81] *Id.*

[82] *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977)

[83] *Dobbs Law of Remedies*, *supra*

respective claims against Verschleiser for breach of the non-disparagement provision of the

Separation Agreement and the non-disparagement provision of his employment agreement.

United Realty also seeks consequential damages on its claim against Verschleiser for breach of

the confidentiality provision of the employment agreement, namely, the lost profits allegedly

sustained by it as a result.

   To be recoverable, lost profits must have been brought within the contemplation of the

parties as the probable result of a breach at the time of or prior to contracting; the party breaching

the contract is liable for those risks foreseen or which should have been foreseen.[84] It is not

necessary for the breaching party to have foreseen the breach itself or the particular way the loss

occurred, rather, it is only necessary that loss from a breach is foreseeable and probable.[85] To

determine whether consequential damages were reasonably contemplated by the parties, you

must look to the nature, purpose and particular circumstances of the contract known by the

parties as well as what liability the defendant fairly may be supposed to have assumed

consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the

contract was made.[86]  Proof of lost profits cannot be speculative or conjectural; rather, the

plaintiff must establish both the existence and the amount of such damages with reasonable

certainty.[87]  In addition, consequential damages must be proximately caused by the breach.[88]

---

[84] *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187, 192-93, 856
N.Y.S.2d 505, 508 (2008) (internal citations and quotation marks omitted)

[85] *Id*. at 193, 856 N.Y.S.2d at 508 (internal citations and quotation marks omitted)

[86] *Id*. (internal citations and quotation marks omitted)

[87] *Id*. (internal citations omitted)

[88] *Id*. at 193, 856 N.Y.S.2d at 508 (internal citation and quotation marks omitted)

If you do not award general or consequential damages to the plaintiff in the instance of a particular breach, you must nonetheless award the plaintiff nominal damages.[89]

*Authority*: the cases and authority cited in the footnotes to this section

### L.      Breach of Duty of Loyalty

In Count XIX, plaintiff United Realty claims that defendant Del Forno breached a duty of loyalty to United Realty as its employee.  Employees owe duties of good faith and loyalty to their employers while carrying out their duties.[90]  The employer-employee relationship is one of contract, express or implied, and is in the nature of master-servant and principal-agent relationships; an employee is to be loyal to his or her employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his or her duties.[91]

As I previously explained, United Realty claims that Del Forno breached his duty of loyalty while he was still employed by it through February 14, 2014 as head of its information technology, by providing necessary computer-related assistance to Verschleiser in furtherance of alleged hacking beginning December 2, 2013.  United Realty has the burden of proving, by a preponderance of the evidence, that Del Forno breached his duty of loyalty to it in one or more of those manners.

---

[89] *Oklahoma Police Pension and Retirement Sys. v. U.S. Bank Nat. Ass'n*, 291 F.R.D. 47, 71 (S.D.N.Y. 2013) (collecting cases), *abrogated on other grounds by Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014)

[90] *Poller*, 974 F. Supp. 2d at 227

[91] *W. Elec. Co. v Brenner*, 41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 411 (1977)

If you find that Del Forno did breach his duty of loyalty to United Realty in one or more those manners, you must then decide, you must then decide the amount of damages United Realty sustained on account of the breach.

*Authority*: the cases cited in the footnotes to this section

### 1.    Damages

The fact that I instruct you on the law of damages as it relates to a breach of duty of loyalty claim must not be taken as a suggestion that you should find for the plaintiff on its breach of duty of loyalty claim.  It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant.

Where an employee has breached a duty of loyalty, the employer may choose between recovering the profits the defendant made or recovering the profits the employer would have made had the employee not breached his or her duty of loyalty to the employer.[92]

You should assess United Realty's lost profits damage claims in the manner in which I instructed you with respect to consequential damages on Frydman and United Realty's breach of contract claims.

*Authority*: the case cited in the footnote to this damages section

### M.    Conversion

In Count XX, plaintiff United Realty claims that defendants Verschleiser, Del Forno, Pinhasi, and Onica converted certain of its personal property.

A person who, without authority, intentionally exercises control over the property of another person and thereby interferes with the other person's right of possession has committed a

---

[92] *Shamrock Power Sales, LLC v Scherer*, 2016 WL 7647597, at *8 (S.D.N.Y. Dec. 8, 2016)*, report and recommendation adopted*, 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017)

conversion and is liable for the value of the property.  The key elements of conversion are (1) the plaintiff's possessory right or interest in the property and (2) the defendant's dominion over the property or interference with it in derogation of the plaintiff's rights.[93]  The plaintiff need only prove that the defendant interfered with the plaintiff's right to possess the subject property; the plaintiff need not prove that the defendant took ownership of the property or benefited from it.[94] The element of dominion or control may be satisfied by a showing that the defendant intentionally destroyed the property.[95] Intangible property in the form of electronic records and email files that were stored on a computer or server may be the subject matter of a conversion action.[96]

In order to find the defendant responsible for conversion, you must first decide whether the plaintiff has proved, by a preponderance of the evidence, that the defendant, deleted certain computer files from United Realty's email exchange server.  If you find that the defendant did not delete those files, then you need proceed no further and should find in favor of that defendant.

Should you find that the defendant did delete the files, you must then decide whether the plaintiff has proved, by a preponderance of the evidence, that such deletion was intentional.  If

---

[93] *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50, 827 N.Y.S.2d 96, 100 (2006)

[94] *Hillcrest Homes, LLC v. Albion Mobile Homes, Inc.,* 117 A.D.3d 1434, 1436, 984 N.Y.S.2d 755, 758 (4th Dept. 2014)

[95] *Jim Henson Productions, Inc. v. John T. Brady & Assocs., Inc.,* 867 F. Supp. 175, 191 (S.D.N.Y. 1994) (internal citation omitted)

[96] *Thyroff v. Nationwide Mut. Ins. Co.,* 8 N.Y.3d 283, 292-93, 832 N.Y.S.2d 873, 879 (2007)

you find that defendant did not act intentionally, then you need proceed no further and should find in favor of the defendant.

Should you find that the defendant acted intentionally, you must then decide whether the plaintiff has proved, by a preponderance of the evidence, that it did not authorize the defendant to delete the files.  If you find that the plaintiff authorized the defendant to do so, then you need proceed no further and should find in favor of the defendant.

Should you find that the defendant intentionally deleted the files without the plaintiff's permission, then you must decide whether the plaintiff has proved, by a preponderance of the evidence, that the defendant's actions in doing so excluded the plaintiff from exercising its rights over the files.  If you find that defendant's actions in doing so was not to the exclusion of the plaintiff's property rights to the files, then you need proceed no further and find in favor of the defendant.

*Authority*: N.Y. Pattern Jury Instr.--Civil 3:10 (modified); Joint Proposed Jury Instructions in *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp LLC*, U.S.D.C., S.D.N.Y., 08 civ. 4810 (October 12, 2017), Doc. 171 (hereafter "*Pure Power* Proposed Jury Instructions"), at p. 55, together with the cases cited in the footnotes to this section

### 1.    Damages

The fact that I instruct you on the law of damages as it relates to a breach of duty of loyalty claim must not be taken as a suggestion that you should find for the plaintiff on its conversion claim.  It is for you to decide on the evidence presented and the rules of law I have given you whether the plaintiff is entitled to recover from the defendant.

The owner of personal property which is lost, injured, or destroyed by the wrongful act of another is entitled to recover from the wrongdoer damages for the amount that will compensate the owner for the actual losses sustained, provided such loss is the natural, reasonable, and

proximate result of the wrongful act.  If personal property is destroyed, the plaintiff is entitled to recover its value, which ordinarily is its market value.[97]

In instances where someone has converted, destroyed, or lost the only embodiment of computer file that did not have an ascertainable market price, an award of damages may be based on evidence of the cost or estimated cost required to reproduce the computer file, such as the cost of programming hours.[98]

*Authority*:  the treatise and case cited in the footnotes to this damages section

---

[97] N.Y. Jur. 2d *Damages* § 81

[98] *Veeco Instruments, Inc. v. Candido,* 70 Misc. 333, 335-36, 334 N.Y.S.2d 321, 324 (Sup. Ct. Nassau Co. 1972).

**CERTIFICATE OF SERVICE**

I certify that I delivered a copy of the forgoing document upon all counsel of record via

ECF Filing, which service satisfies the requirements of the Federal Rules of Civil Procedure.


/s/ Steven R. Kramer
Steven R. Kramer, Esquire

Date:  September 16, 2022                                *Counsel for Plaintiffs*