**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED REALTY ADVISORS, LP, ET AL.,**

               **Plaintiffs,**

    **- against -**

**ELI VERSCHLEISER, ET AL.,**

               **Defendants.**

**14-cv-5903 (JGK)**

---

**JACOB FRYDMAN, ET AL.,**

               **Plaintiffs,**

    **- against -**

**ELI VERSCHLEISER, ET AL.,**

               **Defendants.**

**14-cv-8084 (JGK)**

**MEMORANDUM OPINION**
**AND ORDER**

---

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, Jacob Frydman, United Realty Advisors, LP, and Prime United Holdings, LLC, brought these consolidated cases against multiple defendants, asserting various federal and state-law claims arising out of a long-running dispute between Frydman and his former business partner, defendant Eli Verschleiser. As relevant here, after a jury trial in late 2022, the jury awarded $2,133,005 in total damages to the plaintiffs on a subset of their claims against Verschleiser. On November 25, 2022, this Court entered final judgment in favor of the plaintiffs and against Verschleiser in the amount of $3,234,906.04, which included prejudgment interest on the damages awarded for certain claims.

Verschleiser now seeks relief from the final judgment against him pursuant to Federal Rules of Civil Procedure 50, 59, and 60. See Postjudgment Motion, ECF No. 618. For the reasons set forth below, the defendant's motion is **denied.**

**I.**

The Court assumes familiarity with the history of this case, which has been described in the Court's previous opinions. See, e.g., ECF Nos. 126, 366, 371. The following summary sets forth only those facts necessary to contextualize the rulings on the defendant's postjudgment motion.[1]

These cases were commenced in 2014 and consolidated in May 2015. ECF No. 63. On July 13, 2015, the plaintiffs filed their Consolidated Second Amended Complaint, ECF No. 71 ("Complaint" or "Compl."), which is the operative complaint in this action. The Complaint asserted various federal and New York state-law claims against multiple defendants, all of which related to the plaintiffs' allegations that Verschleiser, with the assistance of others, had engaged in a coordinated campaign to harm the plaintiffs after Frydman terminated Verschleiser's role in their shared real estate business.

Over the course of eight years of litigation, many of the defendants were dismissed, and the plaintiffs sought and secured

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

a default judgment against the defendant Multi Capital Group of Companies ("Multi Group"). See ECF No. 475. Between October 24, 2022, and November 7, 2022, the plaintiffs tried their surviving claims against the two remaining defendants, Verschleiser and Ophir Pinhasi, before a jury.

After deliberations, the jury found in Pinhasi's favor on all of the claims against him, and it also found in Verschleiser's favor on the plaintiffs' state-law claims for libel per se, trade libel, and intentional infliction of emotional distress. However, the jury unanimously determined that Verschleiser had committed the following violations of federal and state law: violation of and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.; violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq.; violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511; violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, 2707; misappropriation of trade secrets; breach of contract; tortious interference with existing contractual relations; tortious interference with prospective business relations; and conversion. See Trial Tr. ("Tr.") 1127-33. The jury determined that all of these violations, except for the violation of the ECPA, caused some form of injury to the plaintiffs. Id.; see also id. 1129.

The jury awarded a total of $2,133,005 in damages on the claims for which Verschleiser was found liable. That amount includes: $33,000 in damages for the violations of the federal computer hacking statutes that caused injury to the plaintiffs; another $1.4 million in compensatory damages on the state-law claim for misappropriation of trade secrets; nominal damages of $1 for the RICO violations; nominal damages of $1 on each of the other state-law claims resolved in the plaintiffs' favor, namely the claims for conversion, tortious interference with existing contractual relations, tortious interference with prospective business relations, and breach of contract; and an award of $700,000 in punitive damages. Id. 1133-34.

After the jury delivered its verdict, the plaintiffs filed a proposed final judgment that included prejudgment interest on the damages awarded in connection with the state-law claims for misappropriation of trade secrets, breach of contract, tortious interference, and conversion. See ECF No. 587. The plaintiffs specifically sought to recover such interest "at [a] rate of 9% per annum pursuant to New York CPLR §§ 5001, 5004" for the time period "from February 10, 2014[,] until November 7, 2022." Id. at 5. The defendant responded with several objections, including an objection to the request for prejudgment interest. See ECF No. 588. On November 25, 2022, this Court issued a Memorandum Opinion and Order overruling the defendant's objections and explaining why

the plaintiffs were entitled to prejudgment interest at a rate of 9% per year, calculated from February 10, 2014, to November 7, 2022, on their successful state-law claims pursuant to New York law. See United Realty Advisors, LP v. Verschleiser, No. 14-cv-5903, 2022 WL 17250107, at *1-3 (S.D.N.Y. Nov. 25, 2022) ("November 2022 Opinion"); N.Y. C.P.L.R. §§ 5001, 5004.

The Court entered final judgment in these consolidated cases on November 25, 2022. As relevant here, the final judgment provides that the plaintiffs are entitled to $3,234,906.04 from Verschleiser, which consists of (1) the jury's award of $33,000 in damages on the federal computer hacking claims; (2) the jury's award of $1.4 million in damages on the misappropriation of trade secrets claim; (3) the jury's award of $1 in nominal damages on each of the other successful state-law claims, for a total of $4; (4) the jury's award of $1 in nominal damages under RICO, trebled to $3 pursuant to 18 U.S.C. § 1964(c); (5) the award of $700,000 in punitive damages; and (6) $1,101,899.04 in prejudgment interest on the total damages awarded for the state-law claims, calculated at a rate of 9% per year for the requested period (from February 10, 2014, to November 7, 2022). See Judgment, ECF No. 591.[2]

---

[2] The final judgment also provides that the amount of attorney's fees and costs to which the plaintiffs are entitled, if any, is to be determined by a separate motion. ECF No. 591 at 4-5. Moreover, in light of the default judgment obtained against Multi Group, the final judgment reflects that Multi Group is jointly and severally liable with Verschleiser for the $3 in

On December 12, 2022, the plaintiffs filed a motion for attorney's fees and costs, ECF No. 614, which will be addressed in a separate Opinion. On December 27, 2022, Verschleiser filed the postjudgment motion at issue here, which seeks various forms of relief from the final judgment pursuant to Federal Rules of Civil Procedure 50, 59, and 60. See ECF No. 618.

## II.

The defendant moves for judgment as a matter of law pursuant to Rule 50(b), a new trial (or alternatively, remittitur) pursuant to Rule 59, and relief from the judgment pursuant to Rule 60(b).

It is well-established that a district court should deny a Rule 50 motion unless, "viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached." Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154–55 (2d Cir. 1994). A trial court considering a motion under Rule 50(b) "must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor." Samuels v. Air Transp. Local 504, 992 F.2d 12, 16 (2d Cir. 1993). A jury verdict should

---

RICO damages and for any attorney's fees and costs awarded pursuant to 18 U.S.C. § 1964(c). See id. at 6.

be set aside only when "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or where there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against the movant." Logan v. Bennington Coll. Corp., 72 F.3d 1017, 1022 (2d Cir. 1995).

Under Rule 59, a "court may, on motion, grant a new trial on all or some of the issues -- and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Second Circuit Court of Appeals has explained that "[a] district court may grant a new trial pursuant to Rule 59 even when there is evidence to support the jury's verdict, so long as the court determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice." AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009). "If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." Tingley Sys., Inc. v. Norse Sys., Inc., 49 F.3d 93, 96 (2d Cir. 1995).

Rule 60(b) sets forth the grounds on which a court, in its discretion, can provide relief from a final judgment or order. See Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). The Rule allows a court to relieve a party of a final judgment for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (2), (6). While Rule 60(b) should be read broadly to do "substantial justice," final judgments should not be reopened casually. Nemaizer, 793 F.2d at 61. Relief under Rule 60(b) may be granted "only upon a showing of exceptional circumstances." Id.; Brentlor Ltd. v. Schoenbach, No. 13-cv-6697, 2017 WL 6025342, at *2 (S.D.N.Y. Dec. 4, 2017).

**III.**

The defendant's postjudgment motion does not dispute the sufficiency of the evidence underlying any of the jury's findings of liability. Rather, the defendant focuses solely on damages and related issues, arguing that: (1) the jury's compensatory damages awards are duplicative, excessive, and based on pure speculation; (2) the verdict sheet and jury instructions erroneously permitted duplicative recoveries for the same harm; (3) the jury's punitive damages award was excessive and baseless; (4) the plaintiffs are not entitled to the prejudgment interest included in the judgment;

8

and (5) the judgment erroneously failed to shift certain costs to the plaintiffs pursuant to Federal Rule of Civil Procedure 68.

For the reasons set forth below, all of these arguments are meritless, and the defendant fails to make any showing that he is entitled to relief under Rules 50, 59, or 60. It simply cannot be said that no reasonable jury could find for the plaintiffs on the challenged components of the verdict (Rule 50), or that the jury reached a seriously erroneous or unjust result (Rule 59), or that any other reason justifies relief from the judgment (Rule 60).

Accordingly, the defendant's postjudgment motion is **denied.**

### A.

The defendant argues that the jury's compensatory damages awards for misappropriation of trade secrets ($1.4 million) and for federal computer hacking violations ($33,000) were "improper and excessive" because those claims were "subsumed" within the RICO claims for which the jury awarded nominal damages, making any "additional" damages "duplicative." Def.'s Memo., ECF No. 618-1, at 12-15, 21. The defendant's contention that the verdict sheet and the jury charge were erroneous rests on essentially the same notion: the defendant asserts that the jury was permitted to award duplicative damages for the same injury based on multiple legal theories, when it should have been told that awarding any damages for RICO would foreclose additional awards on the claims "subsumed" within the RICO counts. Id. at 19-22.

These challenges to the compensatory damages award, the jury instructions, and the verdict sheet fail because the defendant's RICO theory is fundamentally flawed. The predicate acts for the plaintiffs' RICO claims were six alleged instances of mail fraud or wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343 -- not the distinct claims of computer hacking and misappropriation of trade secrets, which have elements different from those required to prove violations of the federal mail and wire fraud statutes. The Court instructed the jury that the plaintiffs' RICO claims were predicated on alleged acts of mail fraud or wire fraud and gave a detailed explanation of the elements of such acts, see, e.g., Tr. 929, 931, 934-42, and the jury was also instructed that it needed to reach unanimous agreement on only two of the predicate acts in order to hold the defendant liable under RICO. Id. 934, 942-43; see United States v. Gotti, 451 F.3d 133, 137 (2d Cir. 2006) ("[T]he jury [in a RICO case] must be unanimous not only that at least two acts were proved, but must be unanimous as to each of two predicate acts."). Because the plaintiffs presented evidence relating to all six of the alleged predicate acts of mail fraud and wire fraud, the jury could have agreed on any two such acts in many different ways without duplicating the claims for which it awarded compensatory damages. The defendant makes much of the fact that a subset of the alleged predicate acts concerned events related to the hacking and misappropriation claims, but

10

that argument misses the point: the jury reasonably could have concluded that the evidence as to those events satisfied the elements of computer hacking and trade-secret misappropriation, but not the elements of mail or wire fraud. In other words, it is wrong to suggest that the jury necessarily relied on that particular subset of RICO predicate acts simply because it found liability for hacking and misappropriation, and the defendant has not identified any reason to believe that the jury may have done so. Simply put, no inconsistency whatsoever exists on the face of the jury's verdict.

Moreover, contrary to the defendant's assertions of error, both the Court's instructions and the verdict sheet explicitly cautioned the jury to avoid awarding duplicative damages for the same injury. See Tr. 994 (jury instructions); see also id. 1021 (cautionary language in verdict sheet). The jury was also told that it could "not award both nominal and compensatory damages" for the same harm; compensatory damages would be appropriate if the plaintiffs were injured "measurably," while nominal damages would be proper if the injury could not be quantified without "pure speculation and guessing." Id. 1002. In light of these instructions, it would be unreasonable to assume that the jury awarded $1 in RICO nominal damages and an additional $1,433,000 in compensatory damages for the very same injury to the plaintiffs. All that can be said about the jury's verdict is that the jury

11

was unable to calculate actual damages for the RICO violations
with reasonable certainty, but that it could do so for the harms
flowing from hacking and misappropriation -- and indeed, as set
forth below, the compensatory damages awarded for those claims
reflect specific trial evidence pertaining to distinct types of
injury. Far from suggesting that the jury awarded duplicative
damages, the verdict instead indicates that the jury carefully
considered the evidence before it and strictly adhered to this
Court's cautionary damages instructions.

In short, no basis exists to conclude that the compensatory
damages awards were duplicative with the nominal damages awarded
on the RICO claims, and the defendant's claims of error in the
jury instructions and verdict sheet lack merit. None of these
arguments supply a basis for relief under Rules 50, 59, or 60.

**B.**

The contention that the jury awarded compensatory damages
based only on "speculation and conjecture" is also without merit.
Def.'s Memo. at 26. The evidence presented at trial more than
adequately supports the jury's compensatory damages calculations,
and the defendant has not identified any reason to conclude
otherwise.

First, the defendant argues that the plaintiffs "failed to
come forward with any evidence to support damages" for the claim
of trade-secret misappropriation. Id. at 23. But that assertion

is untrue. Based on the trial evidence, including the testimony of both Frydman and Amy Weins (a former Opera Solutions contractor who assisted in leasing the entity's real estate at the relevant time), it was reasonable for the jury to find that the defendant's misappropriation of trade secrets resulted in the plaintiffs' loss of a favorable sublease from Opera Solutions, which was ready for signature just before the termination of the transaction. See, e.g., Tr. 111, 106-16, 121, 199-201. Frydman also testified, based on his personal knowledge and his involvement in the Opera Solutions transaction, that the rent rates in the lost sublease were substantially below the market rate for the same commercial space at the time, and that the plaintiffs accordingly incurred $1.4 million in additional expenses on a replacement lease for the same amount of space. See id. 200-01. The jury plainly credited this trial testimony, as it was entitled to do, and accordingly compensated the plaintiffs for the precise $1.4 million value of the lost Opera Solutions sublease as compared to the new lease. Cf. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). In light of this specific evidence supporting the jury's damages award for trade-secret misappropriation, the defendant's challenge to that award is baseless.

13

Second, the defendant makes no specific argument that the damages awarded for computer hacking were speculative, and the evidence adequately supports the jury's award of $33,000 in any event. Frydman gave specific testimony that the plaintiffs relied on various information technology professionals to evaluate and remediate the computer damage caused by the defendant's hacking activities, incurring costs of approximately "$5,000," a "tad under $18,000," and "$10,000" for those services. Tr. 207-09. This testimony, which the jury was entitled to credit, provides sufficient evidentiary support for the jury's finding that an award of $33,000 would compensate the plaintiffs for losses flowing from the hacking violations.

In short, the jury's awards of compensatory damages are adequately supported by specific trial evidence, and it is clear from such evidence that each of those awards will compensate the plaintiffs for a distinct injury (the loss of the sublease in connection with the trade-secrets misappropriation claim, and the costs of restoring and repairing computers in connection with the hacking violations). The defendant's suggestion that the compensatory damages awards were speculative is unfounded.

### c.

Next, the defendant asserts that the jury's award of $700,000 in punitive damages is "excessive" and lacking any foundation in a "finding of conduct warranting [such] an award."

14

Def.'s Memo. at 17-18. But these contentions are also meritless. The plaintiffs sought punitive damages in connection with a number of their claims, and the jury was expressly instructed that it could consider punitive damages only if it "award[ed] either compensatory or nominal damages" on one or more of those specific claims. Tr. 1002-03. Ultimately, the jury found the defendant liable on four of the claims for which the plaintiffs sought punitive damages, and the defendant does not dispute the sufficiency of the evidence underlying those liability findings.[3] Moreover, it was certainly reasonable for the jury to conclude,

---

[3] In particular, the plaintiffs requested punitive damages in connection with their ECPA claim, see Compl. ¶¶ 338, 342, their SCA claim, id. ¶ 354, and their state-law claims of libel per se, trade libel, misappropriation of trade secrets, tortious interference with existing contracts, and tortious interference with prospective business relations, id. ¶¶ 368, 376, 384, 399, 420, 426, 440, 447; see also JPTO, ECF No. 575, at 9-21. This Court instructed the jury that those specific claims were the claims for which "the plaintiffs seek punitive damages," and the jury was told that "[i]f you find that the plaintiffs have proven the essential elements of any of these claims . . . and if you award either compensatory or nominal damages for that claim, then . . . [y]ou may in your discretion make an award of punitive damages," so long as the relevant legal standard was met. Tr. 1002-03. Of the various claims for which the plaintiffs sought punitive damages, the jury found the defendant liable on the SCA claim, the two tortious interference claims, and the trade-secret misappropriation claim. See ECF No. 591 at 3-4.

Against this backdrop, the defendant's arguments that "RICO does not permit punitive damages" and that "the jury awarded [only] $1 in RICO damages" are misplaced. Def.'s Memo. at 17. The plaintiffs did not seek punitive damages for the RICO claims, and the jury awarded compensatory or nominal damages on other claims for which the plaintiffs did seek punitive damages.

based on the trial evidence, that the defendant engaged in the
unlawful conduct "wantonly" or "maliciously," i.e., with "ill
will or spite toward the injured person." Id. 1003-04. Only a few
examples are needed to illustrate the point. For one, while the
defendant was on the witness stand, the jury heard the defendant's
deposition testimony stating that he "hope[s] [Frydman] suffer[s]
until the day [Frydman] die[s]," and also that he "definitely
disparage[s]" Frydman. Id. 788-90. The jury also heard Frydman
testify that the defendant had "told me he was going to make
my life very, very difficult [and] . . . destroy me and the
companies." Id. 215. On evidence of this sort, the jury was
entitled to conclude that the defendant unlawfully caused injury
to the plaintiffs with the state of mind required to justify
punitive damages.

The amount of the jury's punitive damages award was also
reasonable. To determine whether an award of punitive damages
is "excessive," courts consider "three factors identified by the
Supreme Court: (1) the degree of reprehensibility of the tortious
conduct; (2) the ratio of punitive damages to compensatory damages;
and (3) the difference between this remedy and the civil penalties
authorized or imposed in comparable cases." Patterson v. Balsamico,
440 F.3d 104, 120 (2d Cir. 2006) (citing BMW of N. Am., Inc. v.
Gore, 517 U.S. 559, 575 (1999)). In this case, the "degree of
reprehensibility," which is "perhaps the most important" factor,

16

weighs against the defendant. <u>Jennings v. Yurkiw</u>, 18 F.4th 383, 390 (2d Cir. 2021). The evidence presented to the jury permits a finding that the defendant acted with "intentional malice" and that his conduct "evinced trickery or deceit as opposed to mere negligence" -- considerations which, in the Supreme Court's view, are among the "aggravating factors" "associated with particularly reprehensible conduct." <u>Id.</u> (quoting <u>Gore</u>, 517 U.S. at 575-76).

The ratio of compensatory damages to punitive damages in this case also supports the jury's punitive damages award. The amount of punitive damages ($700,000) is less than half of the compensatory damages that the jury reasonably found, making it difficult to conclude that the punitive damages award is out of proportion with the actual harm suffered. <u>See, e.g.</u>, <u>Webber v. Dash</u>, 607 F. Supp. 3d 407, 417-18 (S.D.N.Y. 2022) (concluding that "there [was] nothing excessive" about a jury's punitive damages award where the "punitive damages awarded [were] only 60% of the compensatory damages awarded"). Indeed, the Court of Appeals for the Second Circuit has explained that "[e]ven where compensatory damages are substantial, punitive damages awards that are a multiple higher may be warranted because of the deterrent function of punitive damages." <u>Jennings</u>, 18 F.4th at

392. That conclusion reinforces the reasonableness of the punitive damages award here.[4]

In short, the trial record adequately supports the jury's conclusion that the defendant's unlawful acts warranted punitive damages, and the amount awarded was not excessive.

**D.**

The defendant also contends that the award of prejudgment interest on the plaintiffs' state-law claims is "inappropriate," Def.'s Memo. at 18, an argument that this Court already rejected in its November 2022 Opinion.[5] For all of the reasons explained in that Opinion, the plaintiffs were entitled under New York law to a mandatory award of prejudgment interest, calculated at a rate of 9% per year, on the compensatory damages for misappropriation of trade secrets and the nominal damages for breach of contract, conversion, and tortious interference. See Nov. 2022 Opinion, 2022

---

[4] The defendant does not make any arguments related to the third factor in the excessiveness analysis. Nor does the defendant cite to awards in other cases that would allow this Court to compare the punitive damages award here to punitive damages permitted in other cases, which is another method that courts employ to evaluate whether a punitive damages amount is excessive. See Jennings, 18 F.4th at 390, 393-94. In any event, given all of the circumstances of this case, there is no reason to believe that the award in this case was excessive.

[5] The defendant appears to suggest that this Court's November 2022 Opinion somehow failed to resolve the issue of prejudgment interest because the Opinion "was not on motion filed by either party." Def.'s Memo. at 19. Such a suggestion is misguided. The defendant was given the opportunity to make written objections to the proposed judgment, see ECF No. 586, and the November 2022 Opinion ruled on the disputes raised by those objections.

WL 17250107, at *1-3 & n.4; see also N.Y. C.P.L.R. §§ 5001(a), 5004. The defendant again insists, as he did in his November 17, 2022 objection to the proposed judgment, that the New York Court of Appeals decision in E.J. Brooks Co. v. Cambridge Security Seals, 105 N.E.3d 301 (N.Y. 2018) "held that pre-judgment interest is not permissible in an award for misappropriation of trade secrets." Def.'s Memo. at 19. But that argument continues to misconstrue E.J. Brooks, where the New York Court of Appeals expressly declined to reach the question of prejudgment interest because it had already rejected a specific measure of damages not at issue here. See E.J. Brooks, 105 N.E.3d at 307, 311-13; Nov. 2022 Opinion, 2022 WL 17250107, at *2 (summarizing E.J. Brooks in more detail and explaining why the decision is inapposite).

To the extent the defendant now argues that the prejudgment interest award is improper because (1) the interest calculation "go[es] back 8 years," and (2) the plaintiffs here "lack [] actual damages," Def.'s Memo. at 18, neither argument was raised in the defendant's prior objection. In any event, both contentions are baseless. For the reasons discussed above, the trial evidence was sufficient to support the jury's finding of actual damages for misappropriation of trade secrets. Furthermore, this Court has already explained that prejudgment interest could be calculated from the plaintiffs' requested start date, February 10, 2014, because the evidence at trial established that "the trade-secrets

misappropriation claim came into existence on February 10, 2014, at the earliest." Nov. 2022 Opinion, 2022 WL 17250107, at *2; see N.Y. C.P.L.R. § 5001(b); Farrell v. Comstock Grp., Inc., 621 N.Y.S.2d 325, 326 (App. Div. 1995).

In short, the defendant's challenges to the award of $1,101,899.04 in prejudgment interest fail.

### E.

Finally, the defendant argues that the judgment is "erroneous" in light of Federal Rule of Civil Procedure 68, because the jury's damages award (including the $3 in trebled nominal damages for the RICO violations) was lower than a $2.5 million settlement offer that the defendant allegedly made to the plaintiffs on May 1, 2018. Def.'s Memo. at 27-28, 16. Under Rule 68, if a party declines an offer of judgment made pursuant to the Rule's requirements and then "finally obtains" a judgment "not more favorable than the unaccepted offer," that party "must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). This provision is, in essence, a "cost-shifting rule" that "requires a court to compare the offer to the judgment and decide which is more favorable." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 229 (2d Cir. 2006).

The defendant's objection to the judgment based on Rule 68 is meritless. Preliminarily, the defendant has submitted no evidence of the alleged Rule 68 offer of judgment, and the plaintiffs'

lawyers from the time of the alleged $2.5 million offer have stated in sworn declarations that they never had any knowledge of such an offer. <u>See</u> Fischbein Decl., ECF No. 624, ¶¶ 4-5; Brickman Decl., ECF No. 624, ¶¶ 3-4.

Moreover, in contending that Rule 68 applies, the defendant argues only that the alleged $2.5 million offer was more favorable to the plaintiffs than the jury's verdict on damages, which, with RICO damages trebled to $3, amounted to $2,133,007. Def.'s Memo. at 27-28. However, this comparison ignores the actual judgment, which includes prejudgment interest. An offer of judgment under Rule 68 must, absent an indication otherwise, include prejudgment interest as a "part of the damages suffered by the plaintiff." <u>Miller v. Dugan</u>, 764 F.3d 826, 830 (8th Cir. 2014); <u>cf.</u> <u>City of Milwaukee v. Cement Div., Nat'l Gypsum Co.</u>, 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."); <u>Jones v. UNUM Life Ins. Co. of Am.</u>, 223 F.3d 130, 137 (2d Cir. 2000) ("[P]rejudgment interest on any type of claim is 'an element of [the plaintiff's] complete compensation[.]'" (quoting <u>Osterneck v. Ernst & Whinney</u>, 489 U.S. 169, 175 (1989))). In this case, the inclusion of the prejudgment interest previously authorized by this Court as a part of the judgment yields a final judgment of $3,234,906.04, an amount far in excess of $2.5 million -- a fact that the defendant does not dispute. Because

the final judgment is more favorable to the plaintiffs than the alleged settlement offer, Rule 68 does not apply. Accordingly, the defendant's Rule 68 argument lacks merit.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, those arguments are either moot or without merit. For the foregoing reasons, the defendant's postjudgment motion for relief pursuant to Rules 50, 59, and 60 is **denied** in full. The Clerk is respectfully directed to close ECF No. 618.

**SO ORDERED.**

**Dated:**    **New York, New York**
             **May 18, 2023**

                                          _____
                                               John G. Koeltl
                                          **United States District Judge**